**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| LEVEL THE PLAYING FIELD, et al., ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 15-1397 (TSC) |
| ) | |
| v. ) | FEC MEMORANDUM |
| ) | |
| FEDERAL ELECTION COMMISSION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S MEMORANDUM**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Daniel A. Petalas (D.C. Bar No. 467908)
Acting General Counsel
dpetalas@fec.gov

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel – Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counsel
hsummers@fec.gov

Robert W. Bonham III (D.C. Bar No. 397859)
Senior Attorney
rbonham@fec.gov

Jin Lee (D.C. Bar No. 484455)
Attorney
jlee@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
999 E Street, N.W.
Washington, DC  20463
(202) 694-1650

May 4, 2016

` **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND .................................................................................................. 2

    A.    The Parties ............................................................................................. 2

    B.    Law Governing Debate Sponsors ......................................................... 2

    C.    The FEC's Administrative Enforcement Process ................................ 3

    D.    Matters Under Review 6869 and 6942 .................................................. 4

        1.    MUR 6869/Complainants LPF and Ackerman ......................... 4

        2.    MUR 6942/Complainants Green Party and LNC ..................... 6

        3.    The FEC's Decisions in MURs 6869 and 6942 ...................... 7

    E.    Petition for Rulemaking Proceedings .................................................. 9

        1.    LPF's Petition for Rulemaking .............................................. 9

        2.    The FEC's Notice of Disposition ......................................... 10

    F.    Plaintiffs' Judicial Complaint .............................................................. 11

III.    ARGUMENT ..................................................................................................... 12

    A.    The Standard of Review of the FEC's Actions Is Highly Deferential ............ 12

        1.    Dismissal of FEC Administrative Complaints ....................... 14

        2.    Denial of Petitions for Rulemaking ....................................... 15

    B.    The FEC's Dismissals of the Administrative Complaints in
        Matters Under Review 6869 and 6942 Were Not Contrary to Law .............. 16

        1.    Prior FEC Dismissals and Court Decisions Related to the CPD .......... 17

            (a)    MURs 4551 and 5573 ................................................. 19

            (b)    MURs 4987, 5004, 5021, and *Buchanan* ................... 20

            (c)    MURs 5207, 5378, 5414 and 5530, and *Hagelin* .................. 24

i

2.    The FEC's Determination Here Regarding CPD's Debate
      Sponsor Status Was Lawful ............................................................ 26

3.    The FEC's Determination Regarding CPD's Polling
      Criterion Was Lawful ..................................................................... 31

4.    The Relief Plaintiffs Request Is Improper ................................... 33

C.    The FEC's Denial of LPF's Petition for Rulemaking Was a
      Proper Exercise of Agency Discretion and Easily Satisfies the
      Highly Deferential Standard of Review ........................................ 34

1.    The Green Party's Claim Against the Debate Regulations
      Is Precluded ................................................................................... 35

2.    The FEC's Determination That Polling Can Be an Objective
      Criterion for Debate Selection Was Reasonable ......................... 35

      (a)    The FEC's Decision to Evaluate the Objectivity of
             Specific Debate Selection Criteria Through the
             Enforcement Process Was Reasonable ............................. 40

      (b)    The FEC Properly Considered the Relevant and Significant
             Comments Received in Declining to Institute a Rulemaking .. 42

3.    Requiring Debate Sponsors to Adopt LPF's Alternative Proposal
      to Select Debate Participants Is Unnecessary and Could Be
      Counterproductive ........................................................................ 43

4.    The Relief Plaintiffs Request Is Improper ................................... 44

IV.    CONCLUSION ......................................................................................... 45

## TABLE OF AUTHORITIES

**Cases**

Am. Gas Ass'n v. FERC, 912 F.2d 1496 (D.C. Cir. 1990) ......................................... 40

Auer v. Robbins, 519 U.S. 452 (1997) ......................................................................... 9

Balt. Gas & Electric Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87 (1983) ...... 14

Becker v. FEC, 230 F.3d 381 (1st Cir. 2000)........................................................ 3, 14, 35

 Buchanan v. FEC, 112 F. Supp. 2d 58 (D.D.C. 2000), *aff'd in part*, No. 00-5337
      (D.C. Cir. Sept. 29, 2000) .........................................................................*passim*

Camp v. Pitts, 411 U.S. 138 (1973) (per curiam) ...................................................... 12

Carter/Mondale Presidential Comm., Inc. v. FEC, 775 F.2d 1182
      (D.C. Cir. 1985) ................................................................................. 13, 15, 23

Citizens for Responsibility and Ethics in Washington v. FEC ("CREW"),
      475 F.3d 337 (D.C. Cir. 2007) ......................................................................... 15

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971) .................... 12, 41

Cellco Partnership v. FCC, 357 F.3d 88 (D.C. Cir. 2004) ......................................... 13

Chevron, U.S.A., Inc. v. NRDC, 467 U.S. 837 (1984) ......................................... 13, 45

City of Portland v EPA, 507 F.3d 706, 716 (D.C. Cir 2007) ...................................... 31

Common Cause v. FEC, 842 F.2d 436 (D.C. Cir. 1988) ............................................. 13

Common Cause v. FEC, 108 F.3d 413 (D.C. Cir. 1997) (per curiam) ........................ 15

Defenders of Wildlife v. Gutierrez, 532 F.3d 913 (D.C. Cir. 2008) ............... 15, 16, 34

FEC v. Akins, 524 U.S. 11 (1998) ................................................................... 15, 34, 35

FEC v. Club for Growth, Inc., 432 F. Supp. 2d 87 (D.D.C. 2006)),
      *motion to alter or amend denied*, 854 F. Supp. 2d 30 (D.D.C. 2012),
      *aff'd on other grounds*, 725 F.3d 226 (D.C. Cir. 2013) .................................. 31

FEC v. Democratic Senatorial Campaign Comm., 454 U.S. 27 (1981) .......... 13, 14, 33

FEC v. Nat'l Conservative Political Action Comm., 470 U.S. 480 (1985) ........... 15, 34

<u>FEC v. Nat'l Rifle Ass'n of Am.</u>, 254 F.3d 173 (D.C. Cir. 2001) ............................ 13

<u>Hagelin v. FEC</u>, 411 F.3d 237 (D.C. Cir. 2005) ...................................................*passim*

<u>Hagelin v. FEC</u>, 332 F. Supp. 2d 71 (D.D.C. 2004) ................................................... 25

<u>Ind. Power & Light Co. v. EPA</u>, Nos. 01-1039, 01-1494, 2002 WL 1359474
   (D.C. Cir. 2002) .............................................................................................. 35

<u>La Botz v. FEC</u>, 61 F. Supp. 3d 21 (D.D.C. 2014) ................................................... 42

<u>La Botz v. FEC</u>, 889 F. Supp. 2d 51 (D.D.C. 2012) ............................................ 15, 34

<u>Marshall Cnty. Health Care Auth. v. Shalala</u>, 988 F.2d 1221 (D.C. Cir. 1993) .......... 12

<u>Mass. v. E.P.A.</u>, 549 U.S. 497 (2007) ...................................................................... 15

<u>MCI Telecom. Corp. v. FCC</u>, 675 F.2d 408 (D.C. Cir. 1982) ................................... 13

<u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>,
   463 U.S. 29 (1983) ........................................................................................... 13

<u>Nader v. FEC</u>, 823 F. Supp. 2d 53 (D.D.C. 2011) ............................................... 30, 31

 <u>Nat'l Customs Brokers & Forwarders Ass'n of Am. v. United States</u>,
   883 F.2d 93 (D.C. Cir. 1989) ...................................................................... 16, 35

<u>Nat. Res. Def. Council, Inc. v. Thomas</u>, 838 F.2d 1224 (D.C. Cir. 1988) ............ 35, 36

<u>Nat'l Wildlife Fed. v. Westphal</u>, 116 F.Supp.2d 49 (D.D.C. 2000) ........................... 14

 <u>Natural Law Party v. FEC</u>, 111 F. Supp. 2d 33 (D.D.C. 2000), *aff'd in part*,
   No. 00-5338 (D.C. Cir. Sept. 29, 2000) .................................. 8, 17, 22, 24, 37

<u>Norton v. S. Utah Wilderness All.</u>, 542 U.S. 55 (2004) ............................................. 45

<u>Orloski v. FEC</u>, 795 F.2d 156 (D.C. Cir. 1986) .................................................. 15, 23

<u>Perot v. FEC</u>, 97 F.3d 553 (D.C. Cir. 1996) (per curiam) ................. 15, 19, 34, 35, 36

<u>Prof'l Pilots Fed'n v. FAA</u>, 118 F.3d 758 (D.C. Cir. 1997) .................................. 34, 42

<u>SEC v. Chenery Corp.</u>, 332 U.S. 194 (1947) ............................................................ 40

<u>Shays v. FEC</u>, 511 F. Supp. 2d 19 (D.D.C. 2007) ..................................................40-41

<u>Shays v. FEC</u>, 337 F. Supp. 2d 28 (D.D.C. 2004) ..................................................... 44

iv

<u>Wildearth Guardians v. EPA</u>, 751 F.3d 649 (D.C. Cir. 2014) ...................................... 15

**Statutes and Regulations**

Administrative Procedure Act ....................................................................................... 9

5 U.S.C. § 553(e) ......................................................................................................... 9

5 U.S.C. § 706(2)(A) ................................................................................................. 12

52 U.S.C. § 30101(9)(B)(ii) ........................................................................................ 3

52 U.S.C. § 30103 ............................................................................................... 5, 6, 11

52 U.S.C. § 30104 ............................................................................................... 5, 6, 11

52 U.S.C. § 30105 ....................................................................................................... 14

52 U.S.C. § 30106(a)(1) ............................................................................................ 14

52 U.S.C. § 30106(b)(1) .............................................................................................. 2

52 U.S.C. § 30106(c) ............................................................................................ 4, 41

52 U.S.C. § 30107(a)(8) .............................................................................................. 2

52 U.S.C. § 30109(a)(1) .......................................................................................... 2, 3

52 U.S.C. § 30109(a)(2) ....................................................................................... 2, 3, 4

52 U.S.C. § 30109(a)(4)(A)(i) .................................................................................... 4

52 U.S.C. § 30109(a)(6) .............................................................................................. 2

52 U.S.C. § 30109(a)(6)(A) ........................................................................................ 4

52 U.S.C. § 30109(a)(8)(A) (former 2 U.S.C. § 437g(a)(8)(A) .............................. 4, 19

52 U.S.C. § 30109(a)(8)(B) ......................................................................................... 4

52 U.S.C. § 30109(a)(8)(C) .................................................................................. 15, 34

52 U.S.C. § 30109(a)(12) ............................................................................................ 4

52 U.S.C. § 30111(a)(8) ................................................................................. 2

52 U.S.C. § 30116(a)(7)(B) ........................................................................... 3

52 U.S.C. § 30116(f) ........................................................................... 5, 6, 11

52 U.S.C. § 30118 ....................................................................................... 36

52 U.S.C. § 30118(a) (former 2 U.S.C. § 441b(a) ............................... *passim*

26 U.S.C. § 501(c)(3) ............................................................................ 3, 27

26 U.S.C. § 501(c)(4) ............................................................................ 3, 27

11 C.F.R. § 100.13................................................................................ 25, 41

11 C.F.R. § 100.92................................................................................... 3

11 C.F.R. § 100.154.................................................................................. 3

11 C.F.R. § 110.13........................................................................... *passim*

11 C.F.R. § 110.13(a) ...................................................................... *passim*

11 C.F.R. § 110.13(a)(1) ........................................................................ 3

11 C.F.R. § 110.13(b)........................................................................ 3, 27

11 C.F.R. § 110.13(b)(1) ....................................................................... 39

11 C.F.R. § 110.13(b)(2) ....................................................................... 28

11 C.F.R. § 110.13(c) ...................................................................... *passim*

11 C.F.R. § 114.4(e) ............................................................................. 27

11 C.F.R. § 114.4(f) ......................................................................... 3, 35

11 C.F.R. § 200........................................................................................ 9

**Miscellaneous**

Corporate and Labor Organization Activity; Express Advocacy and
        Coordination with Candidates, 60 Fed. Reg. 64260 (Dec. 14, 1995) ............. 38

FEC Advisory Opinion 2001-13, 2014 WL 5243329 (Nov. 8, 2001)
(Green Party) ............................................................................................ 2, 35

FEC Advisory Opinion 2002-14, 2003 WL 715988 (Jan. 31, 2003) (LNC) ................. 2

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Administrative Complaint | Admin. Compl. |
| Administrative Record Document | AR Doc. |
| Administrative Record Page | ARxxxx |
| Advisory Opinion | AO |
| Certification of Commission Action | Certification |
| Commission on Presidential Debates | CPD |
| Democratic National Committee | DNC |
| Factual and Legal Analysis (or Analyses) | F&LA |
| FEC Advisory Opinion | AO |
| Federal Election Campaign Act of 1971, | Act or FECA |
| Federal Election Commission | FEC |
| First General Counsel's Report | First GCR |
| Green Party of the United States | Green Party |
| Level the Playing Field | LPF |
| Libertarian National Committee, Inc. | LNC |
| Matter Under Review | MUR |
| Republican National Committee | RNC |
| Second Amended Complaint | Sec. Am. Compl. |
| Statement of Reasons | Statement |

## I.  INTRODUCTION

Plaintiffs Level the Playing Field, Libertarian National Committee, Inc., Green Party of the United States, and Peter Ackerman challenge the Federal Election Commission's ("FEC") denial of a petition for rulemaking and dismissal of several administrative complaints.  But plaintiffs' claims are essentially renewed efforts to dispute policy issues that the courts resolved long ago and to compel one political debate sponsor, the Commission on Presidential Debates ("CPD"), to adopt debate admission criteria that plaintiffs favor but that are not legally required. (Second Am. Compl. (Doc. 25) ("Sec. Am. Compl.").)

