# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LEVEL THE PLAYING FIELD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 15-cv-1397 (TSC) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL ELECTION COMMISSION, | ) | **MOTION TO DISMISS** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT FEDERAL ELECTION COMMISSION'S MOTION TO DISMISS

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Federal Election Commission ("FEC" or "Commission") moves to dismiss count two of this judicial-review action, in which plaintiff Level the Playing Field ("LPF") challenges the denial of its rulemaking petition, for lack of jurisdiction.  The supplemental complaint filed by plaintiffs on May 26, 2017 (ECF No. 70) makes plain that LPF, the sole plaintiff challenging the FEC's denial of its rulemaking petition, does not have the requisite Article III standing to bring that claim, and count two of the supplemental complaint accordingly must be dismissed.

The Commission further moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the portions of count one of the supplemental complaint that purport to assert a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  The Federal Election Campaign Act, 52 U.S.C. § 30109(a)(8), provides the exclusive basis for judicial review of the administrative dismissal decisions that plaintiffs challenge in count one of their supplemental complaint, and section 30109(a)(8) limits the scope of review and relief available here.  The

portions of the supplemental complaint that purport to assert a claim under the APA thus fail to

state a claim upon which relief can be granted, and should accordingly be dismissed.

A supporting memorandum and proposed order accompany this motion.

Date:  July 25, 2017

Respectfully submitted,

*/s/ Haven G. Ward*

Lisa J. Stevenson (D.C. Bar No. 457628)      Haven G. Ward (D.C.  Bar No. 976090)
Acting General Counsel                                      Attorney
lstevenson@fec.gov                                          hward@fec.gov

Kevin Deeley                                                    Robert W. Bonham III (D.C. Bar. No. 397859)
Associate General Counsel                              Senior Attorney
kdeeley@fec.gov                                              rbonham@fec.gov

Erin Chlopak (D.C. Bar No. 496370)              COUNSEL FOR DEFENDANT
Acting Associate General Counsel – Policy    FEDERAL ELECTION COMMISSION
echlopak@fec.gov                                            999 E Street, N.W.
                                                                        Washington, D.C.  20463
                                                                        (202) 694-1650

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| LEVEL THE PLAYING FIELD, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civ. No. 15-1397 (TSC) |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| FEDERAL ELECTION COMMISSION, | ) | MOTION TO DISMISS |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT FEDERAL ELECTION COMMISSION'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

  I.     STATUTORY AND REGULATORY BACKGROUND ................................. 2

  II.    PROCEDURAL BACKGROUND ............................................................. 4

      A.   Plaintiffs' Administrative Complaints ........................................... 4

      B.   LPF's Petition for Rulemaking ................................................... 4

      C.   Plaintiffs' Judicial-Review Claims ............................................. 5

          1. Plaintiffs' Original Judicial-Review Claims and Proceedings ...................... 5

          2. Administrative Proceedings on Remand ...................................... 6

          3. Post-Remand Judicial Proceedings ............................................ 7

STANDARDS OF REVIEW ............................................................................................... 7

  I.     DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) ............... 7

  II.    DISMISSAL UNDER RULE 12(b)(6) ........................................................ 8

ARGUMENT ...................................................................................................................... 9

  I.     LPF LACKS STANDING TO CHALLENGE THE DENIAL OF ITS RULEMAKING
        PETITION ............................................................................................ 9

      A.   Competitor Standing ................................................................. 12

      B.   "Relative Diminution" of LPF's "Political Voice" ...................... 15

      C.   Hindrance to LPF's Fundraising and Candidate Recruitment Efforts ...................... 16

  II.    SECTION 30109 PROVIDES THE EXCLUSIVE PROCEDURE FOR CHALLENGES
        TO FEC DISMISSAL DECISIONS ........................................................ 18

CONCLUSION ................................................................................................................. 19

# TABLE OF AUTHORITIES

***Cases***

*Allen v. Wright,* 468 U.S. 737 (1984) ....................................................................... 7

*Am. Soc'y for the Prevention of the Cruelty to Animals v. Feld Entm't, Inc.,*
   659 F.3d 13 (D.C. Cir. 2011) ............................................................................ 16

*Arpaio v. Obama,* 797 F.3d 11 (D.C. Cir. 2015) ...................................................... 8

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) .................................................................... 8

*Barhoumi v. Obama,* No. 15- 1506 (RMC), --- F. Supp. 3d ---, 2017 WL 211171
   (D.D.C. Jan. 18, 2017) ...................................................................................... 17

*Bauer v. Marmara,* 774 F.3d 1026 (D.C. Cir. 2014) .............................................. 17

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ..................................................... 9

*Bowen v. Massachusetts,* 487 U.S. 879 (1988) ....................................................... 18

*Buchanan v. FEC,* 112 F. Supp. 2d 58 (D.D.C. 2000) ........................................... 14

*Cierco v. Mnuchin,* 857 F.3d 407 (D.C. Cir. 2017) ................................................. 8

*Citizens for Responsibility & Ethics in Wash. v. FEC,* No. 16-259 (BAH),
   --- F. Supp. 3d ---, 2017 WL 1080920 (D.D.C. Mar. 22, 2017) ...................... 19

