**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LEVEL THE PLAYING FIELD, PETER ACKERMAN, GREEN PARTY OF THE UNITED STATES, and LIBERTARIAN NATIONAL COMMITTEE, INC.<br><br>                 Plaintiffs,<br><br>     v.<br><br>FEDERAL ELECTION COMMISSION<br><br>                 Defendant. | Civil Action No.:  15-cv-1397 (TSC) |

**MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION TO AMEND AND IN OPPOSITION TO THE MOTION TO DISMISS THE
SUPPLEMENTAL COMPLAINT**

## Table of Contents

Page

TABLE OF AUTHORITIES ....................................................................................................ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

I.     THE CPD AND ITS FECA VIOLATIONS ....................................................... 3

II.    THE CPD'S PARTISAN SCHEME HARMS THE PLAINTIFFS ................................. 3

III.   PROCEDURAL HISTORY.................................................................................... 6

IV.   THE PLAINTIFFS' CURRENT CHALLENGE...................................................... 7

ARGUMENT .......................................................................................................................... 8

I.     THE LIBERTARIAN NATIONAL COMMITTEE AND PETER ACKERMAN
SHOULD BE PERMITTED TO CHALLENGE THE DENIAL OF THE
RULEMAKING PETITION.................................................................................... 8

II.    LPF HAS STANDING TO CHALLENGE THE DENIAL OF ITS RULEMAKING
PETITION................................................................................................................ 10

     A.    Legal Standard ............................................................................................ 10

     B.    LPF Alleges An "Injury In Fact"........................................................... 11

          1.   LPF Alleges Competitive Injury ................................................ 11

          2.   LPF Alleges An Impediment To Its Fundraising
And Candidate Recruitment .......................................................... 14

          3.   LPF Alleges Diminution Of Its Political Voice ............................ 15

     C.    LPF Is Not Required To Participate In The 2020 Election Under The CPD's
Illegal Debate-Qualifying Regime ........................................................ 16

III.   THE COURT SHOULD NOT DISMISS ANY ASPECT OF THE CHALLENGE TO
THE DISMISSAL OF THE ADMINISTRATIVE COMPLAINTS ................................ 18

CONCLUSION...................................................................................................................... 20

## Table of Authorities

**Cases**                                                                **Page(s)**

*Barhoumi v. Obama*,
  2017 WL 211171 (D.D.C. Jan. 18, 2017) ............................................................. 15

*Bauer v. Marmara*,
  774 F.3d 1026 (D.C. Cir. 2014) ........................................................................... 15

*Buchanan v. Fed. Election Comm'n*,
  112 F. Supp. 2d 58 (D.D.C. 2000) ............................................................. 9, 12, 16

*Crawford v. Marion Cty. Election Bd.*,
  472 F.3d 949 (7th Cir. 2007) ............................................................................... 10

*Fed. Election Comm'n v. Akins*,
  524 U.S. 11 (1998) ................................................................................................. 9

*Foman v. Davis*,
  371 U.S. 178 (1962) ............................................................................................... 8

*Fulani v. League of Women Voters*,
  882 F.2d 621 (2d Cir. 1989) ................................................................................. 16

*Gottlieb v. Fed. Election Comm'n*,
  143 F.3d 618 (D.C. Cir. 1998) ....................................................................... 13, 14

*Green Party v. Hargett*,
  767 F.3d 533 (6th Cir. 2014) ..................................................................... 9, 12, 17

*Greyhound Corp. v. ICC*,
  668 F.2d 1354 (D.C. Cir. 1981) ........................................................................... 19

*Haase v. Sessions*,
  835 F.2d 902 (D.C. Cir. 1987) ............................................................................. 11

*Int'l Ass'n of Machinists & Aerospace Workers v. Fed. Election Comm'n*,
  678 F.2d 1092 (D.C. Cir. 1982) ........................................................................... 16

*Kean for Cong. Comm. v. Fed. Election Comm'n*,
  398 F. Supp. 2d 26 (D.D.C. 2005) ......................................................................... 9

*Krislov v. Rednour*,
  226 F.3d 851 (7th Cir. 2000) ............................................................................... 17

*La Botz v. Fed. Election Comm'n*,
    889 F. Supp. 2d 51 (D.D.C. 2012) ........................................................................ 18

*Lance v. Coffman*,
    549 U.S. 437 (2007) ............................................................................................ 17

*Laroque v. Holder*,
    650 F.3d 777 (D.C. Cir. 2011) ..................................................................... passim

*Lerman v. Bd. of Elections*,
    232 F.3d 135 (2d Cir. 2000) ................................................................................ 14

*Level the Playing Field  v. Fed. Election Comm'n*,
    232 F. Supp. 3d 130 (D.D.C. 2017) ............................................................. passim

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 10

*Lux v. Judd*,
    842 F. Supp. 2d 895 (E.D. Va. 2012) ................................................................. 12

*McConnell v. Fed. Election Comm'n*,
    540 U.S. 93 (2003) .............................................................................................. 16

*Muir v. Navy Fed. Credit Union*,
    529 F.3d 1100 (D.C. Cir. 2008) ......................................................................... 11

