IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEVEL THE PLAYING FIELD, PETER ACKERMAN, GREEN PARTY OF THE UNITED STATES, and LIBERTARIAN NATIONAL COMMITTEE, INC.<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION<br><br>Defendant. | Civil Action No.:  15-cv-1397 (TSC) |

**BRIEF OF AMICI CURIAE INDEPENDENT VOTER PROJECT, ADMIRAL JAMES STAVRIDIS, SENATOR JOSEPH ROBERT KERREY, SENATOR JOSEPH ISADORE LIEBERMAN, THE HONORABLE CLARINE NARDI RIDDLE, THE HONORABLE DAVID M. WALKER, AND THE HONORABLE CHRISTINE TODD WHITMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

Stephen Chad Peace, CA State Bar #290274
admitted *pro hac vice*
Peace & Shea LLP
2700 Adams Avenue, Suite 204
San Diego, CA 92116

Breton Peace, CA State Bar #250560
admitted *pro hac vice*
Peace & Shea LLP
2700 Adams Avenue, Suite 204
San Diego, CA 92116

*Attorneys for Amici Curiae Independent Voter Project, Admiral James Stavridis, Senator Joseph Robert Kerrey, Senator Joseph Isadore Lieberman, The Honorable Clarine Nardi Riddle, The Honorable David M. Walker, and The Honorable Christine Todd Whitman*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Amicus Independent Voter Project makes the following disclosure:

1. Amicus is not a publicly held corporation or other publicly held entity.

2. Amicus has no parent corporation.

3. No publicly held corporation or other publicly held entity owns 10% or more of Amicus.

4. Amicus is not a trade association.

# **TABLE OF CONTENTS**

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE ................................... 1

INTRODUCTION ........................................................................................................................ 2

ARGUMENT ................................................................................................................................ 5

    I.   CPD'S 15% RULE CONFLICTS WITH ITS MISSION STATEMENT AND IGNORES THE IMPORTANT ROLE THAT THIRD-PARTY CANDIDATES PLAY IN A HEALTHY REPUBLIC .............................................................................................................................. 5

    II.   CPD's 15% RULE HAS, AND WILL CONTINUE TO, PREVENT THIRD-PARTY AND INDEPENDENT CANDIDATES FROM PARTICIPATING IN THE DEMOCRATIC PROCESS, LEAVING NONPARTISAN VOTERS UNREPRESENTED .................................. 7

    III.   CPD'S 15% RULE IS INCONSISTENT WITH THE MANNER IN WHICH WE ELECT OUR PRESIDENT AND OUTSOURCES DETERMINATION FOR PARTICIPATION TO PRIVATE COMPANIES ............................................................................................................ 9

        A.   CPD'S 15% RULE OFFENDS THE VERY DEMOCRATIC PRINCIPLES THE UNITED STATES PROMOTES ABROAD ........................................................................... 10

        B.   CPD'S 15% RULE IS PART OF AN ANTICOMPETITIVE ELECTION FRAMEWORK THAT DISENFRANCHISES A PLURALITY OF AMERICAN VOTERS ... ........................................................................................................................................... 11

    IV.   CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ................................................................................ 6
*Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000) ................................................................. 11
*Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173 (1979) ......................................... 6
*Nader v. Schaffer*, 429 U.S. 989 (1976) ...................................................................................... 11
*New York Times Co.* v. *Sullivan*, 376 U.S. 254 (1964) ................................................................... 6
*Williams v. Rhodes*, 393 U.S. 23 (1968) ................................................................................. 6, 10

