# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEVEL THE PLAYING FIELD, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br><br>　　　　　Defendant. | Civil Action No. 1:15-CV-01397-TSC |

## BRIEF OF *AMICUS CURIAE* COMMISSION ON PRESIDENTIAL DEBATES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Lewis K. Loss
Uzoma N. Nkwonta
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099

*Attorneys for Amicus Curiae Commission on Presidential Debates*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

CORPORATE DISCLOSURE STATEMENT ............................................................................. iii

I.   INTRODUCTION ............................................................................................................. 1

II.  STATEMENT OF INTEREST ......................................................................................... 3

III. ARGUMENT ..................................................................................................................... 7

    A. Plaintiffs' Requested Relief Would Trample Debate Sponsors' First Amendment Rights. ........................................................................................................................ 7

    B. Whether CPD is a Proper Sponsoring Organization Under FEC Regulations is Determined by Assessing its Conduct *as an Organization* ....................................... 9

    C. CPD's 15 Percent Standard is the Same Standard Employed by the League of Women Voters. ..................................................................................................................... 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Federal Cases**

*Ark. Educ. Television Comm'n v. Forbes,*
  523 U.S. 666 (1998) ............................................................................................. 7, 8

*Buchanan v. Fed. Election Comm'n,*
  112 F. Supp. 2d 58 (D.D.C. 2000) ............................................................................ 8

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ...................................................................................................... 8

*Citizens United v. Fed. Election Comm'n,*
  558 U.S. 310 (2010) ................................................................................................ 10

*Fed. Election Comm'n v. Beaumont,*
  539 U.S. 146 (2003) ................................................................................................ 10

*Fulani v. Brady,*
  935 F.2d 1324 (D.C. Cir. 1991) ................................................................................ 5

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston,*
  515 U.S. 557 (1995) .................................................................................................. 7

*Johnson v. Comm'n on Presidential Debates,*
  869 F.3d 976, 2017 WL 3708097 (D.C. Cir. 2017) ............................................. 7, 8

*McConnell v. Fed. Election Comm'n,*
  540 U.S. 93 (2003) .................................................................................................. 10

*McCutcheon v. Fed. Election Comm'n,*
  134 S. Ct. 1434 (2014) .............................................................................................. 8

**Federal Regulations**

11 C.F.R. § 110.13(a) ..................................................................................................... 9

11 C.F.R. § 110.13(c) ..................................................................................................... 6

**Other Authorities**

2016 Candidate Financial Totals, Federal Election Commission,
  http://www.fec.gov/data/elections/president/2016/ .................................................. 5

Fed. Election Comm'n, AO 1984-12, 1984 WL 1022490 ............................................ 10

Tax Guide for Churches & Religious Organizations, IRS Pub. 1828
  2012 WL 8144695 (Jan. 1, 2012) ........................................................................... 10

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *Amicus Curiae* Commission on Presidential Debates hereby certifies that it is a nonprofit, 501(c)(3) corporation. It has no parent corporation and no publicly held corporation owns 10 percent or more of its stock.

# I. INTRODUCTION

The Commission on Presidential Debates ("CPD") is a private, nonprofit, 501(c)(3) organization that sponsors general election presidential debates. It is a private actor, governed by an independent board of volunteer directors. It enjoys no governmental designation or entitlement to serve as *the* sponsor of presidential debates. The debates it plans only proceed if the invited candidates agree to debate under its sponsorship.

CPD has chosen as its mission to host televised debates between or among the leading candidates for President and Vice President of the United States in the final weeks of a long campaign season. (AR 7069.) CPD invites to participate in its debates any candidate, *regardless of party affiliation*, who is qualified under the Constitution to be president, is on the ballot in enough states to garner a theoretical Electoral College majority, and has a level of public support of at least 15 percent as reflected in the average of five national public opinion polls conducted shortly before the debates. (AR 7105.)

Plaintiffs prefer, and seek to have the government compel, a different approach. Through administrative complaints and a petition for rulemaking filed with the Federal Election Commission ("FEC"), Plaintiffs seek to have the government require that CPD (and any other sponsor of general election presidential debates) also invite a candidate who does not enjoy substantial public support but who qualifies for inclusion based on some non-poll based standard. Plaintiffs suggest that an invitation be extended to the candidate who has gathered the most ballot access signatures. (AR 0029-30.) This selected candidate would be given the opportunity to use the debates as a springboard for his or her candidacy.