The standard of review for agency action is highly deferential, and plaintiffs have not met their heavy burden of establishing that the FEC's actions were contrary to law.  In the administrative proceedings, plaintiffs alleged that CPD was partisan based solely on the political activities of affiliated persons and claimed that its use of a 15% polling threshold as a general election debate admission criterion unlawfully excluded independent and third party candidates. After a review of the administrative records, however, the FEC reasonably concluded that plaintiffs had not presented evidence sufficient to warrant a wholesale rule change based on data relating to one debate sponsor.  The FEC determined that the evidence did not establish that polling has become inherently unobjective or unreasonable, and in any event it was not necessary for the FEC to open a rulemaking to impose a *per se* ban on the use of polling as a requirement for debate participation, since debate sponsors are free to conduct debates in the way plaintiffs favor now.  And the FEC properly relied upon its own past precedent and case law, including decisions of this Court, in finding insufficient evidence that *CPD itself* was partisan or that its use of the 15% threshold was unlawful.  Thus, summary judgment should be entered in favor of the FEC.

## II.    BACKGROUND

### A.    The Parties

The FEC is a six-member independent agency vested with statutory authority over the administration, interpretation, and civil enforcement of the Federal Election Campaign Act ("FECA" or "Act").  The FEC has authority to "formulate policy with respect to" the Act, including the promulgation of regulations.  52 U.S.C. §§ 30106(b)(1), 30107(a)(8), 30111(a)(8).[1] Congress also authorized the FEC to investigate possible violations of the Act, 52 U.S.C. § 30109(a)(1)-(2).  The FEC has exclusive jurisdiction to initiate civil enforcement actions for violations of FECA.  *Id.* §§ 30106(b)(1), 30109(a)(6).

Plaintiff Level the Playing Field ("LPF") alleges that it is a nonprofit corporation not affiliated with any candidate or candidate committee and claims it is the successor to "Americans Elect," which plaintiffs say obtained signatures sufficient to qualify candidates for ballot access in 41 states in the 2012 presidential election.  (Sec. Am. Compl. ¶ 17 (Doc. 25).) Plaintiffs Green Party of the United States ("Green Party") and Libertarian National Committee, Inc. ("LNC") are national committees of political parties for purposes of the Act and FEC regulations.  FEC Advisory Opinion ("AO") 2001-13, 2014 WL 5243329 (Nov. 8, 2001) (Green Party); AO 2002-14, 2003 WL 715988 (Jan. 31, 2003) (LNC).  Plaintiff Peter Ackerman is an individual.  (Sec. Am. Compl. ¶ 18 (Doc. 25).)

### B.    Law Governing Debate Sponsors

The Act prohibits corporate contributions in connection with federal elections.  52 U.S.C. § 30118(a) (former 2 U.S.C. § 441b(a)).  Expenditures coordinated with candidates or their

---

[1]     Effective September 1, 2014, the provisions of FECA in Title 2 of the United States Code were recodified in a new title, Title 52.  *See* Editorial Reclassification Table, http://uscode.house.gov/editorialreclassification/t52/Reclassifications_Title_52.html. This submission cites provisions of FECA as codified in new Title 52.

campaigns are considered in-kind contributions.  52 U.S.C. § 30116(a)(7)(B).  "Expenditure" is

defined to exclude "nonpartisan activity designed to encourage individuals to vote."  52 U.S.C.

§ 30101(9)(B)(ii).  The FEC's regulations construing these statutory provisions provide that

"[f]unds provided to defray costs incurred in staging candidate debates in accordance with the

provisions of 11 CFR 110.13 and 114.4(f) are not contributions" and "not expenditures."

11 C.F.R. §§ 100.92, 100.154.

    The FEC regulation at 11 C.F.R. § 110.13 provides rules regarding the sponsorship of

debates.  11 C.F.R. § 110.13(c).  The regulation provides that "[n]onprofit organizations

described in 26 U.S.C. 501(c)(3) or (c)(4) and which do not endorse, support, or oppose political

candidates or political parties may stage candidate debates in accordance with this section."

11 C.F.R. § 110.13(a)(1).  "[T]he structure of debates staged in accordance with" the regulation

"is left to the discretion of the staging organizations(s) [sic], provided that: (1) Such debates

include at least two candidates; and (2) The staging organization(s) does not structure the debates

to promote or advance one candidate over another."  *Id.* § 110.13(b).  In addition, basic

requirements apply to the selection of debate participants:

> For all debates, staging organization(s) must use pre-established objective
> criteria to determine which candidates may participate in a debate.  For
> general election debates, staging organization(s) shall not use nomination by a
> particular political party as the sole objective criterion to determine whether to
> include a candidate in a debate.

*Id.* § 110.13(c).  The FEC's debate regulations have been upheld as a permissible construction of

the Act.  *Becker v. FEC*, 230 F.3d 381 (1st Cir. 2000).

### C.    The FEC's Administrative Enforcement Process

Any person may file an administrative complaint with the FEC alleging a violation of the

Act.  52 U.S.C. § 30109(a)(1).  After reviewing the complaint and any responses filed by

respondents, the FEC considers whether there is "reason to believe" FECA has been violated.  52

U.S.C. § 30109(a)(2).  If at least four of the six FEC Commissioners vote to find such reason to believe, the FEC may investigate the alleged violation; otherwise, the agency generally dismisses the complaint.  *Id.* §§ 30106(c), 30109(a)(2).  Any administrative investigation under this provision is confidential until the process is complete.  *Id.* § 30109(a)(12).  If the FEC votes to proceed with an investigation, it then determines whether there is "probable cause" to believe FECA has been violated.  *Id.* § 30109(a)(4)(A)(i).  If the FEC finds such "probable cause," it is required to attempt to remedy the violation informally through conciliation.  *Id.*  If the FEC is unable to reach a conciliation agreement, FECA authorizes the agency to institute a *de novo* civil enforcement action in court.  *Id.* § 30109(a)(6)(A).

Federal courts have limited judicial review of FEC enforcement decisions under 52 U.S.C. § 30109(a)(8)(A).  If the FEC determines that no violation has occurred, decides to take no further action, or dismisses the complaint for some other reason, administrative complainants who demonstrate standing under Article III and satisfy other jurisdictional requirements may seek judicial review pursuant to 52 U.S.C. § 30109(a)(8)(A).  Dismissal suits must be filed "within 60 days after the date of the dismissal."  *Id.* § 30109(a)(8)(B).

### D.     Matters Under Review 6869 and 6942

#### 1.     MUR 6869/Complainants LPF and Ackerman

Plaintiffs LPF and Peter Ackerman filed an administrative complaint with the FEC on September 11, 2014.  (Administrative Record Document ("AR Doc.") 6869-1.)[2]  That complaint

---

[2]     The FEC filed certified lists of record documents in the agency proceedings at issue here, administrative enforcement Matters Under Review ("MUR") 6869 and 6942, and petition for rulemaking REG 2014-06.  (Docs. 22-1, 22-2, 26-1.)  AR Doc. numbers are indicated on the certified lists; each proceeding has a distinct prefix: "REG1406-","6869-" and "6942-".  The administrative records are "Bates stamped" with sequential page numbers.  REG 2014-06 begins with page number AR0001; MUR 6869 begins with page number AR2001; and MUR 6869 begins with page number AR4001. Depending on which form provides greater ease of reference, some of the FEC's citations are to the AR Doc. number and others are to specific page numbers.

alleged that CPD and its Co-Chairs Frank Farenkopf, Jr. and Michael D. McCurry (collectively "respondents") failed to comply with the FEC's regulations governing debate sponsorship. In connection with CPD's 2012 presidential debates, CPD was alleged to have been a partisan staging organization and to have used subjective candidate selection criteria. (Administrative Compls., AR Docs. 6869-1, 6942-1 and 6942-3.)

The result, complainants (now plaintiffs) alleged, was that CPD's expenditures for its 2012 presidential debates constituted prohibited corporate contributions and expenditures to the participating candidates in violation of 52 U.S.C. § 30118(a). (*See* AR2063-2073.) Plaintiffs' administrative complaints also alleged that because CPD's "major purpose" was to promote the election of the Democratic and Republican Party nominees in 2012 and CPD made expenditures in excess of $1,000 during the calendar year, CPD had become a "political committee" under the Act. In plaintiffs' view, CPD violated 52 U.S.C. § 30116(f) by accepting contributions from its corporate sponsors and violated 52 U.S.C. §§ 30103 and 30104 by failing to register and report with the FEC as a political committee. (*See* AR2063-2073.)

The FEC designated the administrative complaint Matter Under Review ("MUR") 6869. (AR2063-2073.) The FEC notified the respondents of the administrative complaint, including later supplements by LPF and Ackerman, and provided the respondents an opportunity to respond. (AR Docs. 6869-2, 6869-4, 6869-14, 6869-16, 6869-21, 6869-23.) The respondents submitted responses dated December 15, 2014 and May 26, 2015. (AR Docs. 6869-18, 6869-26.) The FEC's Office of General Counsel prepared and submitted a First General Counsel's Report dated June 17, 2015 to the FEC Commissioners. (AR Doc. 6869-27.)

On July 13, 2015, the FEC decided by a vote of 5-0 (with one Commissioner recused) to find no reason to believe that CPD or Fahrenkopf and McCurry as Co-Chairs violated 52 U.S.C.

§§ 30116(f) and 30118(a), find no reason to believe that CPD violated 52 U.S.C. §§ 30103 or

30104, approve a Factual and Legal Analysis, and close the file.  (AR Doc. 6869-28.)

Complainants LPF and Ackerman were notified of the FEC's dismissal decision by a letter dated

July 17, 2015 enclosing a copy of the Factual and Legal Analysis approved by the FEC.

(AR Docs. 6869-29, 6869-30.)[3]

### 2.    MUR 6942/Complainants Green Party and LNC

On June 15 and June 18, 2015, counsel for plaintiffs submitted separate requests by the

Green Party and LNC to join the administrative complaint in MUR 6869 or alternatively to file

new administrative complaints.  Green Party and LNC asserted no new allegations, and instead

merely incorporated the allegations in the prior administrative complaint from LPF and

Ackerman.  (AR Docs. 6942-1, 6942-3.)  The two submissions collectively were designated by

the FEC as MUR 6942 for administrative purposes.  (*Id.*)  The FEC notified the respondents of

both the new administrative complaints and a later supplement to these complaints, and provided

them opportunities to respond.  (AR Docs. 6942-5, 6942-6, 6942-13, 6942-14.)  The respondents

submitted written responses dated July 1, 2015 and November 18, 2015.  (AR Docs. 6942-10,

6942-14.)  The FEC's Office of General Counsel submitted a First General Counsel's Report in

MUR 6942 dated December 1, 2015.  (AR Doc. 6942-15.)

On December 10, 2015, the FEC decided by a vote of 5-0 (with one Commissioner

recused) to make the same determinations in MUR 6942 that it had in MUR 6869.

(AR Doc. 6942-16.)  Complainants Green Party and LNC were notified of the decision by letter

dated December 16, 2015.  (AR Docs. 6942-17, 6942-18.)

---

[3]    Two FEC Commissioners who had supported opening a rulemaking in REG 2014-06 but
concurred in the FEC's decision to dismiss the rulemaking petition issued a Statement on both
REG 2014-06 and MUR 6869.  (AR Doc. 6869-32.)

### 3.       The FEC's Decisions in MURs 6869 and 6942

The FEC unanimously rejected the claims in both MURs 6869 and 6942, and it found

no reason to believe that CPD and its co-chairs violated the statutory provisions.  (Certifications,

*see* AR Docs. 6869-28 and 6942-16.)  The FEC adopted nearly identical Factual and Legal

Analyses ("F&LA") in each MUR.  (AR Docs. 6868-29, 6942-17.)[4]  Both F&LAs noted that the

respondents denied the allegations.  The respondents argued that the CPD does not "endorse,

support, or oppose political candidates or political parties" in violation of 11 C.F.R. 110.13(a)

and that its debate selection criteria, including the 15% polling threshold, are objective.