*Citizens for Responsibility & Ethics in Wash. v. FEC,* 164 F. Supp. 3d 113 (D.D.C. 2015) ....... 19

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013) ............................................... 10

*Coal. for Mercury-Free Drugs v. Sebelius,* 671 F.3d 1275 (D.C. Cir. 2012) ................................ 7

*Common Cause v. FEC,* 108 F.3d 413 (D.C. Cir. 1997) ..................................... 10, 13

*DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332 (2006) ............................................. 7

*El Paso Nat. Gas Co. v. F.E.R.C.,* 50 F.3d 23 (D.C. Cir. 1995) ............................. 11

*Food & Water Watch, Inc. v. Vilsack,* 808 F.3d 905 (D.C. Cir. 2015)................................... 15, 17

*Fulani v. Brady,* 935 F.2d 1324 (D.C. Cir. 1991)........................................................ 12

*G&E Real Estate, Inc. v. Avison Young-Wash., D.C., LLC,*
    168 F. Supp. 3d 147 (D.D.C. 2016)............................................................... 8

*Garcia v. Vilsack,* 563 F.3d 519 (D.C. Cir. 2009) ...................................................... 18

*Gottlieb v. FEC,* 143 F.3d 618 (D.C. Cir. 1998)................................................... 12, 13

*Grand Lodge of Fraternal Order of Police v. Ashcroft,*
    185 F. Supp. 2d 9 (D.D.C. 2001)................................................................ 7

*Hassan v. FEC,* No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013)............................ 12

*Hassan v. FEC,* 893 F. Supp. 2d 248 (D.D.C. 2012).................................................... 12

*Hassan v. United States,* 441 Fed. Appx. 10 (2d Cir. 2011)........................................ 10

*Hollingsworth v. Perry,* 133 S. Ct. 2652 (2013)..................................................... 16

*Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333 (1977) ................................... 9

*Kowalski v. Tesmer,* 543 U.S. 125 (2004) ......................................................... 13, 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) ...................... 7-8

*Lewis v. Casey,* 518 U.S. 343 (1996)................................................................ 7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................. 7, 9

*McChesney v. Peterson,* 226 F. Supp. 3d 920 (D. Neb. 2016) .................................... 19

*McConnell v. FEC,* 540 U.S. 93 (2003).......................................................... 15, 17

*Nader v. FEC,* 725 F.3d 226 (D.C. Cir. 2013)........................................................ 10

*Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423 (D.C. Cir. 1996)................15, 16

*Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.,*
   No. 14-CV-01915 (APM), 2016 WL 4435175 (D.D.C. Aug. 19, 2016) ................................. 17

*New World Radio, Inc. v. F.C.C.,* 294 F.3d 164 (D.C. Cir. 2002) ................................................. 12

*Newdow v. Eagen,* 309 F. Supp. 2d 29 (D.D.C. 2004) ................................................................ 18

*Northstar Fin. Adv. Inc. v. Schwab Invest.,* 779 F.3d 1036 (9th Cir. 2015) ................................ 8

*Shays v. FEC,* 414 F.3d 76 (D.C. Cir. 2005) .............................................................................. 12

*Sykes v. FEC,* 335 F. Supp. 2d 84 (D.D.C. 2004) ....................................................................... 15

*Turlock Irrigation Dist. v. F.E.R.C.,* 786 F.3d 18 (D.C. Cir. 2015) ...................................... 15-16

*United States v. Hays,* 515 U.S. 737 (1995) ................................................................................. 9

*Warth v. Seldin,* 422 U.S. 490 (1975) ................................................................................... 8, 13

## Statutes and Regulations

Fed. R. Civ. P. 12(b)(1) ................................................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 8

11 C.F.R. § 100.92 ....................................................................................................................... 2

11 C.F.R. § 100.154 ..................................................................................................................... 2

11 C.F.R. § 110.13 ....................................................................................................................... 4

11 C.F.R. § 110.13(a)(1) .............................................................................................................. 3

11 C.F.R. § 110.13(c) ........................................................................................................... 3, 5, 6

11 C.F.R. § 200.2 .......................................................................................................................... 5

5 U.S.C. § 553(e) .......................................................................................................................... 4

5 U.S.C. § 704 ............................................................................................................................. 18

5 U.S.C. § 706 ......................................................................................................................... 1, 18

52 U.S.C. § 30106 ......................................................................................................................... 2

52 U.S.C. § 30106(b)(1) ............................................................................................................... 2

52 U.S.C. § 30107 ......................................................................................................................... 2

52 U.S.C. § 30107(a)(8) ................................................................................................................ 2

52 U.S.C. § 30109(a)(1)-(a)(2) ................................................................................................. 2

52 U.S.C. § 30109(a)(8) ................................................................................................... 1, 18

52 U.S.C. § 30109(a)(8)(A) ........................................................................................................ 3

52 U.S.C. § 30111(a)(8) ........................................................................................................... 2

52 U.S.C. § 30116(a)(7)(B) .................................................................................................... 2

52 U.S.C. § 30118(a) ............................................................................................................. 2