*Nader v. FEC*,
    725 F.3d 226 (D.C. Cir. 2013) ........................................................................... 17

*Natural Law Party of the United States v. Fed. Election Comm'n*,
    111 F. Supp. 2d 33 (D.D.C. 2000) ................................................................. 9, 16

*Peacock v. D.C.*,
    682 F.3d 77 (D.C. Cir. 2012) ............................................................................. 17

*Sherley v. Sebelius*,
610 F.3d 69 (D.C. Cir. 2010) ................................................................................ 15

*Storer v. Brown*,
    415 U.S. 724 (1974) ............................................................................................ 12

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014) ................................................................................. 10, 18

*United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*,
  412 U.S. 669 (1973) .................................................................................................... 10

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................................................... 11

**Statutes**

5 U.S.C. § 702 .................................................................................................................. 15

5 U.S.C. § 706 ............................................................................................................. 2, 19

11 C.F.R. § 100.92 ............................................................................................................ 3

11 C.F.R. § 110.13 ............................................................................................................ 3

11 C.F.R. § 100.154 .......................................................................................................... 3

11 C.F.R. § 114.4(f) .......................................................................................................... 3

52 U.S.C. § 30118(a) ........................................................................................................ 3

5 U.S.C. § 706 ............................................................................................................. 2, 19

Fed. R. Civ. P. 15(d) ......................................................................................................... 8

Local Civil Rule 7(i) .......................................................................................................... 8

## INTRODUCTION

As this Court has recognized, there is a "mountain" of evidence supporting Plaintiffs' claim that the CPD's debate-selection criteria are rigged in favor of Democrats and Republicans and against independent candidates.[1] *Level the Playing Field v. Fed. Election Comm'n*, 232 F. Supp. 3d 130, 142 (D.D.C. 2017).  The Court has also confirmed that the FEC "appears to have stuck its head in the sand and ignored the evidence" that the process is rigged.  *Id*. at 148.  After Plaintiffs instituted this action challenging the FEC's summary dismissal of their administrative complaints and rulemaking petition, this Court held that "the FEC acted arbitrarily and capriciously," and remanded the matter to the FEC.  *Id*. at 145, 148.  Because "the weight of Plaintiffs' evidence is substantial," the Court ordered the FEC to "demonstrate that it actually considered the full scope of this evidence" on remand.  *Id*. at 145.

What happened next should surprise no one:  the FEC reached the exact same conclusions as before, and once again dismissed the complaints and rejected the rulemaking petition.  It is readily apparent that, in reaching these decisions, the FEC did not "actually consider[] the full scope" of Plaintiffs' evidence, as this Court required.  The FEC instead continued to ignore the vast majority of the evidence demonstrating the partisanship of the CPD's members, and its treatment of Plaintiffs' expert evidence was arbitrary and capricious.  For example, in critiquing the conclusion of Plaintiffs' expert that independent candidates have difficulty attracting earned media, the FEC presents a purported analysis of a Westlaw news database in which it claims that Libertarian Party candidate Gary Johnson received substantial press in 2016.  But the FEC apparently did not review the results of its news searches, or

---

[1]    Throughout this Memorandum, the term "independent candidate" refers to candidates who are unaffiliated with any political party as well as candidates who are affiliated with political parties other than the Democratic and Republican parties, including but not limited to the Green Party of the United States and the United States Libertarian Party.

consider that "Gary Johnson" is a common name, because its "analysis" cites articles about dozens of Gary Johnsons who are not the presidential candidate, including athletes, chefs, museum presidents, criminals, doctors, lawyers, musicians and law enforcement officials all named Gary Johnson.  This misrepresentation typifies the results-driven approach taken by the the FEC's arbitrary and capricious post-remand decisions.

Consequently, Plaintiffs filed their Supplemental Complaint to challenge these decisions. The FEC's partial motion to dismiss the Supplemental Complaint is not a serious one.  First, the FEC challenges LPF's standing to assert the rulemaking cause of action, but this part of the FEC's  motion is now moot.  That is because, after filing the motion, the FEC consented to the addition of Plaintiffs Peter Ackerman and the Libertarian Party to the cause of action, and conceded that at least one of these Plaintiffs has standing.  Plaintiffs respectfully seek the Court's permission, with the FEC's consent, to amend the Supplemental Complaint accordingly.  In any event, in an abundance of caution we also explain below why LPF, like the other two Plaintiffs, has ample standing to assert this claim.

The second part of the FEC's motion is difficult to fathom.  The FEC does not contest the sufficiency of Plaintiffs' FECA challenge to the dismissal of the administrative complaints. Rather, the FEC only seeks dismissal "to the extent Plaintiffs purport to pursue that challenge under the APA."  But this cause of action cites only APA § 706 to support the allegation that agency action is unlawful if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  (Supplemental Complaint, dated May 26, 2017 ("Supp. Compl.") ¶ 77). Not only did identical language go unchallenged in all three of Plaintiffs' prior pleadings, but the FEC (itself citing § 706) conceded on summary judgment that this is, in fact, the standard of review governing Plaintiffs' claims, which this Court then confirmed in its summary judgment

opinion.  It is unclear whether the FEC is now arguing for a different standard of review (it identifies none), or whether it seeks to address a another part of the APA (which would make no sense, because Plaintiffs only cite this one).  Either way, this aspect of the FEC's motion should also be denied.