**OTHER AUTHORITIES**

David Paleologos, *Paleologos on the poll: Voters want third-party candidates on debate stage*, USA Today (Sept. 1, 2016), https://www.usatoday.com/story/news/politics/elections/2016/09/01/paleologos-poll-johnson-stein-debates/89710228/ ......................................................................................................... 7
David Wright, *Poll: Trump, Clinton score historic unfavorable ratings*, CNN (Mar. 22, 2016) ..... 7
*Debate History*, CPD, http://www.debates.org/index.php?page=debate-history .............................. 6
*Democracy, Human Rights and Governance*, USAID (Aug. 17, 2017) https://www.usaid.gov/democracy ............................................................................................ 10
*DRL Programs*, U.S. Dept. of State, https://www.state.gov/j/drl/p/ ............................................ 10
*Gallup Presidential Election Trial-Heat Trends, 1936-2008*, Gallup, http://www.gallup.com/poll/110548/gallup-presidential-election-trialheat-trends-19362004.aspx#4 ...................................................................................................................... 6, 7
Heidi M. Przybyla, *Hillary Clinton prepares for 'Reality Show' debates*, USA Today (Sep. 15, 2016), https://www.usatoday.com/story/news/politics/elections/2016/09/21/hillary-clinton-donald-trump-debates/90310878/ ............................................................................................. 3
Katherine M. Gehl and Michael E. Porter, *Why Competition in the Politics Industry is Failing America* (Harvard Business School ed., 2017) ............................................................ 4, 5, 11, 12
National Conference of State Legislatures. *State Primary Election Types*, http://www.ncsl.org/research/elections-and-campaigns/primary-types.aspx ............................ 11
*Our Mission*, CPD, http://www.debates.org/index.php?page=about-cpd .......................................... 5
*Party Affiliation*, Gallup (2017), http://www.gallup.com/poll/15370/party-affiliation.aspx .... 3, 10
*Republican Party Platform of 1860*, The American Presidency Project (May 17, 1860), http://www.presidency.ucsb.edu/ws/index.php?pid=29620 ........................................................ 6
*Socialist Labor Party Platform -1896* (Jul. 4, 1896), http://projects.vassar.edu/1896/slpplatform.html ................................................................................ 6
Ted G. Jelen, *Ross For Boss: The Perot Phenomenon and Beyond* (2001). ..................................... 6

## **STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE**

**Stephen Chad Peace and Breton Peace**

Stephen Chad Peace is a member of the California State Bar and has been admitted to this court *pro hac vice*. Breton Peace is also a member of the California State Bar and is pending *pro hac vice* admission to this court. They are attorneys for the Independent Voter Project ("IVP"), partners at the law firm of Peace & Shea LLP, and represent the additional amici for purposes of this brief of amici curiae. They have no other financial or client interest in the outcome of this litigation, and no attorney for a party has helped write this brief or defrayed the cost of its preparation.

**Independent Voter Project (IVP)**

Founded in 2006, IVP is a 501(c)(4) organization that seeks to educate voters about voters' nonpartisan rights and other important public policy issues, to create a climate for otherwise disenfranchised voters to engage in the political process, and to encourage nonpartisan voters to vote and participate in the democratic process. IVP is most well-known for authoring California's "top-two" nonpartisan primary, passed by the voters in 2010.

**Admiral James Stavridis**

Admiral Stavridis is a retired Navy admiral. He was 15th Commander, U.S. European Command and NATO's 16th Supreme Allied Commander Europe. He is the dean of the Fletcher School of Law and Diplomacy at Tufts University. Admiral Stavridis has been working for several years to change the 15% rule.

**Senator Joseph Robert Kerrey**

Senator Kerrey served as the Governor of Nebraska from 1983 to 1987 and as a United States Senator from Nebraska from 1989 to 2001. He has been a leading advocate for changing the 15% rule for several years.

**Senator Joseph Isadore Lieberman**

Senator Lieberman served as a United States Senator from Connecticut from 1989 to 2013. He has been working to remove the 15% rule for over 3 years.

**The Honorable Clarine Nardi Riddle**

Clarine Nardi Riddle served as the Attorney General of Connecticut from 1989 to 1991. She served as chief of staff for Senator Lieberman from 2003 until 2013. She co-founded and works with No Labels, an organization of Republicans, Democrats and Independents dedicated to addressing issues of hyper-partisanship in the United States to promote problem solving.

**The Honorable David M. Walker**

David M. Walker served as the seventh Comptroller General of the United States from 1998 to 2008. He is also a national co-founder of No Labels and an original signatory on the "Change the Rule" letter to modify CPD's 15% rule.