Plaintiffs' proposed approach is highly impractical, which illustrates that it is far easier to criticize a sponsor's poll-based set of criteria than it is to devise a workable alternative.[1] But the flaws in Plaintiffs' proposal are not what prompts this brief. CPD submits this brief to highlight three points.

First, Plaintiffs ask that the FEC's regulations be read or revised to *prohibit* a private debate sponsor from limiting participation in its debates to those candidates in whom the public has demonstrated the greatest interest as measured by well-respected public opinion polls. Plaintiffs' requested relief is plainly unconstitutional. The law is clear: A debate sponsor not only may so limit participation in its debates, it would violate a private debate sponsor's First Amendment rights to preclude it from doing so.

Second, when addressing whether CPD is a proper "staging organization" under the FEC's regulations, the proper inquiry is whether CPD complies with the regulatory requirement that it not "endorse, support or oppose political candidates or parties." Plaintiffs plainly cannot demonstrate that CPD violates this standard, so they seek to substitute an ill-defined inquiry that focuses on protected First Amendment activities of, and statements by, former and current CPD directors *in their individual capacities*. The proper focus under the FEC's regulations is on CPD's activities as an organization.

Third, at bottom, Plaintiffs' core claim is that CPD's 15 percent standard is an unreasonable barrier to debate participation selected by an allegedly partisan organization for the very purpose

---

[1] Plaintiffs propose that CPD extend an invitation to the winner of a signature gathering competition to be completed by April 30 of the election year. (AR 2063.) This approach is deeply flawed. Level the Playing Field's ("LPF") own expert acknowledged that the act of signing requires the voter only to "attest[] that the candidate . . . deserves to be considered at the polls," and not that the voter actually supports or prefers that candidate to others. (Expert Rep. of M. Arno, Pls.' Petition for Rulemaking, Ex. 28, at ¶ 21.) It also makes little sense to determine debate invitations based on a metric frozen in time in April for debates to be held in the Fall, particularly since the deadline for signature gathering and ballot access in most states is well after April 30. Further, the logistics of validating signatures as part of determining who has the most signatures would be a daunting task and one that would inevitably lead to legal challenges.

of excluding non-major party candidates. Plaintiffs dismiss the reasons supporting CPD's approach as contrivances designed to conceal an agenda hostile to non-major party candidates. But Plaintiffs cannot just wish away an inconvenient truth: CPD's 15 percent threshold is identical to the threshold adopted by the League of Women Voters when it sponsored televised presidential debates. (AR 7076-77.) And Plaintiffs laud the League of Women Voters, as "a strictly nonpartisan organization." (AR 2029.) This simple fact lays bare the hollowness of Plaintiffs' claim.

At bottom, Plaintiffs have a political agenda, not a valid legal claim. The FEC correctly dismissed the complaint and petition to open a rulemaking proceeding.

## II. STATEMENT OF INTEREST

**The Commission on Presidential Debates.** CPD is a private 501(c)(3) organization. CPD's primary mission is to ensure, for the benefit of the American electorate, that general election debates are held every four years between and among the leading candidates who have a realistic (i.e. more than theoretical) chance of being elected for the offices of President and Vice President of the United States. *See* Commission on Presidential Debates, Candidate Selection Criteria, http://www.debates.org/index.php?page=overview. CPD has sponsored general election presidential debates in every election since 1988.

CPD is an independent organization. It is not controlled by any political party or outside organization and it does not endorse, support, or oppose political candidates or parties. It receives no funding from the government or any political party, political action committee or candidate. CPD is governed by an independent Board of Directors. The CPD Board presently is jointly chaired by Frank J. Fahrenkopf, Jr. and Dorothy S. Ridings.[2] Although at the time CPD was

---

[2] Ms. Ridings was elected co-chair of CPD in December 2016. (AR 7061.)

formed, its co-founders, Paul G. Kirk, Jr. and Mr. Fahrenkopf served, respectively, as chairmen of the Democratic National Committee and Republican National Committee, their terms ended long ago, in 1989. In the intervening 28 years, no sitting officer of either major party has had any affiliation with CPD and the major parties have no role whatsoever in running CPD or setting its policies. Co-Chair Dorothy Ridings is the former President of the League of Women Voters. In addition to the Co-Chairs, the current Board consists of the following distinguished Americans, all of whom volunteer their time to serve on the CPD Board:

>John C. Danforth, *Former U.S. Senator*
>Charles Gibson, *Former Anchor, ABC World News with Charles Gibson*
>John Griffen, *Managing Director, Allen & Company LLC*
>Jane Harman, *Director, President and CEO, Woodrow Wilson International Center for Scholars*
>Antonia Hernandez, *President and CEO, California Community Foundation*
>Reverend John I. Jenkins, *President, University of Notre Dame*
>Jim Lehrer, *Former Executive Editor and Anchor of the NewsHour on PBS*
>Michael D. McCurry, *Distinguished Professor of Public Theology at the Wesley Theological Seminary in Washington, D.C. and Counsel to Public Strategies Washington, Inc.*
>Newton N. Minow, *Senior Counsel, Sidley Austin LLP*
>Richard D. Parsons, *Senior Advisor, Providence Equity Partners LLC*
>Olympia Snowe, *Former U.S. Senator*

CPD obtains the funds required to produce its debates every four years and to support its ongoing voter education activities from the communities that host the debates and, to a lesser extent, from corporate, foundation, and private donors. Donors have no input into the management of any of CPD's activities and have no input into the process by which CPD selects debate participants.

**Candidate Selection Criteria**.  One of the most challenging issues faced by any debate sponsor is candidate selection.  Scores of candidates run for president every election cycle, many of whom do not seek the nomination of either major party.  *See* 2016 Candidate Financial Totals, Federal Election Commission, https://www.fec.gov/data/elections/president/2016/ (last visited October 20, 2017) (reporting 1,792 candidates for US President who registered *and* filed a financial report). CPD applies its nonpartisan candidate selection criteria in the final weeks of a long general election campaign.  (AR 7104-06.) CPD's selection criteria have always sought to identify the individuals whose public support has made them the leading candidates. (AR 7104-5.)

In addition, candidates for federal office are not required to debate. History teaches that it is speculative at best to assume that the leading candidates would agree to share the stage with candidates enjoying only scant public support.[3] In the 2012 and 2016 presidential elections, for instance, the major party candidates declined invitations to participate in debates that included third party and independent candidates, including Libertarian Party nominee Gary Johnson and Green Party nominee Jill Stein.[4] Thus, a sponsor of general election debates that aims to provide the electorate with a focused debate that includes the leading candidates faces a difficult task. The sponsor needs to be inclusive enough to invite each of those candidates, *regardless of party affiliation*, whose level of public support genuinely qualifies him or her as a leading candidate. At the same time, the sponsor should not take an approach so inclusive that invitations to candidates with scant public support deprives the public of the opportunity to see debates that include the

---

[3] *See Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) (acknowledging that it is speculative at best to assume the leading candidates would agree to share the stage with candidates enjoying only scant public support); *see also* Pls.' Statement of Material Facts, Dkt. 37, at ¶ 33.

[4] *See, e.g.,* 2016 Free and Equal Presidential Debate, Free and Equal Elections Foundation, *available at* https://www.youtube.com/watch?v=dzM4p23uLbE (Nov. 1, 2016); Third Party Presidential Candidates Debate, C-Span, *available at* http://www.c-span.org/video/?308995-1/third-party-presidential-candidates-debate (Oct. 23, 2012) (including Gary Johnson and Jill Stein).

candidates in whom they have the greatest interest. CPD strives to strike this balance in an appropriate fashion.

FEC regulations require a debate sponsor to make its candidate selection decisions on the basis of "pre-established, objective" criteria. *See* 11 C.F.R. § 110.13(c). After a thorough and wide-ranging review of alternative approaches, CPD announced, on October 29, 2015, its 2016 Non-Partisan Candidate Selection Criteria. (AR 7104-05.) Under the 2016 criteria, in addition to being constitutionally eligible, candidates must appear on a sufficient number of state ballots to have a mathematical chance of winning a majority vote in the Electoral College, and have a level of support of at least 15 percent of the national electorate as determined by five selected national public opinion polling organizations, using the average of those organizations' most recent publicly-reported results at the time of the determination. (AR 7105.) In 2016, as in prior debate cycles, the polls relied upon were selected based on the recommendations of the Editor-in Chief of the Gallup Organization based on the quality of the methodology employed, the reputation of the polling organizations, and the frequency of the polling conducted. (AR 7105-06.) CPD announced the identity of the selected polling organizations well in advance of the time the criteria were applied. (*Id.*)