(AR3177 (quoting Resp. at 4 (AR2870)); AR5005-AR5006 (same).)  The F&LAs also noted

CPD's representation that the FEC had dismissed multiple prior administrative complaints

making similar claims about CPD's status as a staging organization and its candidate selection

criteria, arguing that these earlier decisions supported dismissal of plaintiffs' complaints in

MURs 6869 and 6942.  (AR3176; AR5006.)  The F&LA agreed with this conclusion.  (*Id.*)

After discussing prior FEC enforcement matters involving CPD's staging status and debate

selection criteria in 2000 — MURs 4987, 5004 and 5021 — the F&LA also noted that the FEC's

decision in MUR 4987 was affirmed in *Buchanan v. FEC*, 112 F. Supp. 2d 58, 74 (D.D.C. 2000),

*aff'd in part*, No. 00-5337 (D.C. Cir. Sept. 29, 2000):

> The court upheld the . . . determination that the CPD was an
> eligible debate staging organization, as well as its conclusion that
> the "15% support level set by the CPD" in its third criterion, was
> not inconsistent with the [FEC's] regulations. . . .  The *Buchanan*
> court specifically [held] . . . that it was not unreasonable or
> subjective to consider the extent of a candidate's electoral support
> prior to the debate to determine whether the candidate was viable
> enough to be included.

---

[4]        This memorandum includes parallel citations to the F&LAs in both MURs when the cited
language is the same, and cites the F&LA in MUR 6942 when additional language appears.

(AR3178-AR3179; AR5007).[5]

The FEC considered but rejected the claims that complainants had presented new material information requiring that the FEC reverse its earlier position:  "Specifically, the Complaint claims that it presents 'different and detailed evidence' that demonstrates (1) that the 15% polling criterion is not reasonably achievable for a third-party or independent candidate and (2) that polling criterion in a three-way race will systematically disfavor third-party and independent candidates."  In MUR 6869, the F&LA stated that "[e]ven if CPD's 15% polling criterion may tend to exclude third-party and independent candidates, the available information did not indicate – as the available information in previous complaints does not indicate – that the CPD failed to use pre-established, objective criteria.  *See* 11 C.F.R. § 110.13(c)."  (AR 3181.)

The F&LA in MUR 6942 also rejected "additional evidence" submitted by the Green Party and LNC as a supplement to their administrative complaint.  The "evidence" was a news report that the Gallup Organization had announced that it would not conduct public opinion polling for the 2016 presidential primary elections, as it had in previous elections, which complainants argued was a recognition by Gallup that "horse-race polling has become inherently unreliable."  (AR4854, AR4973-AR4976.)  Respondents, however, submitted a sworn declaration by Gallup Poll's editor-in-chief stating that "Gallup's decision not to engage in horse race polling in the 2016 primary campaign season is based on allocation of resource[s], not any lack of confidence in Gallup's ability to conduct accurate polls."  (AR5003 (quoting Newport Aff. ¶ 15 (AR4885-AR4986).))  The Factual and Legal Analysis concluded that "[t]he

---

[5]     The Factual and Legal Analyses also cited several subsequent actions in which the FEC had found no reason to believe CPD violation FECA, as well as a dismissal case affirming one of those decisions.  (AR3179 (citing *Natural Law Party v. FEC,* 111 F. Supp. 2d 33 (D.D.C. 2000), *aff'd in part*, No. 00-5338 (D.C. Cir. Sept. 29, 2000)); AR5007 (same).)

Supplement's 'additional evidence' regarding Gallup's decisions and motivations appears to be speculative and is rebutted by a sworn declaration."  (AR5003.)

The Factual and Legal Analysis in both MURs concluded:

> In sum, Complainants make the same allegations regarding the same candidate selection criteria that the [FEC] has considered and found insufficient to support a reason to believe finding, and the supplement to the Complaint does not provide any additional information indicating that the CPD violated the Act.  Based on the available information, the debates staged by the CPD satisfy the requirements of 11 C.F.R. § 110.13.  Therefore, the CPD's expenditures on these debates are not contributions or expenditures under the Act, and the CPD does not meet the definition of a political committee subject to the registration and reporting requirements of the Act.

(AR3181 (footnote omitted); AR5009-AR5010 (same).)

### E.     Petition for Rulemaking Proceedings

Under the Administrative Procedure Act ("APA"), a person seeking amendments to an agency's regulations may submit a petition for rulemaking.  5 U.S.C. § 553(e); 11 C.F.R. § 200; *Auer v. Robbins*, 519 U.S. 452, 459 (1997).

#### 1.     LPF's Petition for Rulemaking

LPF filed a Petition for Rulemaking ("Petition") with the FEC, designated REG 2014-06, on September 11, 2014.  The Petition argued that the CPD's use of a 15% polling threshold to select debate participants unfairly excluded third party and independent candidates, and it requested that the FEC open a rulemaking to revise 11 C.F.R. § 110.13(c), the regulation concerning the selection criteria used to determine participation in candidate debates.  (AR0009.) Specifically, the Petition argued that the amendment should:  "(A) preclude sponsors of general election presidential and vice-presidential debates from requiring that a candidate meet a polling threshold in order to be admitted to the debates; and (B) require that any sponsor of general election presidential and vice-presidential debates have a set of objective, unbiased criteria for

9

debate admission that do not require candidates to satisfy a polling threshold to participate in

debates." (AR0009-10.) As an alternative, the Petition proposed that staging organizations use a

method based on a candidate's ability to obtain ballot access in states that have at least 270

Electoral College votes. (AR0029-30.) The FEC subsequently published a Notice of

Availability in the Federal Register. (AR Doc. REG1406-4.) The FEC received 1,264

comments. (AR1903.) While most comments supported the Petition to conduct a rulemaking,

many of those comments expressed no opinion on polling (*see, e.g.*, AR0591-94), and some

comments disagreed that polling was inherently biased or inaccurate (AR0403, 1851-54).

### 2. The FEC's Notice of Disposition

On July 16, 2015, the FEC considered a motion to open a rulemaking in response to

LPF's petition. The motion failed with two Commissioners in favor and four opposed, and the

agency thus determined not to initiate a rulemaking. (AR Doc. REG1406-30.) On November 6,

2015, the FEC approved a Notice of Disposition for REG 2014-06, explaining its reasoning for

denying the Petition. (*See* AR Doc. REG1406-34, REG1406-35.)

In the Notice, the FEC explained that the purpose is to provide an exception to FECA's

corporate contribution ban at 52 U.S.C. § 30118(a) so that non-profit organizations and news

media organizations can stage debates without being deemed to have made prohibited

contributions to participating. (AR1904.) The FEC stated that the current rule requires staging

organizations to use pre-established, objective criteria that are not designed to result in the

selection of certain pre-chosen candidates, to avoid the potential for corruption and to ensure

integrity in the process. (*Id.*) "Within the realm of reasonable criteria," the FEC would give

"great latitude in establishing the criteria for participant selection" to staging organizations. (*Id.*

(citing First General Counsel's Report at 5 n. 5, MUR 5530) (Commission on Presidential

10

Debates).)  The FEC also explained that it had a well-established history of examining polling thresholds and had "found that they can be objective and otherwise lawful selection criteria for candidate debates."  (AR1904.)  The current rule was designed to provide staging organizations discretion "within a framework of objective and neutral debate criteria," and the FEC could evaluate the objectivity and neutrality of a debate sponsor's selection criteria through the enforcement process.  (*Id.*)  Furthermore, the FEC noted that the use of polling data by a single staging organization, CPD, did not support the need for a wholesale rule change.  (AR1905.) Consequently, the FEC declined to open a rulemaking.  (*Id.*)

### F.    Plaintiffs' Judicial Complaint

On August 27, 2015, plaintiffs filed suit challenging the FEC's denial of the rulemaking petition in REG 2014-06 and dismissal of the administrative complaint in MUR 6869. Following the FEC's dismissal of the administrative complaint in MUR 6942, plaintiffs amended their court complaint to add a challenge to that dismissal.  (Sec. Am. Compl. (Doc. 25).)

Plaintiffs seek declarations that the FEC's decisions were unlawful and that (1) CPD violated 11 C.F.R. § 110.13 by staging debates in a partisan manner and without pre-established, objective criteria; (2) CPD violated 52 U.S.C. § 30118(a) by making prohibited contributions and expenditures, and violated 52 U.S.C. § 30116(f) by accepting prohibited contributions; and (3) CPD violated 52 U.S.C. §§ 30103 and 30104 by failing to register and report with the FEC as a political committee.  (*Id* ¶¶ 139, 144, and Requested Relief ¶¶ (a)-(b), (d)-(f).)  Plaintiffs seek an order directing the FEC to conform with such declarations within 30 days and, if the FEC fails to do so, an order that plaintiffs may bring a civil action to remedy the violations alleged in the administrative complaint and obtain a declaration that the candidate selection rules for CPD's 2016 debates also violate 11 C.F.R. § 110.13.  (*Id.* ¶¶ 139, 141, and Requested Relief ¶ (g).) Finally, plaintiffs seek an order that the FEC open a rulemaking to revise its rules governing

presidential debates within 30 days, and "conclude that rulemaking in sufficient time to ensure

that the revised rules will be in place for the 2016 presidential election." (*Id.* ¶ 144, and

Requested Relief ¶ (h).)

## III.   ARGUMENT

### A.   The Standard of Review of the FEC's Actions Is Highly Deferential

In a lawsuit challenging agency action, the "district court sits as an appellate tribunal"

and the "entire case on review is a question of law." *Marshall Cnty. Health Care Auth. v.*

*Shalala*, 988 F.2d 1221, 1225-26 (D.C. Cir. 1993).  A court will set aside agency action if the

action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A).  Reviewing courts are limited to examining agency decision-making based

on the administrative record that was before the agency, "not some new [record] made initially

before the reviewing court."  *Camp v. Pitts,* 411 U.S. 138, 142 (1973) (per curiam); *see also*

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).[6]

Judicial review of agency action is highly deferential, *Cellco Partnership v. FCC*, 357

F.3d 88, 93 (D.C. Cir. 2004), and so the scope of review is narrow, *see Motor Vehicle Mfrs.*

*Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The arbitrary and

capricious standard "presumes the validity of agency action."  *Cellco Partnership*, 357 F.3d at

94.  The Court is "not to substitute its judgment for that of the agency," but instead is to satisfy

itself that the agency has "examine[d] the relevant data and articulate[d] a satisfactory

---

[6]      As set forth in greater detail in the Commission's Objection to Plaintiffs' Statement of
Material Facts, filed simultaneously herewith, plaintiffs and amicus curiae improperly rely on
news articles and other items that are outside of the administrative record.  The DC Circuit has
also made clear that deliberative comments from agency proceedings are not properly before
reviewing courts, and plaintiffs' reliance on transcripts of the Commission's deliberations should
similarly be disregarded.  (FEC Obj. to LPF Statement of Material Facts at 3-6.)

explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (citation and internal quotation marks omitted).

The Supreme Court has held that the FEC "is precisely the type of agency to which deference should presumptively be afforded." *FEC v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 37 (1981) ("*DSCC*"). *See also Common Cause v. FEC*, 842 F.2d 436, 448 (D.C. Cir. 1988). Thus, "in determining whether the [FEC's] action was 'contrary to law,' the task for the [Court is] not to interpret the statute as it [thinks] best but rather the narrower inquiry into whether the [FEC's] construction [is] 'sufficiently reasonable' to be accepted by a reviewing court." *DSCC*, 454 U.S. at 39 (citations omitted). Unless "Congress has directly spoken to the precise question at issue," the Court must defer to a reasonable construction by the FEC. *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 842-844 (1984); *see also FEC v. Nat'l Rifle Ass'n. of Am.,* 254 F.3d 173, 187 (D.C. Cir. 2001).[7] An abuse of discretion exists only when the agency cannot meet "its minimal burden of showing a 'coherent and reasonable explanation [for] its exercise of discretion.'" *Carter/Mondale Presidential Comm., Inc. v. FEC,* 775 F.2d 1182, 1185 (D.C. Cir. 1985) (quoting *MCI Telecom. Corp. v. FCC*, 675 F.2d 408, 413 (D.C. Cir. 1982)). And when an agency is making a determination within its area of expertise, as the FEC is here, "deference is at its zenith." *Nat'l Wildlife Fed. v. Westphal*, 116 F.Supp.2d 49, 57 (D.D.C. 2000) (citing *Balt. Gas & Electric Co. v. Natural Res. Def. Council, Inc.,* 462 U.S. 87, 103 (1983)).