## INTRODUCTION

In count two of the supplemental complaint, plaintiff Level the Playing Field ("LPF") claims to have standing to challenge the denial by the Federal Election Commission ("FEC" or "Commission") of LPF's petition for rulemaking based on the potential exclusion of candidates who are not nominated by the two major political parties from the 2020 presidential and vice-presidential debates.  But LPF is not a political party and does not itself intend to sponsor a ticket of candidates in that election, a shift from the plans LPF alleged for the 2016 election during an earlier phase of this case.  Instead, LPF contends that it may encourage candidates to run in 2020 without an LPF label, but only if it prevails in this action.  As explained below, whatever impact the regulation at issue may have on independent presidential candidates, it does not injure LPF in any legally cognizable way.  Accordingly, and because LPF is the only plaintiff asserting the rulemaking claim, count two of plaintiffs' supplemental complaint should be dismissed.

In addition to LPF's challenge to the Commission's denial of its petition for rulemaking, in count one of the supplemental complaint, plaintiffs LPF, Peter Ackerman, Libertarian National Committee, Inc., and Green Party of the United States (collectively, "plaintiffs") challenge the Commission's determinations on remand to dismiss two administrative complaints filed respectively by different plaintiffs in this case.  Plaintiffs' claim regarding the denial of their administrative complaints rests on two statutory grounds and should be dismissed to the extent it seeks relief under one of them, the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  The Federal Election Campaign Act ("FECA" or the "Act"), 52 U.S.C. § 30109(a)(8), provides the exclusive mechanism for judicial review of any FEC dismissal of an administrative complaint, including the two administrative dismissal decisions challenged here.  Unnecessary

claims to authority under the APA that are not available in light of the FECA dismissal cause of action have been repeatedly rejected.

The Commission moves to dismiss these portions of plaintiffs' supplemental complaint now, before the parties proceed to merits briefing, in order to streamline this case, avoid the unnecessary expenditure of the parties' and Court's resources on briefing and consideration of the merits of issues not properly before the Court, and promote the efficient resolution of the remaining issues. Count two should be dismissed in its entirety, and count one should be dismissed to the extent it asserts a claim under the APA.

## BACKGROUND

## I.   STATUTORY AND REGULATORY BACKGROUND

The FEC is a six-member independent agency of the United States government with exclusive jurisdiction to administer, interpret, and civilly enforce FECA. *See generally* 52 U.S.C. §§ 30106-07. Congress authorized the Commission to "formulate policy" with respect to FECA, *id.* § 30106(b)(1); "to make, amend, and repeal such rules . . . as are necessary to carry out the provisions of [FECA]," *id.* §§ 30107(a)(8), 30111(a)(8); and to investigate possible violations of the Act, *id.* § 30109(a)(1)-(2).

FECA prohibits corporate contributions in connection with federal elections. 52 U.S.C. § 30118(a). Expenditures coordinated with candidates or their campaigns are considered in-kind contributions. 52 U.S.C. § 30116(a)(7)(B). The FEC's regulations provide, however, that when certain conditions are met, "[f]unds provided to defray costs incurred in staging candidate debates . . . are not contributions" or expenditures. 11 C.F.R. §§ 100.92, 100.154.

To qualify for that exemption from FECA's prohibition on corporate contributions, an organization that stages debates must be a nonprofit entity and cannot "endorse, support, or oppose political candidates or political parties." *Id.* § 110.13(a)(1). Staging organizations "must use pre-established objective criteria to determine which candidates may participate in a debate" and, for general election debates, they may "not use nomination by a particular political party as the sole objective criterion to determine whether to include a candidate in a debate." *Id.* § 110.13(c).

As the Court previously explained, FECA sets out an administrative enforcement process under which the FEC reviews alleged violations of the Act, including those alleged in administrative complaints. (Mem. Op. at 5-6 (ECF No. 60).) The Act provides for the Commission to vote regarding whether there is "reason to believe" the Act has been violated or whether the complaint should be dismissed; an investigation of the allegations where the Commission finds reason to believe; a subsequent Commission vote regarding whether there is probable cause to believe any violation has occurred; and ultimately attempts by the Commission to remedy any violations through conciliation. (*Id.*) FECA further provides that "parties aggrieved by an order of the Commission dismissing a complaint filed by such a party . . . may file a petition with the United States District Court for the District of Columbia," which "may declare that the dismissal . . . is contrary to law, and may direct the Commission to conform with such declaration within 30 days." 52 U.S.C. § 30109(a)(8)(A).

II.     **PROCEDURAL BACKGROUND**

A.      **Plaintiffs' Administrative Complaints**

On September 11, 2014, plaintiffs LPF and Peter Ackerman filed an administrative

complaint alleging that the Commission on Presidential Debates ("CPD"), its executive director,

and 11 members of its board of directors who participated in adopting CPD's rules for the 2012

presidential election violated FECA and Commission regulations in connection with CPD's

staging of the 2012 general election presidential and vice-presidential debates.  (2d Am. Compl.