## BACKGROUND

### I.     The CPD And Its FECA Violations

FECA prohibits "corporation[s]" from "mak[ing] a contribution or expenditure in connection with" presidential campaigns.  52 U.S.C. § 30118(a).  An exception to this rule exists for "debate staging" organizations.  11 C.F.R. §§ 100.92, 100.154, 110.13, 114.4(f).  However, "[t]o prevent debate staging organizations . . . from operating as conduits for corporate contributions made to benefit only one or two candidates from the Democratic and Republican parties . . . the regulations require these organizations to (1) be nonpartisan, (2) not endorse, support, or oppose candidates or campaigns, and (3) use pre-established, objective criteria" for determining who will participate in the debates.  *Level the Playing Field*, 232 F. Supp. 3d at 135; *accord* 11 C.F.R. § 110.13.

The CPD has staged every general election debate since 1988 and accepts undisclosed corporate donations to pay its costs.  *Id*. at 134.  As the Court is aware, Plaintiffs allege that these donations violate FECA because the CPD is a partisan organization that supports the major party presidential nominees and uses biased, exclusionary debate-qualifying criteria to ensure that only those nominees will participate in the debates.

### II.    The CPD's Partisan Scheme Harms The Plaintiffs

Plaintiffs are three political organizations and a voter who seek to break the two major parties' stranglehold on the presidential debates.

Plaintiff Libertarian National Committee, Inc. controls and manages the affairs and resources of the United States Libertarian Party (the "Libertarian Party"), the third largest political party in the country. The Libertarian Party has nominated presidential candidates in every presidential election since its formation in 1971, and intends to nominate candidates for President and Vice President in the 2020 election. (Second Am. Compl. ¶¶ 20, 134; Supp. Compl. ¶ 74). Plaintiff Green Party of the United States (the "Green Party") and predecessor organizations competed in presidential elections in 2000, 2004, 2008, 2012, and 2016, and the Green Party intends to nominate candidates for President and Vice President in the 2020 election. (Second Am. Compl. ¶¶ 19, 133; Supp. Compl. ¶ 74). The Libertarian and Green Party presidential nominees have been excluded from all general election presidential debates since the CPD adopted the selection criteria challenged in the Complaint. (*See, e.g.*, Second Am. Compl. ¶¶ 133-34). Both Parties' nominees will again be subject to the CPD's exclusionary criteria in 2020, absent relief from this Court.

Plaintiff Dr. Peter Ackerman is a United States citizen and a registered voter in the District of Columbia who is interested in the presidential electoral process and is committed to reforming politics and elections in the United States. Dr. Ackerman has a statutory right to know which political committees are supporting which candidates, and also is entitled to information concerning individuals and entities that have chosen to support the Democratic and Republican nominees. Possession of this information would assist Dr. Ackerman, and others to whom he would communicate the information, in evaluating the various candidates for President and Vice President. It would also facilitate Dr. Ackerman's efforts to discourage the CPD's donors from contributing to the CPD unless it changes its debate rules to conform to the requirements of FECA. Yet the CPD, in violation of the law, fails to disclose information on its donors and

expenditures.  Dr. Ackerman's inability to obtain information that the law requires be made available causes a substantial, concrete, and particularized injury to him and similarly situated voters.  (Second Am. Compl. ¶¶ 18, 136-137).

LPF is a nonpartisan, nonprofit corporation seeking greater competition and choice in federal elections, especially elections for the Presidency and Vice Presidency.  (Second Am. Compl. ¶ 17).  LPF is the successor to Americans Elect ("AE"), which obtained signatures sufficient to qualify for ballot access in 41 states in connection with the 2012 presidential election.  (*Id.*).  During this process, qualified individuals declined to run as independent candidates because they knew that they would be excuded from the debates.  (Second Am. Compl. ¶ 131).  LPF has determined, based on this experience and the evidence presented herein, that the current debate-qualifying rules preclude a viable independent presidential campaign. However, if this lawsuit succeeds, LPF will recruit independent candidates to run on a nonpartisan 2020 ticket.  (Supp. Compl. ¶ 74).  Indeed, LPF has already engaged in serious discussions with accomplished and credible prospective independent candidates, including a prominent retired U.S. military leader, the CEO of a well-known Fortune 500 company, and other prominent leaders from business, academia, and politics.  And LPF's activities would not be limited to candidate recruitment.  LPF would also raise money for the ticket, help it achieve ballot access, recruit campaign staff and volunteers, provide strategic advice, make media appearances in support of the candidates, and connect them with politicians, businesspersons and others within LPF's network.  (Affidavit of Peter Ackerman, dated Aug. 8, 2017 ("Ackerman Aff.") ¶¶ 3-4).

### III.    Procedural History

Plaintiffs filed administrative complaints alleging that the CPD and 12 of its directors violated the FEC's debate staging regulations, and LPF filed a rulemaking petition requesting that the FEC bar the use of polling thresholds as the sole criterion for accessing the debates. *Level the Playing Field*, 232 F. Supp. 3d at 136-37.  Following the dismissal of the administrative complaints and the petition, Plaintiffs filed this action challenging the FEC's decisions.