**The Honorable Christine Todd Whitman**

Christine Todd Whitman served as the Governor of New Jersey from 1994 to 2001 and was the Administrator of the Environmental Protection Agency from 2001 to 2003. Whitman was an original signatory of the "Change the Rule" letter that challenged CPD's 15% rule.

This brief is timely filed pursuant to the Minute Order dated August 17, 2017 and is submitted with amici's Motion for Leave.

**INTRODUCTION**

A healthy democracy promotes the free flow of ideas and embraces different perspectives. The presidential debates are the most important conversation between candidates for the Presidency of the United States of America and the American people. The Commission on Presidential Debates ("CPD") has established a 15% rule of entry to presidential debates that, in practice, prevents popular third-party and independent candidates from participating in the debates, narrows the flow of ideas in our political discourse, and insulates well-heeled major party candidates from

the hazard of confronting different perspectives.

Limitations on the participation of third-party and independent candidates from our presidential debates exacerbates divisions in America. A substantial plurality of American voters no longer identifies with either the Republican or Democratic Parties.[1] As hyper-partisanship plagues our media, our political discourse, and our electoral options, the nonpartisan plurality of voters is forced to either embrace one side of this artificial division or not participate in the national dialogue at all.

The more pernicious consequence of the 15% rule is its shaping of the American mind. By many estimates, audiences neared 100 million viewers for the most recent CPD 2016 presidential general election debates. Nearly one-third of all Americans were exposed to the calculated barbs traded by the Republican candidate Donald J. Trump and the Democratic candidate Hillary Clinton. This was pugilism by personal attack and not a debate of ideas about the state of our country and its future. As stated by Mrs. Clinton herself—this was reality television.[2] It's the consequence of limiting the governing flow of participants and ideas. And, although the spectacle may drive media ratings up, its consequence is devastating to the body politic, as perception drives real behaviors.

A study published this month by the Harvard Business School concluded that the public's distrust in government is directly connected to the lack of real competition in the electoral process:

> By nearly every measure, the industry of politics, itself, is thriving. There's just one problem. The people whom the politics industry is supposed to serve have never been more dissatisfied. Public trust in the federal government is hovering at a near 60-year low. Competition in politics appears intense, which is usually good for customers. But today's competition is failing, delivering gridlock and growing division instead of offering practical solutions to the nation's problems. The parties compete on ideology and unrealistic promises, not on action and results. The parties compete to divide voters and serve special interests, rather than weigh and balance the interests of all citizens and find common ground to move the country forward. And there is no accountability for results…The underlying root cause is the kind of political

---

[1] *Party Affiliation*, GALLUP (2017), http://www.gallup.com/poll/15370/party-affiliation.aspx.
[2] Heidi M. Przybyla, *Hillary Clinton prepares for 'Reality Show' debates*, USA TODAY (Sept. 15, 2016), https://www.usatoday.com/story/news/politics/elections/2016/09/21/hillary-clinton-donald-trump-debates/90310878/.

3

competition that the parties have created, including their insulation from new competition that would better serve the public interest.

Katherine M. Gehl and Michael E. Porter, *Why Competition in the Politics Industry is Failing America* 2 (Harvard Business School ed., 2017).

The rules of our republic should support civil disagreement rather than encourage hostile behavior in political discourse or undermine confidence in our government. CPD defends its 15% rule as a reasonable and objective measure of candidate viability. CPD's purpose, however, is not to choose winners. CPD has failed to articulate how the 15% rule supports its organizational mission to "provide the best possible information to viewers and listeners." Limiting participation by the arbitrary 15% rule undermines this objective by providing a pedestal for the major party candidates and their platforms that exacerbates the perception that the American people have only binary policy and candidate choices. CPD's candidate viability based defense of its 15% rule is a model of the contrived political competition dissected by Gehl and Porter to its root purpose of limiting any competition of new ideas.

CPD is an extra-governmental organization originally sponsored by the major political parties and sanctioned by the federal government, the effect of which is to calcify an existing ruling political class. Our forefathers never could have contemplated such a system for controlling presidential debates and, given their predisposition to oppose political parties, would have opposed any such granting of governmental powers to a private corporation simply because it enjoyed the mantle of the major political parties. The insidiousness of this husbanding of the duopoly is so perverse that even in academia the American system is regularly referred to as a "two-party system."