Although only adopted for 2016 after a thorough review of alternatives, the 2016 criteria and 15 percent threshold were substantially the same as those employed by CPD since 2000. (AR 7104-05.) CPD adopted its 2016 criteria based on the recommendations of a working group of its Board chaired by former League of Women Voters President Dorothy Ridings. (AR 7104.) At the time the criteria were announced, Ms. Ridings stated, "We considered a wide array of approaches to the candidate selection issue. We concluded that CPD serves its voter education mission best when, in the final weeks of the campaign, based on pre-established, published,

objective and transparent criteria, it identifies those individuals whose public support places them among the leading candidates and invites them to debate the issues of the day. We also concluded that the best available measure of public support is high-quality public opinion polling conducted near the time of the debates." Commission on Presidential Debates: An Overview, http://www.debates.org/index.php?page=overview.

### III. ARGUMENT

**A. Plaintiffs' Requested Relief Would Trample Debate Sponsors' First Amendment Rights.**

Plaintiffs insist that the FEC's debate regulations be read or revised to compel private debate sponsors to invite one or more candidates who do not enjoy substantial public support as reflected in public opinion polls. The goal, as lead Plaintiff's name trumpets, is to "level the playing field." Plaintiffs' coercive goal is unconstitutional.

CPD and other debate sponsors engage in protected speech and expressive conduct: they develop candidate selection criteria, identify the candidates who meet the criteria, and invite them to debate in a forum created by the debate staging organization. *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 674 (1998) (debate sponsor's compilation of the speech of third parties is a communicative act); *see also Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995) (holding that a parade organizer is a speaker that has the autonomy to choose the content of his own message).

The D.C. Circuit twice has expressly addressed CPD's constitutional right to select the participants in the debates it sponsors, most recently in a case brought by certain of Plaintiffs herein. In *Johnson v. Commission on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017), the plaintiffs alleged that CPD's 15 percent criterion violated, *inter alia*, federal antitrust laws. In affirming the district court's dismissal of that claim, the D.C. Circuit made clear that a ruling that

CPD cannot limit debate participation to those candidates who meet its candidate selection criteria would violate CPD's First Amendment rights:

> Plaintiffs' requested relief—whether stated in the form of a request for injunctive relief or damages—amounts to a request for a declaratory judgment stating that [CPD] is not entitled to exclude certain individuals from its debates. On this point, we must agree with this Court's opinion in *Perot v. Fed. Election Comm'n*: "[I]f this [C]ourt were to enjoin the [CPD] from staging the debates or from choosing debate participants, there would be a substantial argument that the [C]ourt would itself violate the [CPD's] First Amendment rights."

*Id.* at 981.[5]

The Federal Election Campaign Act ("FECA"), pursuant to which the FEC adopted its debate regulations, was enacted to limit "the actuality and appearance of corruption . . ." and the Supreme Court has recognized that its restrictions "operate in an area of the most fundamental First Amendment activities." *Buckley v. Valeo*, 424 U.S. 1, 14 (1976). Here, Plaintiffs do not seek to prevent corruption, but "to level the playing field" for non-major party candidates. The Supreme Court, however, has repeatedly denounced efforts to use the federal election laws to equalize electoral opportunities because "the concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment . . . ." *Id.* at 48-49. Notably, especially given the name lead Plaintiff has selected for itself and Plaintiffs' goal herein, the Supreme Court has stated, **"It is not an acceptable government objective to 'level the playing field' . . .** or to 'equaliz[e] the financial resources of candidates.'" *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434, 1450 (2014) (emphasis added). In short, the coercive relief Plaintiffs seek runs afoul of the First Amendment.

---

[5] *See also Forbes*, 523 U.S. at 682-83 (even when a debate sponsor is a state actor, unlike CPD, and therefore subject to the limitations of the First Amendment when issuing debate invitations, the Supreme Court has expressly approved such sponsor's exclusion of a candidate based on his or her lack of voter support); *Buchanan v. Fed. Election Comm'n,*, 112 F. Supp. 2d 58, 75 (D.D.C. 2000) (noting that "[i]t is difficult to understand why it would be unreasonable or subjective to consider the extent of a candidate's electoral support prior to the debate . . ." and upholding the FEC's determination that CPD's 15 percent threshold was objective and lawful).