Plaintiffs contend that this court should afford no deference to the FEC because it is "inherently bipartisan," but plaintiffs acknowledge that the D.C. Circuit rejected that argument in *Hagelin v. FEC,* 411 F.3d 237, 242-43 (D.C. Cir. 2005), and so this Court must accord the

---

[7]     Plaintiffs' description of the standard of review includes four D.C. Circuit cases from the 1960s, 1970s, and early 1980s that predate *Chevron*'s clear establishment of administrative deference. (LPF Mem. at 26-28.)

agency deferential review.  (LPF Mem. at 28 n.14.)  In *Hagelin*, another challenge to the FEC's interpretation of the debate regulations, the D.C. Circuit court held that the FEC's actions were entitled to deferential review because Congress vested the FEC with "'primary and substantial responsibility for administering and enforcing the Act,' including 'extensive rulemaking and adjudicative powers.'"  411 F.3d at 242-43 (citing *DSCC*, 454 U.S. at 37); *see also Becker*, 230 F.3d at 394 (citing 52 U.S.C. § 30105) ("that Congress intended to delegate broad policymaking discretion to the FEC is confirmed by the statutory charge that the FEC 'shall formulate policy under the Act'") (citation omitted).  And even if that precedent were not controlling, plaintiffs have supplied no valid reason to deny deference.  FECA provides that a political party cannot possess a majority of Commissioners at the agency since no more than three of the six Commissioners can be affiliated with any one party, 52 U.S.C. § 30106(a)(1).[8]  There is no support for plaintiffs' apparent notion that mere party affiliation taints all FEC decisions for purposes of judicial review.

### 1.    Dismissal of FEC Administrative Complaints

 "A court may not disturb a [FEC] decision to dismiss a complaint unless the dismissal was based on an 'impermissible interpretation of the Act . . . or was arbitrary or capricious, or an abuse of discretion.'"  *Common Cause v. FEC,* 108 F.3d 413, 415 (D.C. Cir. 1997) (per curiam) (quoting *Orloski v. FEC,* 795 F.2d 156, 161 (D.C. Cir. 1986)).[9]  Even if a court finds that the

---

[8]      Plaintiffs' contention (LPF Mem. at 28 n.14) that the FEC is "inherently bipartisan" is wrong not only as a matter of law, but also contemporary fact.  Vice Chairman Walther, who has been on the Commission for more than ten years, is "an Independent" not registered with a political party.  Carlin E. Bunch, *New Commissioners Join the FEC*, FEC Record, Feb. 2006, at 2, http://www.fec.gov/pdf/record/2006/feb06.pdf.

[9]      When the Commission follows the recommendation of its General Counsel and dismisses an administrative complaint without explicitly adopting a statement of its reasons, the General Counsel's report to the Commission provides the basis for judicial review.  *Citizens for*

FEC's dismissal was unlawful, the sole remedy the district court may grant in such a case is a declaration "that the dismissal of the complaint or the failure to act is contrary to law" and an order "direct[ing] the [FEC] to conform with such declaration within 30 days."  52 U.S.C. § 30109(a)(8)(C).  *See Perot v. FEC,* 97 F.3d 553, 557-558 (D.C. Cir. 1996)  (per curiam).  A judicial order to "conform with" a contrary-to-law declaration cannot mandate a different outcome on remand; the [FEC] remains free to reach the same outcome based on a different rationale.  *FEC v. Akins*, 524 U.S. 11, 25 (1998); *see, e.g.*, *La Botz v. FEC*, 889 F. Supp. 2d 51, 63 n.6 (D.D.C. 2012).  If the FEC fails to conform to the court's declaration within that time period, the court may only then grant the administrative complainant the right to bring a civil action "in the name of such complainant" "to remedy the [alleged] violation involved in the original complaint."  52 U.S.C. § 30109(a)(8)(C); *see FEC v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985); *Perot,* 97 F.3d at 557-58.

## 2.    Denial of Petitions for Rulemaking

An agency's decision not to promulgate rules, such as the one at issue in this case, is subject to "'extremely limited' and 'highly deferential'" judicial review.  *Massachusetts v. E.P.A.*, 549 U.S. 497, 527-28 (2007) (remanding matter where agency provided no reasoned explanation for inaction despite clear statutory command) (citing *Nat'l Customs Brokers & Forwarders Ass'n of Am. v. United States*, 883 F.2d 93, 96 (D.C. Cir. 1989)); *Wildearth Guardians v. EPA*, 751 F.3d 649, 651 (D.C. Cir. 2014); *Defenders of Wildlife v. Gutierrez*, 532 F.3d 913, 919 (D.C. Cir. 2008) (citation omitted) ("'[A]n agency's refusal to institute rulemaking proceedings is at the high end of the range' of levels of deference we give to agency action under our 'arbitrary and capricious' review.").  Where "the proposed rule pertains to a matter of policy

---

*Responsibility and Ethics in Washington v. FEC* ("*CREW*"), 775 F.3d 337, 338-39 (D.C. Cir. 2007); *Carter/Mondale*, 773 F.2d at 1187.

within the agency's expertise and discretion," the scope of review is limited to ensuring that the agency has explained the facts and policy concerns it relied upon and those facts have some basis in the record. *Defenders of Wildlife*, 532 F.3d at 919 (citation and internal quotations omitted). The appropriate inquiry is "whether the agency [has] employed reasoned decisionmaking in rejecting the petition." *Id.* A reviewing court will overturn an agency's refusal "'only in the rarest and most compelling circumstances,'" *id.* at 921 (citing *WWHT v. FCC*, 656 F.2d 807, 818 (D.C. Cir. 1981)), "such as plain error of law or a fundamental change in the factual premises previously considered by the agency." *Nat'l Customs Brokers*, 883 F.2d at 97.

> **B.      The FEC's Dismissals of the Administrative Complaints in Matters Under Review 6869 and 6942 Were Not Contrary to Law**

The FEC's decisions to dismiss the administrative complaints against CPD and its officers were a reasonable exercise of agency discretion under the highly deferential standard of review. In rejecting plaintiffs' claims that CPD was not a qualified staging organization and that its polling threshold was impermissible, the FEC reasonably relied on a long line of judicial and administrative authority addressing the very issues involved in this case. The FEC permissibly concluded that the evidence before it provided no reason to believe that CPD was not a qualified staging organization, nor that CPD's candidate selection criteria, including a 15% support requirement, were not objective under the FEC's 1996 debate regulations. These FEC decisions were consistent with prior FEC and court decisions involving CPD's debates in 1996, 2000, and 2004, as well as subsequent court decisions. *See Buchanan v. FEC*, 112 F. Supp. 2d. 58 (D.D.C. 2000), *aff'd in part*, Order, No. 00-5337 (D.C. Cir. Sept. 29, 2000) (fifteen percent requirement not illegal to the extent it excludes candidates qualifying for general election campaign funding),

16

*available at* http://www.fec.gov/litigation/buchanan00_ac_order.pdf.[10]  Plaintiffs have not failed

to show that the FEC's decisions not to revisit these precedents were arbitrary and capricious,

*see Hagelin v. FEC*, 411 F.3d 237 (D.C. Cir. 2005), and plaintiffs have not demonstrated that

new allegations regarding the 2012 debates require a different result in this case.  Plaintiffs' basic

claims have been considered and rejected many times over the last two decades, and they present

no reason for this Court to reach a different conclusion under the highly deferential standard of

review applicable to FEC enforcement decisions.

### 1.     Prior FEC Dismissals and Court Decisions Related to the CPD

The administrative complaints in MURs 6869 and 6942 alleged that CPD's structure and

history since its founding in 1987 demonstrate that CPD is partisan, even though CPD invited

Reform Party presidential and vice-presidential nominees Ross Perot and Admiral James

Stockdale to CPD's debates in 1992.  (AR2028-AR2045; AR4032-AR4049.)  The FEC

reasonably relied upon the many prior FEC decisions dismissing complaints regarding CPD

debates and relevant court decisions upholding those dismissals for the FEC's decisions here.

Between 1996 (when the FEC's current debate regulations were adopted) and 2004,

nine administrative complaints were filed with the FEC alleging violations by CPD in connection

with its 1996, 2000, and 2004 general election debates.[11]  Five of these administrative

---

[10]     *See also Natural Law Party v. FEC,* Order and Judgment, No. 00-cv-2138 (ESH) (D.D.C. Sept. 21, 2000) (granting summary judgment to FEC, citing *Buchanan*), *available at* http://www.fec.gov/litigation/NatLaw_dc_order_judg.pdf, *aff'd in part,* Order, No. 00-5338 (D.C. Cir. Sept. 29, 2000) (fifteen percent requirement not illegal because it favors some candidates over others), *available at* http://www.fec.gov/litigation/NatLaw_dc_order.pdf.

[11]     *See* First General Counsel's Report ("First GCR") in MURs 4451 and 4473 (Feb. 6, 1998) (single report for both MURs, recommendations later rejected by FEC Commissioners), *available at* http://www.fec.gov/disclosure_data/mur/4451.pdf (pdf pages 394-430) and http://www.fec.gov/disclosure_data/mur/4473.pdf (pdf pages 303-359) (same); FEC Statement of Reasons in MURs 4451 and 4473 (April 6,1998) (single statement for both MURs), *available at* http://www.fec.gov/disclosure_data/mur/4451.pdf and

complaints were filed by minor parties, their presidential/vice-presidential nominees and/or the

candidates' campaign committees.  The complainants included Green Party entities, and the

Green Party's current national committee is a plaintiff in this litigation.[12] John Hagelin,

the Green Party's presidential nominee in 2000, was also a complainant.[13]  All those prior

administrative complaints alleged that CPD violated former 2 U.S.C. § 441b (now 52 U.S.C.

§ 30118(a)) by making prohibited corporate contributions to the major party presidential

candidates or their campaign committees because CPD was partisan and therefore not a qualified

"staging organization," because CPD's candidate selection criteria did not satisfy 11 C.F.R.

§ 110.13, or both.  But the FEC Commissioners unanimously voted in each enforcement matter

to find no reason to believe that CPD and the other respondents violated the Act and therefore

dismissed all the respective administrative complaints.[14]  Complainants in the five administrative

---

http://www.fec.gov/disclosure_data/mur/4473.pdf (same); First GCR in MURs 4897, 5004
and 5021 (Jul. 13, 2000) (single report for all three MURs), *available at*
http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf, http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf
(same), http://eqs.fec.gov/eqsdocsMUR/000027E7.pdf (same); First GCR in MUR 5207 (Aug. 2,
2002), *available at* http://eqs.fec.gov/eqsdocsMUR/000000AF.pdf; MUR 5378 (Mar. 12, 2004),
*available at* http://eqs.fec.gov/eqsdocsMUR/000012D0.pdf; MUR 5414 (Dec. 7, 2004),
http://eqs.fec.gov/eqsdocsMUR/00002D01.pdf; and MUR 5530 (May 4, 2005), *available at*
http://eqs.fec.gov/eqsdocsMUR/000043F0.pdf.

[12]     *See* First GCRs in MURs 4451, 4473, 4987, 5004, 5378, *supra* note 11.

[13]     *See* First GCR in MUR 5378, *supra* note 11.

[14]     Certification of Commission Action ("Certification") in MURs 4451 and 4473 (Feb. 25,
1998), *available at* http://www.fec.gov/disclosure_data/mur/4451.pdf (pdf pages 432-433),
http://www.fec.gov/disclosure_data/mur/4473.pdf (pdf pages 340-341) (same); Certification in
MURs 4987, 5004 and 5021 (July 19, 2000), *available at*
http://eqs.fec.gov/eqsdocsMUR/0000270F.pdf, http://eqs.fec.gov/eqsdocsMUR/00002795.pdf
(same) and http://eqs.fec.gov/eqsdocsMUR/000027E8.pdf (same); Certification in MUR 5207
(Aug. 8, 2002), *available at* http://eqs.fec.gov/eqsdocsMUR/000000B0.pdf; Certification in
MUR 5378 (Mar. 18, 2004), *available at* http://eqs.fec.gov/eqsdocsMUR/000012D1.pdf;
Certification in MUR 5414 (Dec. 13, 2004), *available at*
http://eqs.fec.gov/eqsdocsMUR/00002D02.pdf; and Certification in MUR 5530 (May 9, 2005),
*available at* http://eqs.fec.gov/eqsdocsMUR/000043F1.pdf.  The votes for these dismissals were
either 6-0, or 4-0 and 5-0 with other Commissioners not voting or recused.  *Id.*

enforcement matters initiated by minor party plaintiffs filed suits seeking judicial review of the

FEC's decisions pursuant to 2 U.S.C. § 437g(a)(8)(A) (now 52 U.S.C. § 30109(a)(8)(A)), but all

those cases were dismissed or decided in the FEC's favor.[15]

**(a)      MURs 4551 and 5573**

The FEC's positions regarding CPD's sponsorship status and candidate selection criteria

have been consistent for two decades.  The FEC first considered CPD's debates in MURs 4451

and 4473, where it rejected allegations that CPD's then-debate criteria were contrary to

11 C.F.R. § 110.13(c) and unanimously found no reason to believe that violations occurred in

connection with CPD's 1996 presidential and vice-presidential debates.[16]  FEC Statement of

Reasons ("Statement"), MURs 4451 and 4473 (Apr. 6, 1998) at 7, (single statement for both

MURs), *available at* http://www.fec.gov/disclosure_data/mur/4451.pdf and

http://www.fec.gov/disclosure_data/mur/4473.pdf (same).  The FEC explained that the debate

regulations sought to give debate sponsors wide leeway in deciding what specific criteria to use:

> During the [FEC]'s promulgation of § 110.13, the [FEC]
> considered the staff's recommendation to specify certain ostensibly
> objective selection criteria in the regulations and to expressly
> preclude the use of "[p]olls or other assessments of a candidate's
> chances in winning the nomination or election." . . . The [FEC]
> unanimously rejected this approach. . . .  Instead, the [FEC]
> decided that the use of outside professional judgment in
> considering candidate potential is permissible.