¶ 88 (ECF No. 25).)  Specifically, the administrative complaint alleged that the respondents

failed to comply with the exception in FEC regulations to the statutory prohibition on corporate

contributions that applies to spending by certain non-profit organizations on their staging of

federal candidate debates when particular criteria are satisfied, 11 C.F.R. § 110.13.  On June 16,

and 18, 2015, respectively, plaintiffs Green Party of the United States ("Green Party") and

Libertarian National Committee, Inc. ("Libertarian Party") submitted an additional

administrative complaint echoing the allegations in LPF's complaint.  (2d Am. Compl. ¶ 98.)

On July 14 and December 15, 2015, respectively, the Commission did not find reason to

believe that CPD or two of its directors violated FECA and dismissed the administrative

complaints.  (*Id.* ¶¶ 100-01.)

B.      **LPF's Petition for Rulemaking**

Under the Administrative Procedure Act and FEC regulations, an "interested person"

seeking to amend an FEC regulation may submit a petition for rulemaking. 5 U.S.C. § 553(e);

11 C.F.R. § 200.2.  LPF filed such a Petition for Rulemaking ("Petition") with the FEC on

September 11, 2014.  (2d Am. Compl. ¶ 102.)[1]

In its Petition, LPF urged the Commission to amend 11 C.F.R. § 110.13(c) so as to

preclude sponsors of general election presidential and vice presidential debates from using

certain criteria to determine who may participate in such debates, and mandate that such

sponsors use other particular criteria to determine debate participation.  (2d Am. Compl. ¶¶ 10,

102, 104.)  LPF argued that the use by CPD of a 15% polling threshold to select debate

participants unfairly excluded third-party and independent candidates, and LPF thus urged the

Commission to prohibit use of a polling threshold as a criterion for participation in presidential

and vice-presidential debates.  (2d Am. Compl. ¶¶ 10, 14(c), 47, 103-04.)

After accepting public comments, the FEC denied LPF's Petition and, on November 20

2015, issued a notice of disposition explaining its reasons.   (*Id.* ¶¶ 105, 107.)

### C.      Plaintiffs' Judicial-Review Claims

#### 1.      Plaintiffs' Original Judicial-Review Claims and Proceedings

On August 27, 2015, LPF, Ackerman, Green Party, and Libertarian Party filed suit for

declaratory and injunctive relief.  (Compl. (ECF No. 1).)  As subsequently amended, all of the

plaintiffs challenged the FEC's dismissal of their administrative complaints.  (2d Am. Compl.

¶¶ 138-41.)  Only LPF, however, challenged the FEC's denial of its Petition for Rulemaking.

(*Id.* ¶¶ 142-44; *see* Pls'. Reply Mem. of P. & A. in Further Support of their Mot. for Summ. J.

and in Opp'n to Def.'s Cross-Mot. for Summ. J. at 17 n.6 (ECF No. 47) (stating that LPF, not the

---

[1]      Plaintiffs' supplemental complaint incorporates paragraphs 1-137 of their second
amended complaint.  (Supp. Compl. ¶ 10 (ECF No. 70).)

Green Party, challenged the denial of LPF's rulemaking petition); Mem. Op. at 23 n.8 (ECF No. 60) (observing that the rulemaking claim "is brought by LPF alone").)

On February 1, 2017, the Court considered the parties' cross-motions for summary judgment and found that the Commission had failed to provide an adequate explanation for its dismissal decisions and denial of LPF's Petition, and that the decisions were accordingly arbitrary and capricious and contrary to law. (Mem. Op. at 23, 28.) The Court remanded the case back to the FEC for further proceedings and ordered the Commission to reconsider plaintiffs' allegations and evidence and to issue new decisions on plaintiffs' administrative complaints and LPF's Petition. (*Id.*)

## 2.    Administrative Proceedings on Remand

After reconsidering plaintiffs' administrative complaints, evidence, and other submissions in the remanded matters, on March 29, 2017, the FEC found that there was no reason to believe that the allegations in plaintiffs' administrative complaints established violations of FECA and voted unanimously to dismiss the administrative complaints. (Supp. Compl. Ex. A (ECF No. 70-1).) In the corresponding 33-page Factual and Legal Analysis, the Commission discussed and analyzed plaintiffs' allegations and evidence in great depth. (*See generally id.*)

Likewise, after reconsidering LPF's rulemaking petition, on March 23, 2017, the FEC voted not to initiate a rulemaking to revise its regulations at 11 C.F.R. § 110.13(c). (Supp. Compl. Ex. B (ECF No. 70-2).) On the same date, the agency published a Supplemental Notice of Disposition, which also discusses and analyzes LPF's allegations and evidence in great detail. (*See generally id.*)

### 3.      Post-Remand Judicial Proceedings

On May 26, 2017, plaintiffs filed a supplemental complaint challenging the FEC's actions on remand.  (*See generally* Supp. Compl.)  While all of the plaintiffs jointly assert a claim for judicial review of the FEC's post-remand decisions to dismiss plaintiffs' administrative complaints, only LPF challenges the FEC's denial of its rulemaking petition.  (*Compare* Supp. Compl. ¶¶ 80-82, *with* 2d Am. Compl. ¶¶ 142-44.)