On February 1, 2017, this Court entered a Memorandum Opinion denying the FEC's motion and awarding summary judgment to Plaintiffs as to both the dismissal of the administrative complaints and LPF's rulemaking petition.  *Level the Playing Field*, 232 F. Supp. 3d 130.  The Court held that the FEC's dismissal of the administrative complaints was "arbitrary and capricious" in four respects:  (1) "the FEC did not articulate what standard it used to determine whether the CPD had endorsed, supported or opposed political parties," *id*. at 138;  (2) "the FEC failed to adequately consider the evidence [Plaintiffs] presented with [their] two administrative complaints," *id*. at 140; (3) the FEC violated FECA by failing to notify ten CPD directors about the complaints or "consider the evidence presented against these respondents," *id*. at 142-43; and (4) "the agency unreasonably found that the CPD's fifteen percent polling criterion was 'objective' under the regulation," *id*. at 143-45.  The Court reached similar conclusions with respect to the rulemaking decision, and remanded the entire matter to the FEC with instructions to explain the reasoning behind its dismissal of the administrative complaints and rulemaking petition.  *Id*. at 145-48.

On March 23, 2017, the FEC again voted to deny Plaintiffs' petition for rulemaking.  On March 29, the FEC entered a decision in the Federal Register purporting to explain why it had

reached the same result as before.  That same day, the FEC again voted to dismiss Plaintiffs' administrative complaints, and issued a "Legal and Factual Analysis" purporting to justify the dismissals.  (Supp. Compl. ¶ 20).

## IV.   The Plaintiffs' Current Challenge

On May 26, 2017, Plaintiffs filed their Supplemental Complaint (Dkt. 70), which petitions for review of the FEC's most recent decisions.  The Supplemental Complaint explains why these decisions fail all of the requirements imposed by this Court's summary judgment decision.  First, the FEC still refuses to "articulate what standard it used to determine whether the CPD had endorsed, supported or opposed political parties."  (Supp. Compl. ¶¶ 22-23).  Second, the FEC continues to ignore most of the evidence demonstrating the CPD's partisanship, and the FEC's treatment of Plaintiffs' expert evidence is entirely superficial and rigged to achieve a preordained outcome.  (Supp. Compl. ¶¶ 4-6, 24-45, 56-73).  Third, the FEC blithely credits meaningless affidavits from the CPD's directors that both ignore and directly contradict their prior partisan statements.  (Supp. Compl. ¶¶ 47-50).  Finally,  the FEC does not even try to explain how its polling criteria could be considered "objective," particularly given that, since the CPD's inception, no independent presidential candidate has satisfied it.  (Supp. Compl. ¶¶ 51-54).

On July 25, 2017, the FEC filed its partial motion to dismiss (Dkt. 71).  Together with this opposition to the FEC's motion, Plaintiffs are filing a consent motion to amend the Supplemental Complaint so that the Libertarian Party and Dr. Ackerman may join LPF as plaintiffs in the rulemaking cause of action.  Plaintiffs are also submitting their request for a summary judgment schedule.

**ARGUMENT**

## I.  The Libertarian National Committee And Peter Ackerman Should Be Permitted To Challenge The Denial Of The Rulemaking Petition

Plaintiffs seek to file an amended Supplemental Complaint in order to add the Libertarian National Committee and Dr. Ackerman to the cause of action challenging the denial of the rulemaking petition.[2]  Although the FEC consents to this request, Plaintiffs also seek the Court's leave because Fed. R. Civ. P. 15(d) requires both a "motion" and the court's permission to file any "supplemental pleading."  Because the FEC consents, and for the reasons stated below, we respectfully request that the Court grant the motion.

Leave to amend should be given "freely" "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court has instructed that leave should be allowed absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

None of these factors is present here.  Until now, the FEC had never suggested that LPF lacked standing to challenge the denial of its rulemaking petition.  Once the FEC took this position, Plaintiffs immediately responded by seeking to add the additional Plaintiffs in an abundance of caution.  Moreover, Plaintiffs have vigorously pursued a prompt adjudication of this matter, and sought to avoid delay, by seeking an expedited summary judgment schedule. The FEC has agreed that the proposed amendment will not affect that schedule.

---

[2]    Per Local Civil Rule 7(i), Plaintiffs' motion is accompanied by their proposed Amended Supplemental Complaint.  The only substantive proposed change is to paragraph 80, which adds Dr. Ackerman and the Libertarian National Committee as Plaintiffs with respect to the rulemaking cause of action.

Nor would it be "futile" to add the Libertarian Party and Dr. Ackerman to the rulemaking cause of action.  The FEC concedes that at least one of these parties has standing, and both clearly do.  The Libertarian Party has been excluded from every presidential debate staged by the CPD, and it will nominate another candidate to run in 2020.  The Libertarian Party is entitled to challenge the FEC's refusal to address the illegal debate-qualifying rules preventing the Libertarian Party's candidates from participating in the debates.  *See, e.g.*, *Green Party v. Hargett*, 767 F.3d 533, 543-46 (6th Cir. 2014) (minor party has standing to challenge barriers to entry imposed on its candidates); *Natural Law Party of the United States v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 44-47 (D.D.C. 2000) (minor party has standing to challenge exclusion from presidential debates); *Buchanan v. Fed. Election Comm'n*, 112 F. Supp. 2d 58, 63-66 (D.D.C. 2000) (same); *see also* 5 U.S.C. § 702 (any party "aggrieved" or "adversely affected" by denial of rulemaking petition may seek judicial relief).