Nowhere in the Constitution, the documents published in preparation of its establishment, or its successor amendments is there an allusion to, or contemplation of, our form of government being a "two-party system." Yet, CPD's 15% rule results in our presidential debates

accommodating only the two major political parties' candidates *and* it was designed to produce this outcome.

> It's important to recognize that much of what constitutes today's political system has no basis in the Constitution. As our system evolved, the parties—and a larger political industrial complex that surrounds them—established and optimized a set of rules and practices that enhanced their power and diminished our democracy. These changes—often created behind closed doors and largely invisible to the average citizen—continue to take their toll at both the federal and the state levels.

Gehl and Porter, at 2.

There is a difference between a natural result of constitutional construction that has led to the *ebb and flow* of societal change being channeled into coalitions of two broadly defined political parties and the institutionalization of two *particular* parties as permanent impermeable forces. CPD's 15% rule serves the latter rather than the former. Rather than accommodate the *ebb and flow* of societal change that has been at the heart of the Constitution's survival, CPD's 15% rule acts as an agent to suppress debate, limit access, and, ultimately, alienate the public from their government.

With these considerations, amici argue in support of Plaintiffs' Motion for Summary Judgment and Proposed Order.

## **ARGUMENT**

**I.    CPD'S 15% RULE CONFLICTS WITH ITS MISSION STATEMENT AND IGNORES THE IMPORTANT ROLE THAT THIRD-PARTY CANDIDATES PLAY IN A HEALTHY REPUBLIC**

CPD's nonprofit and "nonpartisan" mission is to, "provide the best possible information to viewers and listeners."[3] Throughout this case, however, the CPD has defended its 15% rule without regard to how the rule supports or subverts its own mission statement. Instead, and by CPD's admission, the 15% rule is designed to determine a candidate's viability to win the general election. This determination does not have a qualitative component as it relates to the information the candidates may provide to the viewers.

---

[3] *Our Mission*, CPD, http://www.debates.org/index.php?page=about-cpd (last visited Sept. 15, 2017).

As the Supreme Court has recognized time and again,[4] a healthy republic is one that embraces debate about minority opinions as well as more popular ones. *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983) (citing *Illinois Elections Bd. v. Socialist Workers Party*, 440 U.S. 173, 186 (1979)) ("Historically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream."). Many of the ideas viewed today as fundamentally American were first introduced by third parties or candidates. The Socialist Party, for example, introduced women's suffrage as an issue in the late 1800s.[5] Abraham Lincoln was elected from a third party (at the time) on an anti-slavery platform.[6]

H. Ross Perot is one of only two third-party candidates to ever qualify for a place on the presidential debate stage when he ran as an independent candidate for president in 1992.[7] Perot ultimately received 18.9% of the popular vote in the general election.[8] Many of Perot's ideas were incorporated into legislation and even the major parties' political platforms.[9] Yet, had the 15% rule been in place in 1992, Perot would have been barred from participating in any of the presidential

---

[4] *See, e.g. Williams v. Rhodes*, 393 U.S. 23, 32 (1968) ("The fact is, however, that [it] does not merely favor a 'two-party system'; it favors two particular parties -- the Republicans and the Democrats -- and in effect tends to give them a complete monopoly."); *Anderson v. Celebrezze*, 460 U.S. 780, 794 (1983) ("In short, the primary values protected by the First Amendment … are served when election campaigns are not monopolized by the existing political parties.") (citing *New York Times Co*. v. *Sullivan*, 376 U.S. 254, 270 (1964)) .
[5] *Socialist Labor Party Platform -1896* (Jul. 4, 1896), http://projects.vassar.edu/1896/slpplatform.html.
[6] *Republican Party Platform of 1860*, THE AMERICAN PRESIDENCY PROJECT (May 17, 1860), http://www.presidency.ucsb.edu/ws/index.php?pid=29620.
[7] *Debate History*, CPD, http://www.debates.org/index.php?page=debate-history (last visited Sept. 15, 2017).
[8] *Gallup Presidential Election Trial-Heat Trends, 1936-2008*, GALLUP, http://www.gallup.com/poll/110548/gallup-presidential-election-trialheat-trends-19362004.aspx#4 (last visited Sept. 15, 2017).
[9] Ted G. Jelen, *Ross For Boss: The Perot Phenomenon and Beyond* (2001).

debates.[10] Although Perot did not win the presidency, and even if he didn't have a chance of being the winner, the value of his ideas improved the health of our democracy.