**B. Whether CPD is a Proper Sponsoring Organization Under FEC Regulations is Determined by Assessing its Conduct *as an Organization*.**

FEC regulations require debate staging organizations to be tax exempt organizations (under 26 U.S.C. § 501(c)(3) or (4)), "which do not endorse, support, or oppose political candidates or political parties . . . ." 11 C.F.R. § 110.13(a)(1). When addressing the meaning of the phrase "supports, endorses, or opposes political candidates or political parties," the district court turned to dictionary definitions, suggesting a "plain meaning" test, Mem. Op., Dkt. 60, at 12 n.6, as did the FEC on remand, (AR 7213).

Under a "plain meaning" approach, Plaintiffs offer no evidence whatsoever that CPD, *as an organization*, "endorses, supports or opposes" candidates or political parties. Many organizations run ads or issue endorsements in support of or in opposition to candidates or parties. CPD does none of those things, and Plaintiffs do not contend otherwise. Simply stated, insofar as CPD indisputably is tax exempt under 26 U.S.C. § 501(c)(3) and insofar as there is no evidence whatsoever that CPD "endorses, supports or opposes" political parties or candidates, the inquiry as to whether it is a proper sponsoring organization is straightforward.

Not content with this result, Plaintiffs seek to shift the inquiry from CPD's actions as an organization and, instead, focus on political activities by current or former directors *in their individual capacities* and cherry-picked statements made by selected former or current directors (many from long ago) *in their individual capacities*. This is a deeply flawed approach.[6]

Plaintiffs cite no authority for the Constitution-bending assertion that only individuals who have refrained from exercising their First Amendment right to participate in the political process in a personal capacity are eligible to serve as directors of a debate staging organization under the

---

[6] Plaintiffs' arguments in connection with the various historical statements and the narrative Plaintiffs attempt to weave are flawed for many reasons besides those discussed in this short brief, as the FEC has properly noted.

FEC's regulations. Merely to state the proposition is to reveal its wrong-headedness. Indeed, even the IRS does not ignore the distinction between acts committed in a board member's official capacity and acts committed in his or her personal capacity in determining whether an organization participates in a political campaign in violation of § 501(c)(3). *See, e.g.,* Tax Guide for Churches & Religious Organizations, IRS Pub. 1828, 2012 WL 8144695, at *7 (Jan. 1, 2012) (recognizing that a religious leader's endorsement of a candidate in his or her individual capacity does not constitute political campaign intervention by the 501(c)(3) tax exempt church).[7]

Moreover, it is difficult to conceive of an organization that would qualify as a debate sponsor under Plaintiffs' test, which requires board members in their individual capacities to have refrained (without time limitation) from exercising their First Amendment rights to support candidates or otherwise participate in the political process. Plaintiffs' arguments in this regard should be flatly rejected.[8]

---

[7] It is beyond reasonable dispute that board members or directors and the organizations they serve are not one and the same. The federal election laws recognize this distinction. Although the FECA, for instance, imposes restrictions on corporate political activities, the Supreme Court has acknowledged that "a ban on direct corporate contributions leaves individual members of corporations free to make their own contributions . . . ." *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 161 n.8 (2003); *see also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 177 (2003) (recognizing that the ban on national, state, and local party committees' solicitation of funds for 501(c) organizations "in no way restricts solicitations by party officers acting in their individual capacities."). The distinction between the political activities of separate legal entities holds true even when organizations create political action committees for the specific purpose of supporting candidates or parties. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 337-38 (2010); *see also* Fed. Election Comm'n, AO 1984-12, *available at* 1984 WL 1022490 (acknowledging the distinction between an organization and the political action committee created by its board members in their individual capacities).

[8] Notably, Plaintiff LPF would fail to meet its own test for nonpartisanship. LPF's directors, as individuals, have made contributions to political candidates (including Hillary Clinton). *See* Transaction Query by Individual Contributor, FEC, http://classic.fec.gov/finance/disclosure/norindsea.shtml (based on individual queries of the following LPF directors as identified in Form 990 Return of Organization Exempt from Income Tax for the 2015 Tax Year: Peter Ackerman, Kahlil J Bird, Joshua Levine, and Cara McCormick). Yet, LPF describes itself as a "nonpartisan, nonprofit corporation" in Plaintiffs' Complaint. Pls.' Second Am. Compl., Dkt. 25, at ¶ 17. Likewise, Plaintiffs' amici acknowledge that individuals can and do act in different capacities at different times. The Nonprofit Leaders, Scholars and Practitioners state in their brief that "each *amicus* submits this brief in his or her personal capacity only." Br. of Amici Curiae Nonprofit Leaders, Scholars and Practitioners, Dkt. 88, at 1.