Statement at 8.  The Statement of Reasons noted that questions "can be raised regarding *any*

candidate assessment criterion," but asking "such questions each and every time a candidate

---

[15]      *See, e.g., Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996); *Buchanan v. FEC*,
112 F. Supp. 2d 58 (D.D.C. 2000); *Natural Law Party v. FEC*, 111 F. Supp. 2d 33
(D.D.C. 2000).  *Cf. Hagelin v. FEC*, 411 F.3d 237 (D.C. Cir. 2005) (substantial evidence
supported finding that CPD's decision to exclude third-party candidates from debate audience
was not to endorse a particular party; upholding FEC's decision not to revisit *Buchanan*).

[16]      Certification in MUR 4451 and 4473 (Feb. 25, 1998), *supra* note 11.

19

assessment criterion is used . . . would render the use of that criterion unworkable." *Id.* at 9 (emphasis in original). The FEC noted it would look for "specific evidence that a candidate assessment was 'fixed' or arranged in some manner to guarantee a preordained result," but otherwise would not "look behind and investigate every application of a candidate assessment criterion." *Id.* "[R]easonableness is implied" when using objective criteria. [60 Fed. Reg. at 64161.]" *Id.* at 9. CPD revised its candidate selection criteria prior to its 2000 debates, eliminating some factors but, consistent with the Statement of Reasons in MURs 4451 and 4473, retaining the polling element and for the first time specifying a 15% level of support criterion.

### (b)   MURs 4987, 5004, 5021, and *Buchanan*

Three administrative complaints were filed with the FEC regarding CPD's 2000 debates – MURs 4987, 5004 and 5021. Those complaints challenged both CPD's sponsorship status and the 15% support requirement. The complainants in MUR 4987 (including the Reform Party and presidential candidate Patrick J. Buchanan) alleged that CPD was created to provide the Republican and Democratic Parties with control over the debates and to exclude third-party candidates, that the major parties continued to control CPD, and that CPD did not satisfy the requirement that staging organizations not support or oppose political parties. They also alleged that CPD's selection criteria were subjective because based on polls. Admin. Compl. in MUR 4987 (Mar. 20, 2000), *available at* http://eqs.fec.gov/eqsdocsMUR/000026F4.pdf. The complainants in MUR 5004 (including the Natural Law Party and presidential candidate John Hagelin) made similar allegations. Admin. Compl. in MUR 5004 (April 24, 2000), *available at* http://eqs.fec.gov/eqsdocsMUR/00002787.pdf (4/24/2000).

The FEC found no reason to believe any violations occurred and dismissed all three

matters.[17]  As explained in the General Counsel's Report, which provided the explanation for the

FEC's decisions in these matters, the available evidence indicated that CPD complied with the

requirements of section 110.13 governing sponsorship of candidate debates:

> While the Reform Party and the Natural Law Party argue that the
> CPD's Co-Chairmen, Paul G. Kirk, Jr. and Frank J.
> Fahrenkopf, Jr., are *former* Chairmen of the Democratic and
> Republican Parties respectively, they have not provided evidence
> that the CPD is controlled by the DNC or the RNC.  There is no
> evidence that any officer or member of the DNC or the RNC is
> involved in the operation of the CPD.  Moreover, there does not
> appear to be any evidence that the DNC and the RNC had input
> into the development of the CPD's candidate selection criteria for
> the 2000 presidential election cycle.  Thus, it appears that the CPD
> satisfied the requirement of a staging organization that it not
> endorse, support or oppose political candidates or political parties.
> 11 C.F.R. § 110.13(a).

First General Counsel's Report ("First GCR") in MURs 4897, 5004 and 5021 (Jul 13, 2000)

(single report for all three MURs), *available at* http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf,

http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf (same),

http://eqs.fec.gov/eqsdocsMUR/000027E7.pdf (same).  The FEC also rejected the claims that

CPD's selection criteria were not objective and were designed to result in the selection of pre-

chosen participants because they were based on polling.  The Report noted that CPD's criteria

had been challenged in MURs 4451 and 4473, and while CPD used different criteria in 1996,

CPD's 2000 criteria "appear to be even more objective than the 1996 criteria," since the

15% support requirement makes it "easier to determine which candidates will qualify."  *Id*. at 18.

The complainants in both MURs 4987 and 5004 sought judicial review of the FEC's

dismissal of their administrative complaints.  Summary judgment was granted to the FEC in both

cases.  *Buchanan v. FEC,* 112 F. Supp. 2d 58 (D.D.C. 2000); *Natural Law Party v. FEC,* Order,

---

[17]     Certification in MURs 4987, 5004 and 5021, *supra* note 11.

No. 00-cv-2138 (ESH) (D.D.C. Sept. 21, 2000) (granting summary judgment to FEC, citing

*Buchanan*), *available at* http://www.fec.gov/litigation/NatLaw_dc_order_judg.pdf.

      *Buchanan* held that the FEC did not abuse its discretion when it found that CPD was

nonpartisan.  The administrative complainants had submitted much of the same information that

plaintiffs do here.[18]  The court noted the sworn testimony of CPD's executive director that CPD

received no funding from any political party, that not every member of CPD's board of directors

identified with the Democratic or Republican parties, and that no CPD board member was an

officer or director of the DNC or RNC.  112 F. Supp. 2d at 72.  The declaration also stated that

CPD's 2000 selection criteria "were not adopted with any partisan (or bipartisan) purpose nor

were they adopted with the intent to keep any party or candidate from participating in the CPD's

debates or to bring about a preordained result."  *Id.* (internal quotations omitted).  The court

found no abuse of discretion in the FEC's conclusions that the complainants "failed to show

(1) that 'the CPD is controlled by' the two major parties, (2) that any officer or member of the

DNC or RNC is involved in the operation of the CPD, and (3) that the DNC and RNC had input

into the development of the CPD's candidate selection criteria for the 2000 presidential election

cycle."  *Id.* at 70-71 (footnote and internal quotations omitted).

---

[18]      The purported evidence included the "circumstances surrounding the CPD's formation," including the involvement of the chairmen of the Democratic and Republican National Committees in founding CPD and their subsequent service as CPD co-chairs, and the involvement of "current and former elected officials from both parties as well as party activists" as CPD directors.  112 F. Supp. 2d at 71.  The complainants also cited "two written statements issued in the mid-1980s when CPD was formed" which "described the CPD as a 'bipartisan' organization designed to sponsor nationally televised debates between the two major parties' nominees."  *Id.*  Finally, the complainants "provided evidence which they contend indicates that the two major parties exerted control and influence over the CPD during the past three sets of presidential debates."  *Id.*  This included "congressional testimony of an official of President Bush's 1992 campaign which suggested that the two major parties … determined whether third-party presidential candidate Ross Perot would be allowed to participate in the debates."  *Id.*

The district court in *Buchanan* recognized that the evidence "marshaled in support of" the administrative complaints was "not insubstantial," but applying the deferential standard of review, the court upheld the FEC's dismissal of the administrative complaint as to CPD's status as a staging organization:

> An ordinary citizen might easily view the circumstances surrounding the creation of the CPD along with the evidence of major-party influence over the past three debates as giving some 'reason to believe' that the CPD always has supported, and still does support, the two major parties to the detriment of all others. But, for better or worse, that is not the standard I must apply here.

112 F. Supp. 2d at 72-73.  The court went on to note that "[t]he 'reason to believe' standard . . . itself suggests that the FEC is entitled, and indeed required, to make subjective evaluation of claims."  *Id.* (citing *Orloski*, 795 F.2d at 168).  The FEC is expected to weigh evidence and make credibility determinations, and those must be upheld as long as the agency presents a "coherent and reasonable" explanation.  *Id.* (citing *Carter/Mondale*, 775 F.2d at 1155).

Similarly, the district court upheld the FEC's decisions with respect to the 15% support requirement.  Evaluating "whether it was unreasonable for the FEC to conclude that the CPD employed an 'objective' criterion when it required that participants have 'a level of support of at least 15% (fifteen percent) of the national electorate as determined by five selected national public opinion polling organizations,'" the district court noted:

> As the D.C. Circuit has noted, 11 C.F.R. § 110.13(a) "does not spell out precisely what the phrase 'objective criteria' means . . .." The regulation therefore does not "mandat[e] a single set of 'objective criteria' all staging organizations must follow," but rather "[gives] the individual organizations leeway to decide what specific criteria to use."  As a result, "[t]he authority to determine what the term 'objective criteria' means rests with the agency . . . and to a lesser extent with the courts that review agency action."

112 F. Supp. 2d at 73 (internal citations omitted)).  The district court found that "[i]n view of the

23

substantial deference [the Court] must accord to the FEC's interpretation of its own regulations, [the Court] cannot conclude that it was plainly erroneous or inconsistent with the regulation for the FEC to find that the 15% support level set by the CPD is 'objective' for the purposes of 11 C.F.R. § 110.13(c)." 112 F. Supp. 2d at 74. The court noted that "several third party candidates have in the past achieved over 15% support in the polls taken at or around the time that the debates are traditionally held," *i.e.*, " the level of support required by the CPD." *Id.* Noting the FEC's consistency — "an indicium of reasonableness" — and appropriately deferring to the agency, the court found that "[w]hile a lower threshold of support might be preferable to many, such a reading is neither compelled by the regulation's text nor by the drafters' intent at the time the regulation was promulgated." *Id.* at 74-75.

In *Natural Law Party II,* the district court granted the FEC's motion for summary judgment for the reasons set forth in *Buchanan.* Order and Judgment, No. 00-CV-0238 (D.D.C. Sept. 21, 2000). The Court of Appeals summarily affirmed in relevant part in both *Buchanan* and *Natural Law Party II.*[19]

### (c)  MURs 5207, 5378, 5414 and 5530, and *Hagelin*

Four additional administrative complaints were filed with the FEC regarding CPD's 2000 and 2004 presidential debates, MURs 5207, 5378, 5414, and 5530. In all four enforcement actions, the FEC followed its General Counsel's recommendations, unanimously found no reason to believe that any violations occurred, and dismissed the complaints.[20] Seven

---

[19]  *See Buchanan v. FEC*, Order, No. 00-5337 (D.C. Cir. Sept. 29, 2000) (fifteen percent requirement not illegal to the extent it excludes candidates qualifying for general election campaign funding), *available at* http://www.fec.gov/litigation/buchanan00_ac_order.pdf ; *Natural Law Party v. FEC,* Order, No. 00-5338 (D.C. Cir. Sept. 29, 2000) (fifteen percent requirement not illegal because it favors some candidates over others), *available at* http://www.fec.gov/litigation/NatLaw_dc_order.pdf.

[20]  *See* First GCRs and Certifications in MUR 5207, 5378, 5414 and 5530, *supra* note 11.

complainants in MUR 5378, including the Green Party plaintiff in this litigation, challenged the dismissal in that matter. *Hagelin v. FEC*, No. 04-cv-0731-HHK (D.D.C. filed May 5, 2004).

In *Hagelin*, the plaintiffs challenged CPD's eligibility to sponsor presidential debates under 11 C.F.R. § 100.13. They reiterated allegations in prior administrative complaints that CPD was partisan, including the allegations that it was founded by the two major parties and subsequently co-chaired by the former heads of the DNC and RNC; that 9 of 11 CPD directors were prominent Democrats or Republicans; and that no director was a third-party member. Plaintiffs also claimed that CPD's decision to exclude all third-party presidential candidates from the audience of its 2000 debates provided the contemporaneous evidence of partisanship that was missing in *Buchanan*.