## STANDARDS OF REVIEW

## I.      DISMISSAL UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)

Dismissal of a claim is appropriate under Federal Rule of Civil Procedure 12(b)(1) where the Court lacks the constitutional power to adjudicate the claim, including, *inter alia*, because the plaintiff lacks standing.  This Court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  As the parties invoking the court's jurisdiction, plaintiffs bear the burden of establishing the elements of constitutional standing.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Coal. for Mercury-Free Drugs v. Sebelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012).  Moreover, "standing is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  A plaintiff thus not only has the burden of establishing standing, but also that burden must be satisfied for each claim alleged.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

"[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  *Allen v. Wright*, 468 U.S. 737, 752 (1984), *abrogated on other grounds by Lexmark*

*Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Warth v. Seldin*, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.").

When assessing a plaintiff's standing on a motion to dismiss, although courts must "accept . . . well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [a plaintiff's] favor," courts "do not accept inferences that are unsupported by the facts set out in the complaint." *Cierco v. Mnuchin*, 857 F.3d 407, 417 (D.C. Cir. 2017) (internal quotation marks omitted). Likewise, "[t]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (internal quotation marks omitted).

Finally, where, as here, a plaintiff files a supplemental complaint, standing is assessed as of the date of filing the supplemental complaint. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043-44 (9th Cir. 2015); *G&E Real Estate, Inc. v. Avison Young-Wash., D.C., LLC*, 168 F. Supp. 3d 147, 160 (D.D.C. 2016) (holding that courts should assess standing as of the date of the filing of the operative complaint).

## II.     DISMISSAL UNDER RULE 12(b)(6)

Dismissal of a complaint, or a portion thereof, is appropriate where, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint fails as a matter of law to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must be dismissed "when

the allegations in a complaint, however true, could not raise a claim of entitlement to relief."

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

## ARGUMENT

**I.     LPF LACKS STANDING TO CHALLENGE THE DENIAL OF ITS
        RULEMAKING PETITION**

        This Court lacks jurisdiction over LPF's challenge to the denial of its Petition for

Rulemaking as set forth in the supplemental complaint because LPF has not met its burden to

demonstrate it has Article III standing.  As LPF is the only plaintiff maintaining such a claim, the

challenge to the FEC's denial of the Petition (count two of the supplemental complaint) must be

dismissed.

        Article III's standing requirement cannot be waived and may be appropriately addressed

at any point in the litigation.  *United States v. Hays*, 515 U.S. 737, 742 (1995).  To establish

standing, the plaintiff must show: (1) "injury in fact," *i.e.* "an invasion of a legally protected

interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical"; (2) causation, *i.e.* the injury is "fairly traceable" to the challenged conduct; and

(3) redressability, *i.e.* the injury will likely be "redressed" by a favorable judicial decision.

*Lujan*, 504 U.S. at 560-61.  Where, as here, the plaintiff is an organization seeking to assert

standing on its own behalf,[2] "it must establish concrete and demonstrable injury to the

organization's activities — with [a] consequent drain on the organization's resources —

constitut[ing] . . . more than simply a setback to the organization's abstract social interests."

---

[2]     Organizational plaintiffs can also, under certain circumstances, assert standing on behalf
of their members, so-called "associational" or "representational" standing.  *See Hunt v. Wash.
State Apple Adver. Comm'n*, 432 U.S. 333, 343, 345 (1977).  LPF, however, has not alleged that
it is a membership organization.

*Common Cause v. FEC*, 108 F.3d 413, 417 (D.C. Cir. 1997) (internal quotation marks omitted; alterations in original).  Finally, because LPF seeks prospective declaratory and injunctive relief, it must establish an ongoing or future injury that is "certainly impending" and may not rest on past injury alone.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis omitted).

In the pre-remand proceedings, LPF's alleged harm stemmed from its "inten[tion] to recruit qualified independent candidates to run for President and Vice President *on an LPF ticket* in the 2016 election," which candidate then would be, according to LPF, unable to compete in the 2016 debates.  (2d Am. Compl. ¶ 17 (emphasis added).)  Now, however, LPF's alleged harm is conditional and indirect:  it alleges that it "intends to recruit qualified independent candidates to run on a *nonpartisan* 2020 ticket *should the relief sought* [*in the Supplemental Complaint*] *be granted*."  (Supp. Compl. ¶ 74 (emphasis added).)

By this shift in its allegations, LPF has effectively pleaded itself out of court.  As a preliminary matter, the conditional nature of LPF's allegations in the supplemental complaint — that it intends to recruit qualified independent candidates *only if* it obtains "the relief sought" in the supplemental complaint — undermines the very standing LPF is attempting to demonstrate with such allegations.  Indeed, LPF's implicit allegation that it *does not* intend to recruit a candidate unless and until it obtains the relief sought in this administrative-review action demonstrates that its alleged injury is not sufficiently concrete and imminent to confer standing. *Cf. Nader v. FEC*, 725 F.3d 226, 229 (D.C. Cir. 2013) (holding that the plaintiff candidate did not have standing where he "has alleged only that he may run for office again") (internal quotation marks omitted); *Hassan v. United States*, 441 Fed. Appx. 10, 11 (2d Cir. 2011) (A potential candidate's "bare assertion that he 'intends to seek the Presidency of the United States