Dr. Ackerman's injury arises from his statutory right to know who is making contributions to the CPD.  Although the CPD is a "political committee" that must disclose the identity of its corporate contributors, it evades these requirements by claiming the exemption for debate staging organizations.  (Second Am. Compl. ¶¶ 94-95).  As explained above, the CPD does not actually qualify for that exemption, because it is a partisan organization that does not use objective debate-qualifying criteria.  An appropriate rule would disqualify the CPD from this exemption, thereby requiring the CPD to disclose its corporate donors.  And a plaintiff suffers an injury in fact "when the [he] fails to obtain information which must be publicly disclosed pursuant to statute."  *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998); *accord Kean for Cong. Comm. v. Fed. Election Comm'n*, 398 F. Supp. 2d 26, 34-37 (D.D.C. 2005) ("The injury was . . . the denial of information that FECA directed must be disclosed.").

For these reasons, we respectfully request that the Court grant the consent motion to amend the Supplemental Complaint adding the Libertarian National Committee and Dr. Ackerman to the rulemaking cause of action.

## II.   LPF HAS STANDING TO CHALLENGE THE DENIAL OF ITS RULEMAKING PETITION

The FEC's consent to the proposed amendment moots its motion to dismiss the rulemaking cause of action.  Because that cause of action seeks only declaratory and injunctive relief (Supp. Compl. ¶¶ 76-79), "only one plaintiff with standing is required" to assert it. *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007); *accord Laroque v. Holder*, 650 F.3d 777, 792 (D.C. Cir. 2011).  The FEC now agrees that at least one Plaintiff here will have standing to assert the rulemaking claim.  However, the FEC declined to withdraw this portion of its motion to dismiss until the Court approved the filing of the Amended Supplemental Complaint.  Consequently, in an abundance of caution, we respond to the motion and explain why LPF, like the other two Plaintiffs, has Article III standing.

### A.   Legal Standard

To plead Article III standing, a plaintiff must allege that it suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  This requires a demonstration that the plaintiff has a "personal stake in the outcome of the controversy."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014).  The injury need not be significant; any "identifiable trifle" is "enough" to confer standing.  *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973).  The alleged injury must also be "fairly traceable to the challenged action of the defendant," and "likely" to be "redressed by a favorable decision."  *Lujan*, 504 U.S. at 560-61 (citations and quotatons omitted).  "[I]n assessing plaintiffs' standing, [the Court] must assume they will prevail on the merits of their . . . claims."

*Laroque*, 650 F.3d at 785; *accord Muir v. Navy Fed. Credit Union,* 529 F.3d 1100, 1105 (D.C. Cir. 2008) ("In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims.") (citations and quotatons omitted).

On a motion to dismiss for lack of standing, the Court "'must accept as true all material allegations of the complaint,' drawing all reasonable inferences from those allegations in plaintiffs' favor." *LaRoque*, 650 F.3d at 785 (quoting *Warth v. Seldin,* 422 U.S. 490, 501 (1975)). "The plaintiff . . . can freely augment his pleadings with affidavits" to bolster allegations of standing if necessary. *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987).

### B.      LPF Alleges An "Injury In Fact"

The FEC contends that LPF fails to allege the requisite "injury in fact" to confer Article III standing.  The FEC is mistaken.  LPF alleges three separate types of injury, any one of which is sufficient to confer standing.  Specifically, as explained below, (1) the CPD's exclusionary debate rules cause LPF to suffer a competitive political disadvantage relative to the Republicans and Democrats; (2) the rules hinder LPF's fundraising and candidate recruitment efforts; and (3) they diminish the political voices of LPF and the candidates it sponsors.

### 1.      LPF Alleges Competitive Injury

The CPD's debate-qualifying criteria place LPF at a severe competitive disadvantage relative to its Republican and Democratic counterparts.  These rules all but ensure that independent candidates are unfairly excluded from the presidential debates, including AE's prior candidates and the prospective ones that LPF has recruited for 2020.  (Second Am. Compl. ¶ 131; Ackerman Aff. ¶ 4).  That, in turn, prevents LPF and its candidates from raising vitally important money or garnering sufficient media attention.  Indeed, otherwise qualified individuals

11

who would run as an independent candidates have informed LPF and/or its predecessor that they will do so only if the CPD adopts nonpartisan debate-qualifying criteria. (*Id.*). "Assuming . . . the truth of plaintiffs' assertion that the CPD is nothing but an alter-ego for the Democratic and Republican parties, then the benefit being conferred upon the CPD as a debate-staging organization is being conferred upon [LPF's] direct competitors." *Buchanan*, 112 F. Supp. 2d at 66. This "injury would be direct, substantial, and certainly one that FECA and its implementing regulations seek to prevent." *Id.*; *see also Hargett*, 767 F.3d at 544.