## II. CPD's 15% RULE HAS, AND WILL CONTINUE TO, PREVENT THIRD-PARTY AND INDEPENDENT CANDIDATES FROM PARTICIPATING IN THE DEMOCRATIC PROCESS, LEAVING NONPARTISAN VOTERS UNREPRESENTED

CPD's 15% rule has prevented every third-party and independent candidate from participating in the presidential debates since its adoption nearly two decades ago. In 2016, the 15% rule prevented an alternative voice from participating despite both major party candidates having record-setting disapproval ratings[11] and 76% of voters wanting to see a third-party candidate in the debates.[12] We should not deny voters their desired more inclusive debate process, and we should not rely on the two-partisan CPD's 15% rule to predict potential victors of our democratic process.

Institutional barriers can be such a powerful force that they render the measurement of their impact impossible. The number of qualified candidates that would run for President of the United States absent the 15% rule cannot be quantified. Several amici to this brief are amongst those who would be judged as credible candidates for President of the United States as either third-party or independent candidates, but for the practical institutional barrier presented by the 15% rule.

Admiral James Stavridis served as the Commander of U.S. European Command and 16th NATO Supreme Allied Commander from 2009 to 2013. He is the current dean of The Fletcher School of Law and Diplomacy at Tufts University. He was vetted as a potential running mate for Hillary Clinton in July 2016 and later interviewed as a possible U.S. Secretary of State and Director

---

[10] Although CPD argues he would not have been barred as his support had been over 15% at other points in the race, in September (prior to the debates when the polling determination is made), he was only at 8% support. *Gallup Presidential Election Trial-Heat Trends, 1936-2008, supra* note 8.

[11] David Wright, *Poll: Trump, Clinton score historic unfavorable ratings*, CNN (Mar. 22, 2016), http://www.cnn.com/2016/03/22/politics/2016-election-poll-donald-trump-hillary-clinton/index.html.

[12] David Paleologos, *Paleologos on the poll: Voters want third-party candidates on debate stage*, USA TODAY (Sept. 1, 2016), https://www.usatoday.com/story/news/politics/elections/2016/09/01/paleologos-poll-johnson-stein-debates/89710228/.

of National Intelligence by President-elect Donald J. Trump in December 2016. He was approached to run as an independent in the 2016 election, but, in part due to CPD's 15% rule, declined. With the 15% rule in place, Stavridis had no reasonable expectations that he could achieve the name recognition necessary to be a competitive candidate. Stavridis believes many qualified candidates would consider running for President in 2020 if the debate rules were changed to allow unaffiliated candidates a fair chance to compete with the nominees of the two major parties.

Former Governor and United States Senator Joseph Robert Kerrey, a Navy Seal and Medal of Honor recipient, sought the Democratic Party nomination for president in 1992. Based upon his experience, he would not consider an independent candidacy viable in 2020, absent a change in the CPD rules.

Senator Joseph Isadore Lieberman was the Democratic Party nominee for Vice President in the 2000 election. He sought the Democratic nomination in 2004. In 2006, Lieberman was elected as an Independent. He believes that independents do not seek the presidency, in great part, because access to the presidential debate is critical and the CPD's 15% rule pre-emptively disqualifies even serious challengers from such access.

The Honorable Clarine Nardi Riddle was the first female Attorney General of Connecticut and is a co-founder of No Labels, an organization of Republicans, Democrats and Independents that promotes the politics of problem solving. She argues that the 15% rule blocks not only independent and nonpartisan candidates, but even has the effect of excluding the consideration of independent and nonpartisan ideas.