### C. CPD's 15 Percent Standard is the Same Standard Employed by the League of Women Voters.

Complainants argue that the 15 percent threshold is an unreasonably high barrier to entry erected by an organization committed to preserving a two-party system.[9] CPD has submitted extensive evidence explaining the careful process by which it adopted its candidate selection criteria and why it adopted those criteria. (*See, e.g.,* AR 2882-99, 7056-59, 7061-69, 7102-7110.)

In short, CPD has concluded that its selection criteria advance its voter education goal of affording the members of the public, in the final weeks of a very long campaign season, an opportunity to sharpen their views, in a focused debate format, of the leading candidates who have a realistic chance of being elected President and Vice President of the United States. (AR 7069.) In so doing, CPD takes the campaign as it finds it, using the best known measure of candidate support, (AR 3046), to identify the individuals whom the public has made the leading candidates by virtue of whom they support. As noted earlier, a sponsor of general election debates needs to be inclusive enough to invite each of those candidates, *regardless of party affiliation*, whose level of public support genuinely qualifies him or her as a leading candidate, without being so inclusive that invitations to candidates with scant public support deprives the public of the opportunity to see debates that include the candidates in whom they have the greatest interest. CPD has concluded that the 15 percent standard strikes this balance in an appropriate manner.

Plaintiffs disregard all of this as pretextual and seek to paint the 15 percent standard as an unreasonable barrier to debate participation erected by an organization dedicated to excluding non-

---

[9] Plaintiffs' critiques of CPD's reliance on polling ring particularly hollow in light of the fact that the Libertarian presidential and vice presidential candidates participated in presidential primary debates that were limited to the "leading candidates," as determined by an *online poll*. *See* John Stossel, *What are Libertarians doing wrong?*, FOX NEWS, Mar. 9, 2016, http://www.foxnews.com/opinion/2016/03/09/stossel-what-are-libertarians-doing-wrong.html (explaining criteria for selecting "leading" Libertarian presidential candidates to participate in the Fox Business Network debate); WNCN (CBS North Carolina), *Libertarian Party to hold presidential debate*, Mar. 7, 2016, http://wncn.com/2016/03/07/libertarian-party-to-hold-presidential-debate/.

major party candidates. In doing so, Plaintiffs ignore an inconvenient truth: 15 percent was the polling threshold adopted in the League of Women Voters' 1980 selection criteria, which resulted in the inclusion of independent candidate John Anderson in one of the League's debates. (AR 2894, 7076-77 (attached as Exhibit A)). Plaintiffs laud the League, stating "The League was a strictly nonpartisan organization." (AR 2029.) Plaintiffs never address how the 15 percent threshold must be viewed as the unlawful and unreasonable fruit of a bipartisan conspiracy when it is the same standard earlier applied by "a strictly nonpartisan organization." There is but one answer: It is not.[10]

## CONCLUSION

For the reasons stated above, CPD respectfully requests that the Court grant the FEC's motion for summary judgment and dismiss Plaintiffs' lawsuit.

Dated: October 20, 2017

Respectfully Submitted,

By: /s/Lewis K. Loss
Lewis K. Loss, Bar No. 375793
LLoss@ljwllp.com
Uzoma Nkwonta, Bar No. 975323
UNkwonta@ljwllp.com
**LOSS, JUDGE & WARD, LLP**
600 14th Street, N.W., Suite 450
Washington, D.C. 20005
Telephone: 202.778.4060
Facsimile: 202.778.4099

*Attorneys for Amicus Curiae Commission on Presidential Debates*

[10] The League extended automatic invitations to the nominees of the major parties and applied its 15 percent standard only to non-major party candidates. (AR 7076-77.) CPD applies the same criteria, including the 15 percent standard, to all candidates, regardless of party affiliation. Thus, the League afforded the major party candidates special treatment, given the public's historical interest in those candidates. (*Id*.) CPD does not.