The FEC had dismissed the *Hagelin* plaintiffs' administrative complaint in MUR 5378, noting that the agency had already dismissed similar allegations that CPD was partisan and that dismissal had been upheld in *Buchanan*. The FEC accepted CPD's justification for excluding third-party presidential candidates from the 2000 debate audiences – concern that a third-party candidate (Ralph Nader) would disrupt the live broadcast of the debates – and concluded that CPD's actions in 2000 were not animated by partisanship. First GCR in MUR 5378 (July 13, 2000), *available at* http://eqs.fec.gov/eqsdocsMUR/0000270E.pdf. The district court in *Hagelin* rejected the FEC's analysis, holding that the FEC ignored evidence regarding the exclusion which the district court concluded was unrelated to CPD's concern over potential disruption of the debates, and stating that CPD's exclusion policy was "partisan on its face." *Hagelin v. FEC*, 332 F. Supp. 2d 71, 72, 80 (D.D.C. 2004).

The D.C. Circuit reversed and upheld the FEC's decision. *Hagelin*, 411 F.3d 237 (D.C. Cir. 2005). The Court of Appeals held that "given the deferential standard of review, the

question before the district court – and now before us – is not whether the CPD provided sufficient reasons for its exclusion of each and every candidate, but rather whether substantial evidence in the record supports the FEC's finding that the CPD's exclusion of third-party candidates was not partisan." *Id.* at 243.  Concluding that "substantial evidence supports the FEC's finding that the CPD did not act in a partisan manner, we find no fault in the FEC's refusal to revisit the evidence of possible past influence."  *Id.* at 244 (internal quotation omitted).

### 2.    The FEC's Determination Here Regarding CPD's Debate Sponsor Status Was Lawful

The FEC's determinations in the dismissals under review — that there was no reason to believe CPD failed to qualify as a debate sponsor under 11 C.F.R. § 110.13(a) — were lawful. The vast majority of information presented to the FEC was essentially identical to what had been presented before.  The FEC consistently rejected similar allegations that CPD was partisan in past MURs and those conclusions were upheld in *Buchanan*, *Natural Law Party*, and *Hagelin*. So it was eminently reasonable that the FEC did not reconsider its conclusions based on previously submitted information or spell those conclusions out in great detail.  The Factual and Legal Analysis in both MURs concluded that the new complaints "make the same allegations regarding the same candidate selection criteria that the [FEC] has considered and found insufficient to support a reason to believe finding."  (AR3181 (footnote omitted); AR5009-AR5010 (same))."  The FEC considered and rejected the complainants' new allegations related to an interview by CPD Co-Chair Fahrenkopf, concluding that the full Fahrenkopf statement submitted by respondents refuted the allegations.  (AR3180-AR3181; AR5008-AR5009.) Plaintiffs challenge the FEC's determinations in MURs 6869 and 6942 that (i) CPD was a qualified debate sponsoring organization under section 100.13(a) and (ii) CPD's public support

criterion (utilized since 2000) was sufficiently "objective" under section 100.13(c). (LPF Mem. at 29-40.)  Both of these claims are without merit.

The FEC's initial 1980 debate regulations provided that nonprofit organizations exempt from federal taxation under 26 U.S.C. § 501(c)(3), and those exempt under 26 U.S.C. § 501(c)(4) which do not "endorse, support or oppose political candidates or political parties, may stage *nonpartisan* candidate debates in accordance with 11 C.F.R. §§ 110.13(b) and 114.4(e)."  Former 11 C.F.R. § 110.13(a) (1980).  Those regulations further provided that "[t]he structure of debates staged in accordance with [11 C.F.R. 110.13 and 114.4(e)] is left to the discretion of the staging organization[], provided that (1) [s]uch debates include at least two candidates, and (2) such debates are *nonpartisan* in that they do not promote or advance one candidate over another."  Former 11 C.F.R. § 110.13(b) (1980) (emphasis added).  Thus, the focus of both subsections was on the "nonpartisan" structure of the debates, *i.e.* the activity.  When the debates regulation was revised in 1996, the FEC removed the word "nonpartisan" from section 110.13(a) but retained the requirements that debate sponsors must be nonprofit, tax-exempt organizations which do not "endorse, support or oppose political candidates and parties."[21]

The FEC reasonably determined that there was no evidence in the administrative record that CPD itself had endorsed, supported, or opposed candidates or parties under 11 C.F.R. § 110.13(a), just as the agency had repeatedly found in considering similar evidence over the last two decades in analyses upheld in court challenges like this one.  The relevant inquiry is whether *CPD itself* has engaged in partisan activities, not whether those affiliated with it may have

---

[21]    The FEC also replaced the language in section 110.13(b)'s requirement that "such debates are nonpartisan in that they do not promote one candidate over another" with more direct language specifying that "[t]he staging organization does not structure the debates to promote or advance one candidate over another."  11 C.F.R. § 110.13(b)(2).  *See* 60 Fed. Reg. at 64271. This continues the focus upon the debate structure, *i.e.* the activity.

engaged in such activities in other capacities.  Plaintiffs point to no evidence in the record of CPD engaging in activity that would disqualify it from sponsoring debates.

Plaintiffs note that the regulations do not define the phrase "endorse, support, or oppose" in section 110.13(a) and they wrongly claim that the FEC has interpreted that subsection to require "control" by political party committees over nonprofit tax exempt organizations before they become disqualified from sponsoring debates.  Plaintiffs assert that since *Buchanan* the FEC has interpreted the phrase "endorse, support, or oppose" to require evidence of political party or candidate "control" over debate sponsors, involvement in the operation of the organization, or input into the development of candidate selection criteria.  (LPF Mem. at 30.)

The *Buchanan* opinion does discuss potential major party control over CPD, but as plaintiffs acknowledge, the FEC explained in *Buchanan* that the statements regarding control in MURs 4987, 5004, and 5021 were in response to specific allegations regarding control in those enforcement cases.[22]  And the district court in *Buchanan* agreed with the FEC, "finding that the FEC's statement was geared toward refuting the specific contention made in plaintiffs' administrative complaint that the CPD was created to give the two major parties 'control over' the presidential debates.'"  (LPF Mem. at 12 (quoting *Buchanan*, 112 F. Supp. 2d at 71-72 n.8).) Nevertheless, plaintiffs suggest that the FEC has "effectively adopted [the control] test *sub silentio* as its governing interpretation," simply because the agency has dismissed subsequent administrative complaints against CPD by citing *Buchanan* without separately discussing the "endorse, support or oppose standard."  But plaintiffs cite no instance in which the agency *actually said* it was adopting a "control over" test and, in any event, that test indisputably is also

---

[22]     (*See* LPF Mem. at 11-12 (citing Shapiro Dec. Exh. 5 (Buchanan summary judgment motion) at 13-14 (Doc. 37-2 at 103-104), and Shapiro Dec. Exh. 6 (FEC opposition) at 5-6 (Doc. 37-2 at 131-132)).)

a helpful aid in determining whether a group's activities are nonpartisan.

Plaintiffs also claim the FEC erred in relying on its dismissals of the prior MURs involving CPD to dismiss the administrative complaints in MURs 6869 and 6942. However, although plaintiffs here made multiple administrative submissions, for the most part they repeat the same legal and factual claims (and even attach some of the same exhibits) as the prior administrative complaints the FEC dismissed, particularly regarding the founding of CPD and the overlap between CPD and the major parties, as summarized in *Buchanan*.[23]

Plaintiffs argue that their administrative complaints here are distinguishable because they provided "contemporaneous evidence of influence by the major parties" and "new facts about the CPD's bipartisan bias and current partisan activity" that was lacking in *Buchanan*. (LPF Mem. at 33-34 (quoting *Buchanan*, 112 F. Supp. 2d at 72).) But plaintiffs do not and cannot show that CPD, a corporate entity, has directly endorsed, supported, or opposed political parties or candidates. Instead, they now contend that CPD's co-chairs donated to Republican and Democratic Party committees and candidates (and "orchestrated" political contributions by others), and that other CPD directors have "similarly endorsed or supported political candidates." (LPF Mem. at 34.) Plaintiffs also assert that "since 2005, when the FEC last addressed a challenge to the CPD's debate staging criteria, the CPD's chairmen and many of its directors have been *dedicated partisans* for the two major parties." (LPF Mem. at 34 (emphasis added).) They do not suggest, however, that this partisan activity *began* since 2000 (when *Buchanan* was decided) or 2005 (when MUR 5530 was dismissed). Indeed, as the court noted in *Buchanan,* the

---

[23]     Plaintiffs even resubmitted the 1985 Memorandum of Agreement on Presidential Candidate Joint Appearances and the 1987 Press Release from MURs 4451, 4473, 4987, 5004 and 5021, *Buchanan* and *Natural Law Party. Compare* AR2140/AR4248 and AR2240-41/AR4145-46 *with* Administrative Complaint ("Admin. Compl.") in MUR 4473, *available at* http://www.fec.gov/disclosure_data/mur/4473.pdf (pdf pages 10-12), and Admin. Compl. in MUR 4987, *available at* http://eqs.fec.gov/eqsdocsMUR/000026F4.pdf (pdf pages 58-60).

administrative complaints in MURs 4897, 5004, and 5021 alleged that CPD's founders were serving as chairmen of their respective national party committees, and members of CPD's board of directors "consisted largely of current and former elected officials from both parties as well as party activists."  112 F. Supp. 2d at 71.  While some of CPD's co-chairs and directors have changed, plaintiffs' allegations regarding partisan activities and contributions do not materially distinguish this case from the prior MURs and court decisions.

The FEC considered CPD Chairman Fahrenkopf's reported statement regarding CPD practices, but it accepted the unrebutted explanation in his sworn declaration attached to CPD's response that he was merely reciting the obvious fact that most CPD debates have involved two major party candidates.  (AR3180-AR3181; AR5008-AR5009.)  Plaintiffs argue that the FEC's decision is entitled to no deference in light of its alleged "history of accepting CPD claims without question" and alleged failure to consider plaintiffs' evidence of current partisan activity by CPD directors (LPF Mem. at 35-36) (footnote omitted), but we have shown those assertions to be baseless.

Plaintiffs also claim that the FEC erred by notifying CPD and its co-chairmen of MURs 6869 and 6942, but not notifying the other ten CPD directors of the administrative complaints or discussing them in the Analyses in these matters.  (LPF Mem. at 36.)  As plaintiffs acknowledge (*Id.* at 36 n.17), however, this Court has held that the FEC's decision not to notify every one of a large number of peripheral, similarly situated respondents is almost always harmless error.  *Nader v. FEC*, 823 F. Supp. 2d 53, 67-68 (D.D.C. 2011) (citing *FEC v. Club for Growth, Inc., 432* F. Supp. 2d 87, 90 (D.D.C. 2006)), *motion to alter or amend denied*, 854 F. Supp. 2d 30, 33-34 (D.D.C. 2012), *aff'd on other grounds*, 725 F.3d 226 (D.C. Cir. 2013).  As in *Nader*, there is no reason to believe that if the FEC had notified all named respondents, it

30

would have reached a different decision.  823 F. Supp. 2d at 67-68 (citing *City of Portland v EPA*, 507 F.3d 706, 716 (D.C. Cir 2007)).  None of those respondents was required to respond or provide any information absent a subpoena.  Indeed, the notice procedures are for the benefit of those alleged to have violated the Act, not for the administrative complainants.  823 F. Supp. 2d at 68.  Since MURs 6869 and 6942 were closed as to all those named in the administrative complaints, "the only persons and entities who could have been prejudiced by the FEC's error were ultimately absolved of liability."  *Id.*

Plaintiffs also claim that the FEC's failure to specifically discuss CPD's directors in the Analyses renders the FEC's dismissal decisions unlawful (LPF Mem. at 36 n.17), but the allegations against all named respondents (notified or not) were the same, and the FEC's no reason to believe findings against CPD and the co-chairs necessarily resolve the identical allegations with respect to all the CPD directors.  Accordingly, even if separate analysis regarding the other directors was required, plaintiffs cannot demonstrate they were harmed.

### 3.      The FEC's Determination Regarding CPD's Polling Criterion Was Lawful

Plaintiffs' administrative complaints in MURs 6869 and 6942 also alleged that the CPD's reliance upon public polling for debate candidate selection, particularly the 15% public support level, was subjective and designed to exclude third-party and independent candidates in violation of 11 C.F.R. § 110.13(c), (AR2045-AR2067; AR4049-AR4071), but this claim has been rejected repeatedly by the FEC and reviewing courts, as explained above.  As CPD noted, the FEC dismissed several prior administrative complaints involving that polling issue, including MURs 4987, 5004, and 5021, which were upheld in *Buchanan*.  (AR2672-AR2678.)  After discussing these prior dismissals, the FEC's Factual and Legal Analyses in MURs 6869 and 6942 reached the same conclusion, namely that the "'15% support level set by the CPD' in

31

its third criterion was not inconsistent with the [FEC's] regulations."  (AR3178-AR3179; AR5007.)