in the year 2012, and thereafter if necessary,' is, by itself, insufficient to establish the sort of . . . injury required to establish standing.").  Indeed, LPF's failure to allege that it followed through on its previously alleged "inten[t] to recruit qualified independent candidates to run for President and Vice President on an LPF ticket in the 2016 election," (2d Am. Compl. ¶ 17), underscores the speculative nature of LPF's revised, and now conditional, allegation of an "inten[t] to recruit qualified independent candidates to run on a nonpartisan 2020 ticket *should the relief sought herein be granted*," (Supp. Compl. ¶ 74 (emphasis added)).  *See El Paso Nat. Gas Co. v. F.E.R.C.*, 50 F.3d 23, 27 (D.C. Cir. 1995) (holding that asserted future competitive injury was too speculative for standing purposes because potential competitor had failed to show that it really was going to compete in the relevant market in the future when it had previously began to, but abandoned, entering into that market).

In any event, even assuming *arguendo* that LPF unconditionally "intends to recruit qualified independent candidates to run on a nonpartisan 2020 ticket," LPF still has not demonstrated that it has standing to maintain its rulemaking claim.  LPF seems to presume that some unidentified "qualified independent candidates" will be excluded from the 2020 presidential and vice presidential debates, and that the anticipated exclusion of those hypothetical candidates would result in LPF suffering three harms: (1) competitive political disadvantage; (2) "a relative diminution" of LPF's "political voice"; and (3) hindrance to its alleged fundraising and candidate recruitment efforts.  (2d. Am. Compl. ¶¶ 17, 130-32, 135; Supp. Compl. ¶ 74.)  As explained below, none of those alleged harms establishes a legally-cognizable injury *to LPF* and consequential drain on *its* resources as a result of the denial of its Petition.

A.     **Competitor Standing**

Because LPF itself is not — and does not allege that it will be — a competitor in the

2020 debates, LPF cannot rely on political competitor standing to satisfy its burden under Article

III here.  *See New World Radio, Inc. v. F.C.C.*, 294 F.3d 164, 170 (D.C. Cir. 2002) (holding that

competitor standing can only exist where a plaintiff is a "*direct* and *current* competitor").

Political competitor standing is akin to economic competitor standing, whereby a plaintiff has

standing to challenge a government action that benefits a plaintiff's competitor to the detriment

of the plaintiff.  *Shays v. FEC*, 414 F.3d 76, 87 (D.C. Cir. 2005).  Political competitor standing,

however, is only available to plaintiffs who can show that they "personally compete[] in the

same arena with the same party to whom the government has bestowed the assertedly illegal

benefit."  *Gottlieb v. FEC*, 143 F.3d 618, 621 (D.C. Cir. 1998) (internal quotation marks

omitted); *see also Fulani v. Brady*, 935 F.2d 1324, 1327-28 (D.C. Cir. 1991) (holding that

presidential candidate did not have "competitor standing" to challenge CPD's tax-exempt status

where the candidate was not eligible for tax-exempt status); *Hassan v. FEC*, 893 F. Supp. 2d

248, 255 (D.D.C. 2012), *aff'd*, No. 12-5335, 2013 WL 1164506 (D.C. Cir. Mar. 11, 2013)

("Plaintiff cannot show that he personally competes in the same arena with candidates who

receive funding under the Fund Act because he has not shown that he is or imminently will be

eligible for that funding.").

In *Gottlieb*, for example, the D.C. Circuit held that a multicandidate political committee

("PAC") could not establish political competitor standing to challenge the use of public matching

funds by a candidate it opposed, reasoning that the PAC could not claim standing as a

"competitor" because it was not in a position to obtain public matching funds itself.  143 F.3d at

620-21.  Rather, "*[o]nly another candidate* could make such a claim."  *Id.* at 621 (emphasis
added).

Here, LPF asserts that CPD and, by extension, the Republican and Democratic nominees
and their parties will receive an allegedly illegal benefit if the current presidential and vice-
presidential debate rules are not changed for the 2020 debates.  (2d Am. Compl. ¶¶ 8, 13, 92-94.)
LPF, however, has not alleged that it will be a debate staging organization competing with CPD
in 2020, cannot of course itself be a candidate competing with the Republican and Democratic
nominees at the 2020 debates, and has not alleged that it plans to become a national political
party competing with the national Republican and Democratic parties at the 2020 debates.
Indeed, LPF alleges that it is a *nonpartisan* organization purportedly seeking merely to recruit
candidates *independent* from any political party for a *nonpartisan* ticket in 2020.  2d Am. Compl.
¶ 17; Supp. Compl. ¶ 74; *cf. Common Cause*, 108 F.3d at 419 n.1 (doubting that a "non-partisan"
organizational plaintiff could be deemed a political competitor of a political party).  Therefore, as
in *Gottlieb*, because LPF is not a competitor in the relevant arena, LPF cannot establish political
competitor standing.

Nor can LPF rely on any political competitive injury that its hypothetical recruits would
suffer in the 2020 debates to establish standing.  Generally, a party "must assert his own legal
rights and interests, and cannot rest his claim to relief on the legal rights or interests of third
parties."  *Warth*, 422 U.S. at 499.  A limited exception to this rule applies where: (1) the party
asserting the right has a "close" relationship with the person who possesses the right; and (2) the
possessor of the right is hindered in her ability to protect her own interests. *Kowalski v. Tesmer*,
543 U.S. 125, 129-30 (2004).