Yet the FEC claims that LPF suffered no injury because it is not "a national political party," and would instead sponsor an "independent," "a nonpartisan ticket." (FEC Br. at 13). In other words, the FEC thinks that only "national political parties" can "compete" with each other, and that an organization recruiting and sponsoring independent candidates is not a real "competitor" to the major parties. That is not only wrong, but it betrays precisely the kind of partisan bias that LPF alleges in the complaint, and explains why this Court must intervene to ensure that the debate rules are "nonpartisan." If a "partisan election system injures" a nonpartisan plaintiff, thereby "providing a competitive advantage to [partisan] opponents," then "such competitive injuries in the electoral area can confer Article III standing." *LaRoque*, 650 F.3d at 786; *accord Storer v. Brown*, 415 U.S. 724, 738 n.9 (1974) ("independent" plaintiff has "ample standing to . . . challenge" law that disfavors it). Here, "[t]he very foundation of [LPF's] claim is that [it] has a 'legally protected' interest under [FECA] in having . . . nonpartisan" debate-selection criteria, and LPF "has a cognizable interest in reaping the benefits [that] would flow from the nonpartisan system." *LaRoque*, 650 F.3d at 786; *accord, e.g.*, *Lux v. Judd*, 842 F. Supp. 2d 895, 900 (E.D. Va. 2012) ("independent candidate" has standing based on "undue burden imposed" by ballot access requirements). Even if LPF theoretically "could avoid the

alleged electoral disadvantages of the partisan system" by joining a party, LPF's "First Amendment right to freedom of association . . . cannot possibly" require LPF to do so, because LPF wishes to remain independent.  *LaRoque*, 650 F.3d at 789.

The FEC also misplaces its reliance on *Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618 (D.C. Cir. 1998).  (FEC Br. at 12-13).  In *Gottlieb*, the plaintiffs were voters who "supported" Bill Clinton's general election opponents and a political action committee that spent "about $6,600" in opposition to Clinton.  *Id*. at 619.  They alleged that Clinton improperly used matching funds to repay $1.4 million of debt he incurred during the Democratic primary.  This, according to the plaintiffs, placed Clinton's general election rivals at a competitive disadvantage. These plaintiffs lacked standing, but *Gottlieb* is distinguishable for two reasons.  First, the *Gottlieb* plaintiffs did not allege any injury at all, let alone a cognizable competitive injury.  The primary campaign contributions at issue in *Gottlieb* did not actually disadvantage the plaintiffs' preferred candidates, who opposed Clinton not in the primary, but in the general election.  *Id*. at 621 ($1.4 million payment had no "influence over the general election").  LPF, by contrast, alleges a drastic competitive disadvantage—that the CPD's debate rules make it virtually impossible for an independent candidate to win, and deter highly qualified independent candidates from even running.  *Gottlieb* recognized that under these circumstances, a plaintiff like LPF would have standing.  *Id*. at 622 ("voters . . . suffer[] a concrete and personalized injury" when there are "prohibitively high" barriers to entry that makes it "unrealistic[]" for their preferred candidate to run).  Second, the *Gottlieb* plaintiffs' passive "support" for their candidates and nominal financial contributions pale in comparison to the role LPF would play in 2020.  LPF would be integrally involved in candidate recruitment and the promotion of their

campaigns, similar to the support the major parties provide for their own candidates.  That makes LPF a "competitor" of those parties in ways that the *Gottlieb* plaintiffs were not.

### 2.    LPF Alleges An Impediment To Its Fundraising And Candidate Recruitment

Whether or not LPF is considered a "competitor" of the major parties, it is beyond dispute that LPF's fundraising and candidate recruitment efforts are impaired by the CPD's debate rules.  That supplies a separate and independent basis for Article III standing.  (Second Am. Compl. ¶ 135).

When LPF's predecessor, AE, sought to recruit independent candidates for the 2012 election, qualified prospective candidates refused to run, precisely because the debate rules would exclude them from the debates.  (Second Am. Compl. ¶ 131).  Candidates that LPF is currently recruiting have expressed a similar sentiment.  (Ackerman Aff. ¶ 4).  Likewise, donors won't contribute money to an independent candidate that will be excluded from the debates.  (*See, e.g.*, Supp. Compl. ¶ 42).  Where, as here, "[t]he injury-in-fact . . . allege[d] concerns the very process of engaging in political activity in support of [a] candidacy . . . that injury is sufficient to confer standing under Article III."  *Lerman v. Bd. of Elections,* 232 F.3d 135, 142, 143 (2d Cir. 2000).

Yet the FEC denies that these injuries confer standing on LPF, claiming that (1) the CPD's debate rules do not "conflict[] directly with [LPF's]  mission"; (2) LPF has not "expended specific resources to counteract the alleged harm"; and (3) the "injury to [LPF's] fundraising or candidate recruitment efforts" does not "inva[de] a legal, or otherwise, cognizable right."  (FEC Br. at 16-17).  These contentions are meritless.