The Honorable David M. Walker is the immediate former Comptroller General of the United States and head of the U.S. Government Accountability Office. He was urged to consider running as an independent for President or Vice President in 2012 but ultimately decided against doing so, in part due to the fact he knew it would be virtually impossible to draw the support necessary in the polls to get into the fall presidential debates. He then embarked on a nationwide

tour promoting sensible solutions to our nation's serious fiscal challenge.

In 2012, the Honorable Christine Todd Whitman, former two-term Governor of New Jersey, was asked to consider running for President or Vice President as an independent candidate. While other personal factors may have gone into that decision, ultimately, it is her judgment that the 15% rule precluded any practical expectation of access to the debates.

These highly qualified Americans represent the tip of the iceberg. It is impossible to know how many others whose ideas, energy, and hopes for America's future are held captive by the arbitrary and impenetrable barrier to participation represented by the CPD's 15% rule.

### III. CPD'S 15% RULE IS INCONSISTENT WITH THE MANNER IN WHICH WE ELECT OUR PRESIDENT AND OUTSOURCES DETERMINATION FOR PARTICIPATION TO PRIVATE COMPANIES

Given the well-documented declining accuracy of polling, it is difficult to miss the irony of CPD's decision to, in effect, outsource the enforcement of its 15% rule by relying on five national political polls conducted by media organizations. Such polls are a measurement, at best, of a candidate's pre-debate popularity on a national level. Rightly or wrongly, presidential elections are determined not by popular vote, but by the Electoral College in a methodology that is fundamentally different.

For example, a candidate may hold viewpoints that resonate with a substantial portion of the population in states that are most directly impacted by those viewpoints or the issues that underlie them. But, on a national level, he or she may not achieve the 15% threshold across the five national polls required to participate in the presidential debates. The 15% rule, in that regard, artificially homogenizes public discourse, having the perverse effect of discouraging the diversity of ideas critical to a rational public debate.

Just as importantly, by relying on privately constructed and controlled polls, CPD has assigned the gatekeeper function to a democratic process with no public oversight as to methodology, policy bias, or conflicts of interest (real or perceived). Conferring the power to limit

access to private media corporations is both inappropriate and, inevitably, subject to a level of public skepticism that only serves to undermine the public's confidence in the system and to reinforce a growing belief that "the system is rigged."

### A. CPD'S 15% RULE OFFENDS THE VERY DEMOCRATIC PRINCIPLES THE UNITED STATES PROMOTES ABROAD

The United States of America spends hundreds of millions of dollars promoting democracy abroad.[13] A centerpiece of those programs is to introduce and spread democratic best practices, including "the promotion of free, transparent and fair political competition."[14] The goal of these programs is to ensure "that all have the opportunity to participate and have a voice in how they will be governed," so "citizens' preferences are represented."[15]

At the heart of any democracy is political competition. As the Supreme Court recognized when it struck down an Ohio law that effectively gave the two major parties a "total monopoly" on ballot access, "[c]ompetition in ideas and governmental policies is at the core of our electoral process and of the First Amendment freedoms." *Rhodes*, 393 U.S. at 32. Today, however, a vast plurality of American voters now self-identifies as independent of the two major parties.[16] Yet, these voters are not represented at all on the presidential debate stage because independent and third-party candidates cannot gain access.

Similar to the onerous ballot access requirements in *Rhodes*, CPD's 15% rule has prevented a single voice outside of the two major parties from participating in the presidential debates since the rule was first adopted in 2000. On this fact alone, we should embrace the democratic policies we promote abroad, consider our own Supreme Court precedent recognizing the importance of political competition, and reject the monopoly CPD's 15% rule has given the Republican and Democratic

---

[13] *DRL Programs*, U.S. DEPT. OF STATE, https://www.state.gov/j/drl/p/ (last visited Sept. 15, 2017).
[14] *Democracy, Human Rights and Governance*, USAID (Aug. 17, 2017), https://www.usaid.gov/democracy.
[15] *Id*.
[16] *Party Affiliation, supra* note 1.

Parties over our presidential debates.