The FEC clearly was entitled to follow its prior decision, upheld in *Buchanan*. As the district court recognized in that case, while section 110.13(c) may "not spell out precisely what the phrase 'objective criteria' means," the regulation does not "mandat[e] a single set of objective criteria all staging organizations must follow, but rather [gives] the individual organizations leeway to decide what specific criteria to use."  "As a result, '[t]he authority to determine what the term objective criteria means rests with the agency . . . and to a lesser extent with the courts that review agency action."  112 F. Supp. 2d at 73 (citations and internal quotations omitted).  After discussing the specific objections raised in that case, the district court concluded that "it was not arbitrary or capricious for the FEC to conclude that the CPD's selection criteria are objective."  *Id.* at 76.  The court found that plaintiffs failed to present significant evidence demonstrating that the FEC's interpretation was either at odds with the regulation's plain language or the FEC's intent at the time the regulation was promulgated, and "find that the FEC provided a 'sufficiently reasonable' explanation for its decision which was consistent with FEC precedent."  *Id.* at 76 (citing *DSCC*, 454 U.S. at 39).

In this case, plaintiffs claim they submitted new evidence to suggest polling "would systematically work to minor-party candidates' disadvantage," a showing the *Buchanan* plaintiffs were unable to make.  (LPF Mem. at 37 (quoting 112 F. Supp. 2d at 75).)  The claim was explicitly rejected in *Buchanan* when the district court recognized that "several third-party candidates," including George Wallace, John Anderson and Ross Perot, "have in the past achieved over 15% support in the polls taken at or around the time that the debates are traditionally held."  112 F. Supp. 2d at 74 (citing declaration by CPD Executive Director Janet H.

Brown).  The FEC's Analyses considered and permissibly dismissed these claims again,

reasoning that disputes over the likelihood of another third party candidate achieving the polling

threshold could be set aside because "the available information does not indicate  . . . that the

CPD failed to use pre-established, objective criteria."  (AR3181; AR5010.)  And plaintiffs'

arguments regarding the alleged inaccuracy of polling are belied by their own reliance on polling

and their apparent concession that it may properly be used as one way for candidates to qualify

for debates.  (AR3181, AR5010; *e.g.*, LPF Mem. at 1 n.2, 17.)

      The FEC also rejected the argument raised by the Green Party and LNC in MUR 6942

that "the Gallup Organization recently announced that it will no longer conduct public opinion

polling for the 2016 presidential election, which, Complainants argue, indicates that Gallup

recognizes that 'horse-race polling has become inherently unreliable.'  MUR 6942 Supp. at 3,

Ex. 9 (Oct. 21, 2015)."  (AR5003.)  The respondents pointed out that CPD does not rely on a

single organization's polling results, but rather on an average of five national polls, and Gallup

Poll's editor-in-chief Frank M. Newport averred that "Gallup's decision not to engage in horse

race polling in the 2016 primary campaign season is based on allocation of resources[,] not any

lack of confidence in Gallup's ability to conduct accurate polls."  (AR5003 (quoting

Supplemental Declaration of Frank M. Newport ¶ 15 (AR4985-AR4986).)  The FEC concluded

that '[t]he Supplement's 'additional evidence' regarding Gallup's decisions and motivations

appears to be speculative and is rebutted by a sworn declaration."  *(*AR5003.)  The FEC was

entitled to rely upon such a declaration.  *See Buchanan*, 112 F. Supp. 2d at 72-73 (FEC reliance

on sworn statement).

      **4.**      **The Relief Plaintiffs Request Is Improper**

      Plaintiffs seek declarations that the FEC's decisions were unlawful and that CPD violated

the various provisions of law plaintiffs have identified.  (Sec. Am. Compl.  ¶¶ 139-141,

Requested Relief ¶¶ (a), (c)-(f).)  Plaintiffs seek an order directing the FEC to conform to such

declarations within 30 days and, if the FEC fails to do so, an order that plaintiffs may bring a

civil action both to remedy the violations alleged in the administrative complaint and obtain a

declaration that the candidate selection rules for CPD's 2016 presidential debates also violate

11 C.F.R. § 110.13.  (*Id,* Requested Relief ¶ (g)).

  The sole remedy a court may grant to plaintiffs in these challenges to FEC dismissals is a

declaration "that the dismissal of the complaint or the failure to act is contrary to law" and an

order "direct[ing] the [FEC] to conform with such declaration within 30 days."  52 U.S.C.

§ 30109(a)(8)(C).  *See Perot,* 97 F.3d at 557-558.  The court may not accept plaintiffs' invitation

to mandate an outcome on remand; the FEC remains free to consider other rationales.  *FEC v.*

*Akins*, 524 U.S. 11, 25 (1998); *see, e.g.*, *La Botz v. FEC*, 889 F. Supp. 2d 51, 63 n.6 (D.D.C.

2012).  Only if the FEC could in no way be said to have conformed to a generic remand could

the Court then grant plaintiffs a private right of action.  52 U.S.C. § 30109(a)(8)(C); *see FEC v.*

*Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 488 (1985); *Perot,* 97 F.3d at 557-

558.

  **C.** **The FEC's Denial of LPF's Petition for Rulemaking Was a Proper Exercise**
   **of Agency Discretion and Easily Satisfies the Highly Deferential Standard of**
   **Review**

  When considering an agency's denial of a rulemaking petition, a court examines the

petition for rulemaking, responsive comments, and the agency's explanation of its decision.

*Defenders of Wildlife*, 532 F.3d at 920; *Prof'l Pilots Fed.*, 118 F.3d 758, 763 (D.C. Cir. 1997).

Here, the FEC issued a Notice of Disposition which set forth a comprehensive explanation of its

reasonable decision not to institute a rulemaking.  Plaintiffs have not shown that the "most

compelling circumstances" require this Court to intervene, nor can they point to any "plain error of law or fundamental change in the factual circumstances." *Nat'l Customs*, 883 F.2d at 97.

### 1. The Green Party's Claim Against the Debate Regulations Is Precluded

As an initial matter, the Green Party's challenge to the debate regulations is barred because it previously litigated the question in *Becker*, 230 F.3d at 390-97. The Association of State Green Parties was one of the parties contending in that case that 11 C.F.R. §§ 110.13 and 114.4(f) are contrary to FECA. *Id.* at 389 n.10, 390. Green Party of the United States, a plaintiff in this case, is the successor to that entity. Advisory Op. 2001-13, at 1-2. Having lost the question in *Becker*, 230 F.3d at 390-97, the Green Party's challenge to the regulations here is barred by the doctrine of res judicata/claim preclusion. *Ind. Power & Light Co. v. EPA*, Nos. 01-1039, 01-1494, 2002 WL 1359474 (D.C. Cir. 2002); *Nat. Res. Def. Council, Inc. v. Thomas*, 838 F.2d 1224, 1252 (D.C. Cir. 1988). The Green Party is barred from relitigating all matters that were determined or could have been raised in *Becker*. *Thomas*, 838 F.2d at 1252.

### 2. The FEC's Determination That Polling Can Be an Objective Criterion for Debate Selection Was Reasonable

In the Notice, the FEC set forth compelling reasons why the Petition failed to establish that polling was an inherently unobjective and inaccurate method for selecting debate participants, and the agency concluded that a per se rule prohibiting the use of polling as a debate admission criterion was unwarranted. (*See* AR1904-05.) The FEC noted that the Petition largely made policy arguments to change the debate rules to expand the number of debate participants, but the rule was intended to ensure that costs of debate staging organizations do not constitute prohibited contributions. (AR1904.)[24] Contrary to plaintiffs' claims (LPF Mem. at 40), the FEC

---

[24]     Indeed, the amicus briefs filed by FairVote and Independent Voter Project do so as well.

clearly acknowledged the Petition's anticorruption argument that a polling threshold "unfairly benefits major party candidates." (AR1903.) Rather than promulgating a new rule, however, the FEC determined that the current rules, which provide an exception to the corporate contribution ban at 52 U.S.C. § 30118, could accomplish that anticorruption purpose by providing sponsoring organizations discretion to choose their own criteria so long as such organizations use objective and neutral debate criteria that do not result in the selection of certain pre-chosen candidates. (AR1904.) *See also Perot*, 97 F.3d at 559 (explaining that the FEC's debate regulation does not mandate a single set of objective criteria that all staging organizations must follow but gives leeway to those organizations to decide on their own specific criteria).

Plaintiffs complain that the FEC has consistently rejected challenges to CPD's 15% polling threshold, but they must acknowledge that in *Buchanan*, 112 F. Supp 2d at 76, the court upheld the FEC's determination that the threshold did not violate the Act. (LPF Mem. at 12.) As explained above, the plaintiffs in *Buchanan* made most of the same arguments that the Petition made in this case, *see* 112 F. Supp. 2d at 73-74, and the FEC specifically cited that case in denying the Petition (AR 1904). The court found that 15% was objective, as it was "sufficiently measurable and verifiable" according to one common definition of an objective requirement, and was reasonable given the experience of several past third party candidates. 112 F. Supp. 2d at 74. The *Buchanan* court noted that all polls have a margin of error, so "some degree of imprecision is inevitable in almost any measurement," and "[s]uch imprecision alone does not make a predictor subjective such that it favors one group of candidates over another." *Id.* at 75. The court noted that the margin of error could work equally in both directions, so that it could just as easily result in inclusion of a candidate by overestimating the candidate's support as exclusion of the candidate by underestimating his or her support. *Id.*

36

Here, LPF's own expert acknowledged that with respect to the margin of error in a three way race, "it was wholly unclear whether the polling over- or underestimated the potential of a third party candidate."  (AR0190.)  The Petition's other supporting documentation made similar observations that polls can overestimate a candidate's actual support among voters – thus a third party candidate could be eligible for a debate even if his or her actual approval numbers were below the threshold.[25]  And for all of the objections that LPF raises to the use of polling, *LPF itself relied on polling results* in advancing the claim that the public supports more independent and third party candidates.[26]

Further, the D.C. Circuit in a companion case to *Buchanan* involving the polling threshold also affirmed another district court's ruling that relied on the opinion in *Buchanan*. Order, *Natural Law Party*, No. 00-02138 (D.D.C. Sept. 21, 2000), http://www.fec.gov/law/litigation/NatLaw_dc_order_judg.pdf, *aff'd per curiam*, Order, No. 00-5338 (D.C. Cir. Sept. 29, 2000), http://www.fec.gov/law/litigation/NatLaw_dc_order.pdf.  The D.C. Circuit ordered that "to the extent that appellants argue that even if the safe harbor provisions apply, the fifteen percent electoral support requirement is illegal because it favors some candidates over others, the district court's order filed September 21, 2000 be affirmed substantially for the reasons stated therein."  *Id.*

---

[25]     (*See* Nate Silver, *The Polls Were Skewed Toward Democrats*, FiveThirtEight.com (Nov. 5, 2014, 9:08 a.m.), http://fivethirtyeight.com/features/the-polls-were-skewed-toward-democrats, (AR0332, AR0335) (stating that during 2014 mid-term elections, polls "overestimated the Democrat's performance by 4 percentage points" and that "year's polls were not especially inaccurate.").)

[26]     (*See, e.g.*, *68% Think Election Rules Rigged for Incumbents*, Rasmussen (July 13, 2014), (AR 0035), Pet. Exh. 1; Douglas E. Schoen, LLC, Independents and the Presidential Debate System (Aug. 29, 2014) (summarizing findings of public opinion survey on independent candidates and noting the margin of sampling error for the poll was +/-3%) (AR 0038-39), Pet. Exh. 2; LPF Mem. at 1 n.2, 17.)

In concluding that the use of polling results remains a lawful way to select debate participants, the FEC also properly relied on its own previous consideration and rejection of an earlier proposal to preclude the use of polling in debate criteria.[27]  (AR1904.)  The FEC's Notice stated that, as the agency had noted in considering a 1994 proposal, "'it would make 'little sense' if 'a debate sponsor could not look at the latest poll results even though the rest of the nation could look at this as an indicator of a candidate's popularity.'"  (*Id.* (citing FEC Statement of Reasons at 8 n. 7, MUR 4451/4473 (Commission on Presidential Debates) (Apr. 6, 1998)).)  The FEC noted that the *Buchanan* court used similar reasoning in supporting the agency's position, quoting the court:  "'[i]t is difficult to understand why it would be unreasonable or subjective to consider the extent of a candidate's electoral support prior to the debate to determine whether the candidate is viable enough to be included.'"  (*Id.* (citing *Buchanan*, 112 F. Supp. 2d at 75).)  Plaintiffs fault this reasoning, (LPF Mem. at 41), but the point that the nation continues to rely heavily on political polling is so basic that it could be the subject of judicial notice and hardly requires citation or elaboration.