LPF cannot satisfy either prong.  First, LPF cannot rely upon a close relationship with a hypothetical person that they do not currently have a relationship with to establish third-party standing.  In *Kowalski*, for example, attorneys asserted standing based on a future attorney-client relationship with an as-yet-unascertained criminal defendants who would request, but be denied, appellate counsel under the statute being challenged.  *Id.* at 130.  The Court distinguished its prior cases finding an attorney-client relationship sufficiently close for purposes of third-party standing by the fact that those cases involved an existing and identified client.  *Id.* at 130-31.  The Court found: "The attorneys before us do not have a 'close relationship' with their alleged 'clients'; indeed, they have no relationship at all."  *Id.* at 131.  If the often sufficiently close attorney-client relationship for unidentified clients cannot suffice to establish third-party standing, then certainly planning to recruit a hypothetical and unidentified future candidate to run on an anticipated nonpartisan ticket cannot serve as a basis for third-party standing.  Here, LPF has not alleged that it is planning to recruit members of its organization to run as candidates on an LPF ticket, like a political party would; so even if the unidentified nature of the candidate were permissible, any such hypothetical candidate would still lack the required close relationship to come within the exception to the prohibition on third-party standing.

Second, even if LPF could identify actual candidates that it intends to recruit to run in the 2020 presidential and vice-presidential elections, LPF cannot demonstrate that there is any hindrance to such candidates' ability to vindicate their own rights.  Indeed, a presidential candidate has previously challenged the very debate regulations at issue here.  *E.g.*, *Buchanan v. FEC*, 112 F. Supp. 2d 58 (D.D.C. 2000).

Therefore, not only has LPF failed to allege a competitive injury to itself, it also cannot seek to vindicate any competitive political injury that its hypothetical future recruits might suffer. Accordingly, LPF cannot rely on political competitor standing to pursue its rulemaking claim.

### B. "Relative Diminution" of LPF's "Political Voice"

LPF's alleged relative diminution of its political voice also cannot serve as a basis for its standing here for two reasons. First, outside of the political competitor arena, "a relative diminution" of LPF's political voice is not a legally cognizable harm for standing purposes under *McConnell v. FEC*, 540 U.S. 93 (2003). In *McConnell*, certain plaintiffs contested the validity of a provision of the Bipartisan Campaign Finance Reform Act, which they alleged curtailed "the scope of their participation in the electoral process." *Id.* at 227. Because all who participate in the "political marketplace" need not be able to do so equally, the Supreme Court held that the plaintiffs' asserted injury is "not to a legally cognizable right." *Id.*; *see also Sykes v. FEC*, 335 F. Supp. 2d 84, 90 (D.D.C. 2004).

Second, LPF's desire to exercise its "political voice" to influence the political process is nothing more than an abstract social interest. And "[a] mere setback to the organization's abstract social interests is inadequate to establish standing." *Nat'l Treasury Emps. Union* ("*NTEU*") *v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks omitted). Exercising its political voice for issue advocacy, such as "promot[ing] reforms that allow for greater competition and choice in elections for federal office," (2d Am. Compl. ¶ 17), cannot serve as a basis for an organization's standing. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) ("Our precedent makes clear that an organization's use of resources for . . . advocacy is not sufficient to give rise to an Article III injury."); *Turlock*

*Irrigation Dist. v. F.E.R.C.*, 786 F.3d 18, 24 (D.C. Cir. 2015) ("We have previously recognized that the expenditure of resources on advocacy is not a cognizable Article III injury.").  "No matter how deeply committed [LPF] may be to [eliminating CPD's polling threshold] or how zealous [their] advocacy, that is not a 'particularized' interest sufficient to create a case or controversy under Article III."  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013) (internal citation and quotation marks omitted).

### C.       Hindrance to LPF's Fundraising and Candidate Recruitment Efforts

LPF's third and final alleged harm, hindrance to its fundraising and candidate recruitment efforts, fails to establish standing for three reasons.  First, it is a necessary predicate of organizational standing that the government's purportedly illegal action conflicts directly with the organization's mission. *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011) (requiring a "direct conflict between the defendant's conduct and the organization's *mission*" to establish organizational standing) (quoting *NTEU*, 101 F.3d at 1430).  An organization cannot cross this standing threshold "[i]f the challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission." *Feld Entm't*, 659 F.3d at 25.

LPF's mission is plainly not fundraising, but rather "promot[ing] reforms that allow for greater competition and choice in elections for federal office."  (2d Am. Compl. ¶ 17.)  While its ability to fundraise may impact its activities, fundraising itself is not part of LPF's substantive mission.  Thus, any alleged impact that the FEC's denial of LPF's rulemaking petition may have on LPF's ability to fundraise is insufficient to establish LPF's standing to challenge the FEC's rulemaking determination.