First, LPF's mission is to promote "greater competition and choice in elections for federal office, particularly for the Presidency and Vice Presidency."  (Second Am. Compl. ¶ 17).  To

achieve this goal, LPF tries to recruit and sponsor independent presidential candidates. But the

CPD's debate rules make it virtually impossible for these candidates to run. If that does not

"directly conflict" with LPF's mission, it is hard to imagine what would.

Second, as explained above, LPF has expended considerable resources in support of its

mission. LPF's predecessor qualified for ballot access in 41 states and devoted ample resources

to candidate recruitment. And LPF has already expended resources recruiting candidates and

begun laying the groundwork for the 2020 election. These efforts will have been wasted unless

the independent candidates are given a legitimate shot at participating in the debates.

Finally, this Court already confirmed LPF's right to challenge the denial of its

rulemaking petition when it awarded LPF summary judgment on this challenge. *Level the

Playing Field*, 232 F. Supp. 3d at 145 n.8, 148. To bring such a challenge, the APA requires

only that the claimant be "adversely affected" or "aggrieved" in some way and, for the reasons

stated above, LPF easily meets this requirement. 5 U.S.C. § 702; *see also Sherley v. Sebelius*,

610 F.3d 69, 74 (D.C. Cir. 2010) (citations and quotations omitted) (party will be excluded from

suing under statute only if its "interests are not consistent with the purposes of the statute in

question").[3]

### 3.    LPF Alleges Diminution Of Its Political Voice

Finally, the CPD's use of biased selection criteria causes a relative diminution of LPF

and its preferred candidate's ability to influence the political process. (Second Am. Compl. ¶

135). The debates are viewed by tens of millions of Americans and give the major party

---

[3]     The cases cited by the FEC (at 17) are inapposite. *See Bauer v. Marmara*, 774 F.3d
1026, 1033-36 (D.C. Cir. 2014); *Barhoumi v. Obama*, No. CV 05-1506 (RMC), ---F.
Supp. 3d.---, 2017 WL 211171, at *1-2 (D.D.C. Jan. 18, 2017). In *Bauer* and *Barhoumi*,
there was no "private cause[] of action" under the statute invoked by the plaintiff and/or
the authority allegedly giving rise the lawsuit simply "d[id] not exist." That is obviously
not the case here.

nominees unparalleled access to voters.  These seminal events are integral to the electoral process, often serving as the critical turning point in the election and providing the campaign's defining moments.  They are also the only time voters see the candidates interacting on the same stage, which allows them to assess the candidates' strengths and weaknesses at a point in time when many voters make up their minds.  For these reasons, exclusion from the debates "'palpably impair[s] [independent candidates'] ability to compete on an equal footing with other significant presidential candidates.'"  *Buchanan*, 112 F. Supp. 2d at 65 (quoting *Fulani v. League of Women Voters*, 882 F.2d 621, 626 (2d Cir. 1989)).  This is not an "abstract social interest," as the FEC claims (at 15); it is the kind of "imbalance," causing LPF to suffer "a relative diminution [of its]  political voice[]," that confers Article III standing.  *Int'l Ass'n of Machinists & Aerospace Workers v. Fed. Election Comm'n*, 678 F.2d 1092, 1098 (D.C. Cir.), *aff'd*, 459 U.S. 983 (1982); *accord Natural Law Party*, 111 F. Supp. 2d at 45-46.[4]

C.     **LPF Is Not Required To Participate In The 2020 Election Under The CPD's Illegal Debate-Qualifying Regime**

The FEC also argues that, to have standing, LPF must commit to participating in the next presidential race *even if* the current debate-qualifying criteria remain unchanged.  (FEC Br. at 10-11).  But plaintiffs are not required to perform quixotic or self-destructive acts in order to sue.  It would be futile for LPF to participate in yet another presidential race in which independent candidates are excluded from the debates, and "[n]othing in Article III" requires parties to "waste resources . . . to confirm their standing."  *LaRoque*, 650 F.3d at 788.  "In light of [the CPD's]

---

[4]     *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 227 (2003), on which the FEC relies (at 15), does not hold otherwise.  There, voters and candidates lacked standing to claim that increases in "hard money limits" on campaign donations might provide their opponents with an advantage.  *McConnell* is readily distinguishable, however, because whatever disadvantage might result from increasing contribution limits pales in comparison to outright exclusion from the presidential debates, which prevents those excluded from running a viable campaign.

stringent . . . [debate]-access requirements . . . it is understandable that [LPF] ha[s] chosen" not

to participate absent a rule change; and that does not in any way diminish the "unique,

individualized harm" LPF suffers "as a result of . . . [the CPD's] [debate]-access" rules. *Hargett*,

767 F.3d at 544; *cf. Krislov v. Rednour*, 226 F.3d 851, 858 (7th Cir. 2000) (plaintiff who merely

"articulated an interest in pursuing . . . elective office[]" had standing to challenge ballot access

laws that favored "the established political parties").