**B. CPD'S 15% RULE IS PART OF AN ANTICOMPETITIVE ELECTION FRAMEWORK THAT DISENFRANCHISES A PLURALITY OF AMERICAN VOTERS**

The framework of our entire election process, including the presidential debates, gives the two major parties and their members a decided advantage. Politics is an industry, and many of the rules governing our election process were established not by a neutral arbitrator to achieve fair competition, but by the major political parties to distort the rules of competition in their favor. If CPD's defense of its 15% rule is rooted in a bright-line test of "candidate viability," then it can only be fully understood within the broader context of the rules that govern the candidate nomination process and voter access to that process.[17]

The interplay of CPD's 15% rule with primary elections provides a good example of this systematic distortion of competition in our electoral process. Presidential primaries and caucuses, in every state, are private activities that serve political parties.[18] In many states, only major political party members can participate at all.[19] The primary election season now runs nearly a full year, and there is near constant media coverage directed almost exclusively on the major party candidates. These primary elections are finalized less than two months prior to CPD's presidential debates. And the polls used by CPD to determine whether a candidate is qualified to participate in the "nonpartisan" presidential debates are conducted right after the grand finale: the nationally televised Republican and Democratic Party conventions.

As summarized by Gehl and Porter:

---

[17] Gehl and Porter, at 9.

[18] Notwithstanding taxpayer funding of primary elections, they serve the private purpose of selecting party nominees. *See Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000), (holding that political parties have the right to exclude nonmembers from their primary elections because the corollary of the private right of association is the right to not associate.); *see also, Nader v. Schaffer*, 429 U.S. 989 (1976).

[19] *See* National Conference of State Legislatures. *State Primary Election Types*, http://www.ncsl.org/research/elections-and-campaigns/primary-types.aspx (last visited Sept. 15, 2017).

11

> One of these hidden rules involves access to the fall presidential debates. A person running as a Democrat or Republican knows that if they win the nomination they will be guaranteed a place in the debates. The Commission on Presidential Debates (CPD), a private organization dominated by partisan loyalists, requires every other candidate to meet a 15% polling hurdle in a three-way race decided just seven weeks before the election. While 15% may seem reasonable, the poll taken so late in the election cycle creates an insurmountable "Catch-22." The practical effect of this rule is to create a major anticompetitive barrier to any candidates outside the duopoly, and that is why there hasn't been a third candidate on the Presidential debate stage since 1992.

Gehl and Porter, at 40.

At a time when voter turnout is declining, we must change CPD's 15% rule to allow a broader spectrum of ideas on the presidential debate stage. CPD's 15% rule is the ultimate affirmation of a broader set of preliminary rules designed to limit true electoral competition. While CPD's 15% rule may measure candidate viability in a system that promotes the two major political parties, its relationship to the viability of a candidate's views in a competition of ideas is lacking, at best.

## IV. CONCLUSION

CPD has the sober responsibility of promulgating the rules that govern the most important political conversation candidates can have with the American people: the presidential debates. As part of this responsibility, it is CPD's duty to embrace the true competition of ideas in our political discourse and electoral process. CPD, in conflict with its stated mission, has abdicated this responsibility by defending a rule that is so limiting on the marketplace for new ideas that no third-party or independent candidate has qualified for the presidential debates in more than two decades. When a significant plurality of voters does not feel represented by either major party, we have a heightened obligation to change the rule.

Therefore, the court should grant Plaintiffs' Motion for Summary Judgment.

Dated this 22nd day of September, 2017.

Respectfully submitted,

  /s/ S. Chad Peace
S. Chad Peace, CA State Bar #290274,
admitted *pro hac vice*
Peace & Shea LLP
2700 Adams Avenue, Suite 204
San Diego, CA 92116


  /s/ Breton Peace
Breton Peace, CA State Bar #250560,
admitted *pro hac vice*
Peace & Shea LLP
2700 Adams Avenue, Suite 204
San Diego, CA 92116

*Attorneys for Amici Curiae Independent Voter Project, Admiral James Stavridis, Senator Joseph Robert Kerrey, Senator Joseph Isadore Lieberman, The Honorable Clarine Nardi Riddle, The Honorable David M. Walker, and The Honorable Christine Todd Whitman*