Plaintiffs say that they are not opposed to the use of polling to measure viability as long as sponsoring organizations cannot exclude debate participants based upon a polling threshold. (LPF Mem. at 41.).  This position is untenable.  Plaintiffs' position seems to be that polling is reliable enough to be used as a debate criterion option, but not reliable enough to be a requirement that might lead to the exclusion of at least some non-major party candidates.  It is

---

[27]    As indicated in the Petition, prior to the promulgation of the current debate rules, the Office of General Counsel had recommended that the Commission adopt regulations that would preclude the use of polling in debate criteria.  (*See* AR0013 n. 26 (citing Mem. from Lawrence M. Noble et al., Agenda Document 94-11 (Feb. 8, 1994).)  The Commission, however, instead adopted the current set of rules that provide staging organizations with discretion to choose their own pre-established, objective criteria.  *See Corporate and Labor Organization Activity; Express Advocacy and Coordination with Candidates*, 60 Fed. Reg. 64260, 64262 (Dec. 14, 1995).

hard to avoid the conclusion that plaintiffs seek to provide enough paths to any general election debate to assure participation by more than two candidates, but the FEC's regulation requires only a minimum of two, 11 C.F.R. § 110.13(b)(1), and that minimum number along with other requirements carries out the statutory purpose of avoiding corporate contributions to candidates. Plaintiffs contend that polls are "ill-suited to measuring the viability of a third party or independent candidate," (LPF Mem. at 41 n. 19), but it seems obvious that low poll numbers for such a candidate likely reflect the reality that he or she lacks significant electoral support in the months leading up to the general election debates.  That is not a situation caused by the admission criteria of general election debate sponsors.  As the Notice observed, the fact that a polling criterion may tend to exclude third party or independent candidates does not mean that it lacks objectivity.  (AR1905.)

The FEC squarely addressed the data presented by the Petition reflecting the hurdles that third party and independent candidates could face in reaching the 15% threshold.  (AR1905.) Nonetheless, the FEC determined that the Petition primarily targeted CPD's use of polling and concluded that "[t]he use of polling data by a single debate staging organization for candidate debates for a single office, however, does not suggest the need for a rule change." (*Id.*)  Further, the FEC observed, "[t]he petitioner provided data intended to demonstrate that polling figures are sometimes inaccurate, but the fact that polls can be *inaccurate* does not mean that a staging organization acts *unobjectively* by using them." (*Id.* n.6.) (emphasis in original).  Indeed, the documentation presented by the Petition itself indicated that polls can be objective measurements and provide some worthwhile predictive information on candidates, even in the more volatile

primary election context.[28]  To the extent that a debate sponsor were to actually use non-objective criteria designed to select certain pre-chosen candidates, the FEC determined that such conduct would be illegal under the current rule.  (*Id.*)  In such cases, the FEC would pursue enforcement action.

Accordingly, because LPF was unable to establish that polls were inherently unreliable or biased, the FEC properly exercised its discretion in deciding not to institute a rulemaking to impose a *per se* ban on the use of polling as a requirement for debate participation.

> **(a)     The FEC's Decision to Evaluate the Objectivity of Specific Debate Selection Criteria Through the Enforcement Process Was Reasonable**

Plaintiffs contend that the FEC cannot address corrupt uses of polling thresholds on a cases-by-case basis (LPF Mem. at 43), but the FEC's decision to review specific allegations of bias in debate criteria in that manner rather than promulgate a specific rule on polling is consistent with well-established legal precedent.  *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947) ("And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."); *Am. Gas Ass'n v. FERC*, 912 F.2d 1496, 1519 (D.C. Cir. 1990) ("But agency discretion is at its peak in deciding such matters as whether to address an issue by rulemaking or adjudication.") (citing *Chenery*).

In an analogous case, the court in *Shays v. FEC* determined that it could not order the FEC to promulgate a rule governing when certain organizations became political committees under the Act, even though it did not necessarily agree with the FEC's interpretation of certain

---

[28]     (Nate Silver, *A Polling-Based Forecast of the Republican Primary Field*, N.Y. Times (May 21, 2011), AR 0230-33.)  In analyzing "28 scientific polls" covering 23 different or prospective candidates, Silver contended that "these polls have enough predictive power to be a worthwhile starting point for handicapping a field of candidates."  (*Id.*)

statutory provisions.  511 F. Supp. 2d 19, 22 (D.D.C. 2007).  Noting the highly deferential standard of review, the court stated that it "cannot 'substitute its judgment for that of the agency.'"  *Id.* at 25 (citing *Volpe*, 401 U.S. at 415-416 ).  The court emphasized that absent a clear Congressional directive, courts do not require agencies to issue a rule rather than conduct enforcement activities through adjudication.  *Id.* at 31.

Here, as in *Shays*, there is no statutory command requiring the FEC to implement a particular rule with respect to polling as a debate admission criterion.  Although 11 C.F.R. § 110.13 includes basic rules to govern candidate debates, plaintiffs have failed to meet their heavy burden to show that the FEC should be compelled to open a new rulemaking to create more specific rules about polling.  In the exercise of its discretion, the FEC promulgated the current debate regulations more than 20 years ago, and the agency has an extensive record of adjudicating particular allegations of bias through the enforcement process.  (*See* AR1902.) Indeed, federal courts have upheld the FEC's determinations in cases stemming from such case-by-case evaluations in the cases discussed above.  *See supra* pp. 36-38.

The FEC's Notice described its long history of examining specific allegations of bias in polling thresholds to ensure that no corporate contributions are made to debate participants by evaluating the objectivity and neutrality of such requirements.  (AR 1904.)  Through those enforcement matters, the FEC found that polling can be objective.  (*Id.  See also supra* Section III.B.1.)  Plaintiffs' claim that the FEC cannot proceed on case-by-case basis because the agency is "dysfunctional" is unsupported and in any case irrelevant.  (*See* LPF Mem. at 43.)  The FEC has successfully resolved past enforcement matters involving debate criteria referenced herein, *see supra* p. 18, with at least four votes as required by the Act.  *See* 52 U.S.C. § 30106(c); *see*

*also La Botz v. FEC,* 61 F.Supp.3d 21 (D.D.C. 2014).  Although plaintiffs may not agree with

the outcomes, plaintiffs cannot argue that these decisions reflected a failure to function.

**(b)      The FEC Properly Considered the Relevant and Significant
Comments Received in Declining to Institute a Rulemaking**

Contrary to plaintiffs' suggestion (LPF Mem. at 24), the number of comments received

that support or oppose a rulemaking petition is not determinative of whether a denial of the

petition is permissible.  Instead, an agency is simply required to have "responded to 'relevant'

and 'significant' public comments."  *See Prof'l Pilots Federation*, 118 F.3d at 763 (citation

omitted).  While the FEC received 1264 comments in response to LPF's Petition, a majority of

them were form comments simply stating "I support the petition" (or some minor variation

thereof) but stating no opinion on polling.  (*See, e.g.,* AR0591-94, 0598-606, 0609-12.)  In

response to the comments primarily based on policy arguments seeking to expand the number of

debate participants, the FEC explained that the rule was not intended to maximize the number of

participants but to ensure that sponsors do not select candidates in a way that results in a

corporate contribution to a particular candidate.  (AR1904.)  Further, the FEC concluded that a

per se rule prohibiting the use of polling was unnecessary to accomplish the Petition's goal of

increasing the number of debate participants.  (AR1905.)  Any qualified staging organization is

free to hold a debate with more participants, so long as it uses pre-established, objective criteria,

not designed to result in the selection of certain pre-chosen candidates.  (*Id.*)  *See infra* Section

III.C.3.

Not all commenters supported LPF's request that the FEC preclude the use of polling in

selecting debate participants.  (*See* AR1903-04.)  While supporting a rulemaking to evaluate

current policies, the League of Women Voters did not support amending the rule to preclude

polling, stating "we believe that polling data is a legitimate indicator in determining debate

42

eligibility." (AR0403.)  Another commenter also supported the use of polling, noting that it could be conducted in an accurate and fair manner.  (AR1851.)

The FEC also considered the comment of CPD, which urged the FEC to maintain its current rule providing discretion to staging organizations.  (AR1904.)  CPD argued that its polling thresholds were objective and designed to advance voter education.  (*See* AR0421.)

Consequently, the FEC acted lawfully by giving due consideration to the relevant and significant comments in explaining its justification for declining a rulemaking.

### 3.   Requiring Debate Sponsors to Adopt LPF's Alternative Proposal to Select Debate Participants Is Unnecessary and Could Be Counterproductive

The FEC carefully considered the Petition's alternative proposal to require debate sponsors to allow potential debate participants to qualify based upon the ability to gather signatures during the ballot access process, but the agency concluded that such a requirement is not needed since sponsors are already free to use that criterion.  (AR1905.)  Under the Petition's alternative, a general election debate sponsor like CPD would host a debate with three candidates, which would include one third party/independent candidate along with the major party nominees.  (AR 0029-30.)  The sponsor would select the third party/independent candidate with the most number of signatures obtained for ballot access in states that collectively have at least 270 Electoral College Votes.  (*Id.*)  The FEC determined, however, that no rulemaking was necessary to implement Petitioner's proposal because this alternative was already permissible. (AR 1905.)  In addition, one commenter (CPD) asserted that the Petition's proposed alternative "would favor early ballot qualification by candidates with the most resources over more meaningful measures of candidate support and viability."  (*See* AR1904.)

The FEC also noted that the Petition only sought to eliminate the use of polling for general election presidential and vice presidential debates, but the current rules apply to all

debates, whether in the primary or general election stage and regardless of the particular federal

office sought.  (AR1905.)  "In the absence of any indication that polling thresholds are inherently

unobjective or otherwise unlawful as applied to all federal elections," the FEC reasonably

declined to conduct a rulemaking that "would impose a nationwide prohibition on the use of such

thresholds, or that could result in giving different legal effect to the use of polling criterion in

different elections."  (*Id.*)  Plaintiffs acknowledge that much of the information provided by the

Petition focused on presidential elections (LPF Mem. at 44 (citations omitted)), and they do not

contest the FEC's statement that the agency was unaware of any information indicating that

polling was inherently flawed as to all federal elections.  While plaintiffs now argue for the first

time that the FEC could reasonably tailor any amendment to "'general election presidential and

vice presidential debates'" (LPF Mem. at 44), they cannot show that there was sufficient

information in the administrative record that the agency was compelled to initiate such a

restructuring of its current rules, adopting different standards for different races.  Accordingly,

the FEC's decision to decline to open a rulemaking was reasonable.

### 4.     The Relief Plaintiffs Request Is Improper

In the Second Amended Complaint, filed on January 15, 2016, plaintiffs ask this Court to

declare that the FEC must open a rulemaking within 30 days and complete a rulemaking to revise

its debate regulations "in sufficient time to ensure that the revised rules will be in place for the

2016 presidential election."  (Sec. Am. Compl. ¶ 144.)  That sort of court-ordered supervision of

the agency's regulatory processes is improper, however.  Courts impose timelines or direction on

the outcome of a rulemaking only in extreme circumstances such as unreasonable delay or

recalcitrance by the agency.  *See, e.g.*, *Shays v. FEC*, 337 F. Supp. 2d 28 at 129 (declining to

impose timelines and judicial oversight for remand after finding that regulations violated "either

*Chevron* review or the APA").  The speed and procedures an agency chooses to conform its

regulations to court decisions are normally left to the discretion of the agency. *See, e.g.*, *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 67 (2004) ("The prospect of pervasive oversight by federal courts over the manner and pace of agency compliance with . . . congressional directives is not contemplated by the APA."). Even if plaintiffs were to prevail, then, there is no basis for any order beyond a simple remand. Here, there is no failure to comply with earlier court orders; instead, the debate regulations have been repeatedly upheld.

## IV.    CONCLUSION

Under the deferential standards of review, this Court should conclude, as did the court in *Buchanan*, that the FEC's decisions were permissible. "Although it might be good public policy to allow more third party candidates into the presidential debates, '[t]he responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: Our Constitution vests such responsibilities in the political branches.'" *Buchanan*, 112 F. Supp. 2d at 76 (quoting *Chevron, U.S.A., Inc.*, 467 U.S. at 866; internal quotation and citation omitted). The FEC's motion for summary judgment should be granted and plaintiffs' motion for summary judgment should be denied.

Respectfully submitted,

Daniel A. Petalas (D.C. Bar No. 467908)
Acting General Counsel
dpetalas@fec.gov

Lisa J. Stevenson (D.C. Bar No. 457628)
Deputy General Counsel – Law
lstevenson@fec.gov

Kevin Deeley
Acting Associate General Counsel
kdeeley@fec.gov

Harry J. Summers
Assistant General Counse
hsummers@fec.gov

/s/  Robert W. Bonham III
Robert W. Bonham III (D.C. Bar. No. 397859)
Senior Attorney
rbonham@fec.gov

Jin Lee (D.C. Bar. No. 484455)
Attorney
jlee@fec.gov

COUNSEL FOR DEFENDANT
FEDERAL ELECTION COMMISSION
 999 E Street, N.W.
Washington, DC  20463
(202) 694-1650
May 4, 2016