Second, "[a]n organization must allege more than a frustration of its purpose because frustration of an organization's objectives is the type of abstract concern that does not impart standing." *Food & Water Watch*, 808 F.3d at 919 (internal quotation marks omitted).  Rather, the organization must allege that it has expended specific resources to counteract the alleged harm.  *Id.* Mere allegations of "diversion of even scarce resources" will not suffice, but "is precisely the type of vague pronouncement of generalized injury that our Court of Appeals routinely rejects."  *Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.*, No. 14-CV-01915 (APM), 2016 WL 4435175, at *7 (D.D.C. Aug. 19, 2016).

LPF's vague allegations of a mere "hindrance" to its objective of recruiting independent candidates is plainly insufficient to establish standing.  As LPF has alleged, there are any number of reasons why an independent candidate may be discouraged from seeking office even if that candidate could qualify to participate in the debates.  (2d Am. Compl. ¶¶ 2, 55-59.)  And LPF has not alleged *any* specific resources it has expended as a result of the FEC's denial of its rulemaking petition that it would not normally spend on recruiting candidates.

Third and finally, LPF cannot demonstrate that any alleged injury to its fundraising or candidate recruitment efforts constitutes an invasion of a legal, or otherwise, cognizable right.  As the Supreme Court held in *McConnell*, a predicate legal right must exist before there can be an injury in fact for standing purposes.  540 U.S. at 227; *see also Bauer v. Marmara*, 774 F.3d 1026, 1036 (D.C. Cir. 2014) ("Because [plaintiff] suffered no injury to a legally protected right from the alleged violation of the law, he does not have personal standing to bring a claim arising from the asserted violation."); *Barhoumi v. Obama*, No. CV 05-1506 (RMC), ---F. Supp. 3d.---, 2017 WL 211171, at *1 (D.D.C. Jan. 18, 2017) ("[A]n interest is not 'legally protected' or

17

cognizable for the purpose of establishing standing when its asserted legal source—whether constitutional, statutory, common law or otherwise—does not apply or does not exist."); *Newdow v. Eagen*, 309 F. Supp. 2d 29, 35 (D.D.C. 2004) (holding that plaintiff's "alleged injury is insufficient to establish standing because [plaintiff] has not alleged an infringement of a legally protected interest").  The FEC's debate regulations do not, directly or indirectly, bar LPF from fundraising or recruiting candidates.  Nor does LPF demonstrate that merely "hindering" its fundraising and recruitment efforts is an invasion of a legally protected right.

In sum, LPF has not demonstrated that it has standing for its claim challenging the FEC's denial of its Petition for Rulemaking.  That claim, count two of the supplemental complaint, thus should be dismissed for lack of jurisdiction.

## II.    SECTION 30109 PROVIDES THE EXCLUSIVE PROCEDURE FOR CHALLENGES TO FEC DISMISSAL DECISIONS

In count one, plaintiffs purport to rely on the APA as a separate and independent basis for challenging the Commission's dismissal of their administrative complaints.  (Supp. Compl. ¶ 77 (citing 5 U.S.C. § 706).)  However, FECA, specifically 52 U.S.C. § 30109(a)(8), provides the exclusive mechanism for judicial review of any FEC dismissal of an administrative complaint, including the two administrative dismissal decisions challenged here.

Judicial review of final agency actions under the APA is available only where there is "no other adequate remedy" available.  5 U.S.C. § 704; *see also Bowen v. Massachusetts,* 487 U.S. 879, 903 (1988).  "[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'"  *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).

As courts in this District and others have recognized, section 30109(a)(8) serves as an adequate form of review of the Commission's dismissal decisions and thus precludes review of such decisions under the APA. *CREW v. FEC,* No. CV 16-259 (BAH), --- F. Supp. 2d ---, 2017 WL 1080920, at *10 (D.D.C. Mar. 22, 2017); *McChesney v. Petersen*, 226 F. Supp. 3d 920, 930 (D. Neb. 2016), *as amended by* No. 8:16-cv-168-LSC-FG3, ECF. No. 43 (D. Neb. Dec. 22, 2016); *CREW v. FEC*, 164 F. Supp. 3d 113, 120 (D.D.C. 2015). Plaintiffs' challenge to the FEC's dismissal of their administrative complaints (count one) thus must be dismissed to the extent plaintiffs purport to pursue that challenge under the APA.

## CONCLUSION

For the foregoing reasons, count two of the supplemental complaint should be dismissed in its entirety, and count one should be dismissed to the extent it purports to assert a claim under the APA.

Date:  July 25, 2017

Respectfully submitted,

/s/ Haven G. Ward_____

Lisa J. Stevenson                                     Haven G. Ward (D.C.  Bar. No. 976090)
Acting General Counsel                          Attorney
lstevenson@fec.gov                               hward@fec.gov

Kevin Deeley                                          Robert W. Bonham III (D.C. Bar. No. 397859)
Associate General Counsel                     Senior Attorney
kdeeley@fec.gov                                    rbonham@fec.gov

Erin Chlopak (D.C. Bar No. 496370)      COUNSEL FOR DEFENDANT
Acting Associate General Counsel – Policy     FEDERAL ELECTION COMMISSION
echlopak@fec.gov                                  999 E Street, N.W.
                                                            Washington, D.C.  204
                                                            (202) 694-1650