Indeed, the FEC's position leads to absurd conclusions.  For example, a prospective bar

owner whose application for a liquor license is denied plainly has standing to challenge that

decision.  *See, e.g.*, *Dearth v. Holder*, 641 F.3d 499, 502 (D.C. Cir. 2011) ("a license or

permit denial pursuant to a state or federal administrative scheme" gives rise to "an Article III

injury").  But under the FEC's logic, this plaintiff would lack standing unless she promised to

open a dry bar in the event her challenge failed.  That same logic would also erroneously require

a person denied prescription drug coverage to  promise he would pay for the medication out of

pocket if his claim for coverage did not prevail.  *NB ex rel. Peacock v. D.C.*, 682 F.3d 77, 82

(D.C. Cir. 2012).

*Nader v. FEC*, 725 F.3d 226 (D.C. Cir. 2013), does not compel a contrary result.  Unlike

here, the plaintiff in that case did not make his participation in the next election conditional on

the revision of rules that placed him at a competitive disadvantage.  That plaintiff instead had no

intent to run for office *at all*, regardless of the lawsuit's outcome.  *Id*. at 229.  Thus, whereas that

plaintiff could not demonstrate that "the FEC's determination injured his ability to fight the next

election," LPF most certainly can.  *Id*.

In sum, LPF does not have an "undifferentiated, generalized grievance about the conduct

of" the FEC and the CPD, and did not suffer an injury "common to all members of the public."

*Lance v. Coffman*, 549 U.S. 437, 441-42 (2007).  Rather, LPF alleges the kind of "concrete"

injury and "personal stake in the outcome of the controversy" that confer Article III standing

upon LPF.  *Susan B. Anthony List*, 134 S. Ct. at 2341.

### III.     The Court Should Not Dismiss Any Aspect Of The Challenge To The Dismissal Of The Administrative Complaints

The Court should also deny the FEC's motion for partial dismissal of the Supplemental

Complaint's first cause of action, which challenges the denial of Plaintiffs' administrative

complaints.  (Supp. Compl. ¶¶ 76-79).  The FEC does not dispute that Plaintiff has adequately

alleged a claim under FECA.  Rather, the FEC argues that Plaintiffs are *only* allowed to invoke

FECA, and seeks to strike the single citation to APA § 706 in Supplemental Complaint

Paragraph 77.[5]  (FEC Br. at 18-19).

This is contrary to established law and to the FEC's own position on summary judgment,

which this Court adopted.  Courts routinely cite APA § 706 or its language when addressing the

standard of review that governs the FEC's dismissal of an administrative complaint.  *See, e.g.*, *La*

*Botz v. Fed. Election Comm'n*, 889 F. Supp. 2d 51, 59-60 (D.D.C. 2012) ("the FEC's dismissal

[of the administrative complaint] may be overturned only if it was 'arbitrary or capricious, or an

abuse of discretion' . . . 5 U.S.C. § 706").  Here, Plaintiffs cited § 706 for that same purpose:  to

support the proposition that "[t]he FEC's dismissals of Plaintiffs' administrative complaints were

arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law."  (Supp.

Compl. ¶ 77).  Identical language went unchallenged in the original Complaint (Dkt. 1 ¶ 132),

the Amended Complaint (Dkt. 17 ¶ 141), and the Second Amended Complaint (Dkt. 25 ¶ 139).

The FEC instead *conceded* on summary judgment that this well-settled principle is in fact "the

---

[5]      The FEC has stated that it will renew this aspect of its motion even if the Court grants
leave to file the Amended Supplemental Complaint.

standard of review" governing Plaintiffs' claims, Dkt. 42-1 at 12 (FEC citing APA "§ 706(a)" for the proposition that "[a] court will set aside agency action if the action is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'").  Consequently, this Court confirmed in its summary judgment opinion—citing APA § 706—that it must set aside "any agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Level the Playing Field*, 232 F. Supp. 3d at 137.

It is unclear what exactly the FEC's motion now seeks to accomplish.  If it means to suggest that a different standard applies to this Court's review of the FEC's decisions, it is wrong—as the FEC's own summary judgment briefing confirms—and it certainly fails to explain what standard should apply instead.[6]  If the FEC means to suggest something else, it is unclear what that might be, and the FEC fails to elucidate.  Either way, this part of the motion to dismiss should also be denied.

---

[6]    None of the cases cited by the FEC (at 19) supply a different standard. Plaintiffs note, however, that this standard is applied more rigorously following remand where, as here, the agency "arrives at substantially the same conclusion as an order previously remanded by the same court."  *Greyhound Corp. v. ICC*, 668 F.2d 1354, 1358 (D.C. Cir. 1981) (holding that "[a] reviewing court . . . will accord a somewhat greater degree of scrutiny" under these circumstances).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion to amend the

Supplemental Complaint and deny the FEC's motion to dismiss.


Dated: August 8, 2017
      New York, New York

                         Respectfully submitted,

                         /s/  Alexandra A.E. Shapiro
                        Alexandra A.E. Shapiro (D.C. Bar No. 438461)
                        Eric S. Olney (admitted pro hac vice)
                        SHAPIRO ARATO LLP
                        500 Fifth Avenue
                        40th Floor
                        New York, New York 10110
                        Phone:  (212) 257-4880
                        Fax:  (212) 202-6417

                        *Attorneys for Plaintiffs Level the Playing Field,*
                        *Peter Ackerman, Green Party of the United States,*
                        *and Libertarian National Committee, Inc.*

20