**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LEVEL THE PLAYING FIELD, PETER
ACKERMAN, GREEN PARTY OF THE
UNITED STATES, and LIBERTARIAN
NATIONAL COMMITTEE, INC.

                    Plaintiffs,

      v.

FEDERAL ELECTION COMMISSION

                    Defendant.

Civil Action No.:  15-cv-1397 (TSC)

**PLAINTIFFS LEVEL THE PLAYING FIELD, PETER ACKERMAN, GREEN PARTY
OF THE UNITED STATES, AND LIBERTARIAN NATIONAL COMMITTEE, INC.'S
MOTION TO SUPPLEMENT THE RECORD AND OPPOSITION TO DEFENDANT'S
MOTION TO STRIKE**

       Plaintiffs Level the Playing Field, Peter Ackerman, the Green Party of the United States,

and the Libertarian National Committee, Inc., respectfully submit this Motion to Supplement the

Record and Opposition to Defendant FEC's Motion to Strike.  The FEC contends that the

following items should be stricken from Plaintiffs' summary judgment motion:  (1) "extra-record

citations" identified on pages A-1 through A-6 of the Motion to Strike; (2) a "transcript of a 2015

Commission meeting"; and (3) unspecified portions of the Declaration of Eric S. Olney, dated

Sept. 15, 2017 (Dkt. 83-2) (the "Olney Declaration").  For the reasons that follow, the FEC's

arguments lack merit, its motion should be denied, and Plaintiffs' motion to supplement the record should be granted.[1]

1.   The FEC concedes that there are established circumstances "warranting consideration of extra-record materials."  (Motion to Strike at 6).  These include "when the agency deliberately or negligently excluded documents that may have been adverse to its decision" and "when background information is needed to determine whether the agency considered all relevant factors."  *Id.* at 6-7 (quoting *Beyond Nuclear v. U.S. Dep't of Energy*, 233 F. Supp. 3d 40, 47-49 (D.D.C. 2017)); *accord, e.g.*, *Nat'l Mar. Safety Ass'n v. Occupational Safety & Health Admin.*, 649 F.3d 743, 753 n.14 (D.C. Cir. 2011).  The following citations meet one or both of these requirements, or may be considered for other reasons set forth below.

*Evidence of the CPD Directors' Violations of the CPD's Alleged "Policies" (p. 14 n.18; p. 25 n.35).*  As set forth in our Summary Judgment Brief (at 24-26), the FEC revealed for the first time in its post-remand decisions that the CPD supposedly has "policies" that are intended to police its directors' partisan bias.  (AR7221).  The CPD had never previously suggested that such policies existed and even now continues to withhold the alleged policies from the FEC.  Moreover, in its summary judgment brief the FEC does not dispute that neither of these policies, if they exist, is actually enforceable.  The agency nevertheless relied upon them in rejecting

---

[1]   A motion to supplement the record is unnecessary for this Court to consider the evidence. *See, e.g.*, *Cape Cod Hosp. v. Sebelius*, 677 F. Supp. 2d 18, 25-29 (D.D.C. 2009), *rev'd on other grounds*, 630 F.3d 203 (D.C. Cir. 2011).  Nevertheless, in an abundance of caution, Plaintiffs move to supplement the record, in addition to opposing the motion to strike, and request that the "extra-record citations" listed on pages A-1 through A-6 of the FEC's motion be added to the record.  However, because the FEC does not seek to exclude the Olney Declaration on the grounds that it is outside the record, there is no need to supplement the record with the Olney Declaration.  Plaintiffs unsuccessfully attempted to contact the FEC about their motion to supplement, but the FEC will undoubtedly oppose Plaintiffs' motion in light of the positions the agency takes in its motion to strike.

Plaintiffs' allegation that the CPD has a partisan bias.  (*Id.*).  Yet the FEC did not consider whether the CPD directors even comply with the alleged policies.  Plaintiffs therefore submitted two examples of their non-compliance:  (1) a fundraising event for Adam Laxalt, the Nevada attorney general who is running for governor, which was co-chaired by CPD director Frank Fahrenkopf; and (2) CPD director Olympia Snowe's public opposition to Donald Trump's presidential campaign and her statement that Trump "is hurting our [Republican] brand."  (Pl. Br. 14 n.8, 25 n.25).  This evidence "w[as] publicly available" and "should have been considered by the agency."  *Carlton v. Babbitt*, 26 F. Supp. 2d 102, 107 (D.D.C. 1998).  The Court should consider this evidence both because it was adverse to the FEC's decision and was deliberately or negligently excluded, and because it shows that the FEC failed to consider all relevant factors when relying upon the alleged policies.  *See, e.g.*, *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 217 & n.17 (D.D.C. 2005) (considering evidence that "allows the Court to better understand" agency decision and "bears directly on whether the agency 'considered factors which are relevant to its final decision'"); *Sw. Ctr. For Biological Diversity v. Norton*, No. CIV.A.98-934 (RMU/JMF), 2002 WL 1733618, at *7 (D.D.C. July 29, 2002) (same).

   *Name Recognition Polls The FEC Omitted From Its Decisions (p. 27 n.37).*  The FEC's decisions purport to rely upon a single poll in arguing that Libertarian Party candidate Gary Johnson achieved 60% name recognition during the 2016 presidential election.  (AR1933; AR7225).  Our summary judgment brief explained that the FEC not only misrepresented the results of this poll, but omitted two other polls showing that Johnson's name recognition was only 36% and 37%, respectively.  (Pl. Br. 27).  This Court may take judicial notice of public opinion polls.  *See Atkins v. Virginia*, 536 U.S. 304, 316 n.21 (2002); *see also Owens v. Duncan*, 781 F.3d 360, 362 (7th Cir. 2015) (Posner, J.) (taking judicial notice of information yielded by

internet search).  In any event, these polls also undermine the FEC's argument, were deliberately or negligently excluded by the FEC, and show that the FEC failed to consider all relevant factors. The Court should therefore consider the polls.  *See, e.g.*, *Kent Cnty., Del. Levy Court v. U.S. E.P.A.*, 963 F.2d 391, 395-96 (D.C. Cir. 1992) ("[B]ecause the EPA itself looked outside its national CERCLA files and relied on a single memorandum from another program (RCRA), we think it was arbitrary and capricious for the agency not to examine the Region III CERCLA files."); *Carlton*, 26 F. Supp. 2d at 107 (court may review "publicly available documents" that "should have been considered by the agency").

*Evidence Concerning Media Sources Consulted By American Voters (p. 29-30 n.38-40, p. 31 n.46)*.  In its decisions, the FEC argued for the first time that an independent candidate can significantly defray the cost of his or her campaign by reaching voters through advertisements "on digital platforms like Facebook and Twitter."  (AR7227).  But the FEC did not consider whether and to what extent voters actually rely on those digital platforms to learn about presidential candidates.  Thus, we submitted evidence that (1) voters rely upon a vast array of news sources (Pl. Br. 29-30 n.38-39); (2) 80% of Americans regularly consult at least three of these sources, and 45% consult five or more (*id*. at 30 n.40); and (3) when asked to prioritize which media outlets they rely upon most, Americans rank social media toward the bottom, and most Americans receive no information about presidential elections from social media (*id*. at 31 n.46).  The Court should consider this evidence both because it was adverse to the FEC's decision and was deliberately and negligently excluded, and because it shows that the FEC failed to consider all relevant factors when relying upon the alleged policies.  *See Beyond Nuclear*, 233 F. Supp. 3d at 47; *Carlton*, 26 F. Supp. 2d at 107.

*Public Opinion Polling For President Obama (p. 42 n.55).*  For the first time in its decisions, the FEC disputed whether President Obama's polling received a boost from the 2008 Iowa caucuses.  (AR2558-59).  Yet the polls plainly show that Obama received a significant boost.  (Pl. Br. 42 n.55).  This Court may take judicial notice of opinion polls concerning the former president, *see Atkins*, 536 U.S. at 316 n.21 or, alternatively, consider them as evidence adverse to the FEC's decision, *Beyond Nuclear*, 233 F. Supp. 3d at 47.

*The Schoen Affidavit (p. 43 n. 56).*  As set forth in the summary judgment brief (at 43), Douglas Schoen's expert report describes the data on which he relied in considerable detail.  (AR2559-64).  Nevertheless, when Plaintiffs submitted the report, they advised the FEC that the complete data set "[is] available for the Commission's review and can be provided upon request." (AR 2001).  The FEC's post-remand rulemaking decision then ignored the Schoen report's description of the data and instead complained that Schoen had not supplied the complete data set.  (AR1934).  Thus, on summary judgment, Plaintiffs submitted an affidavit from Schoen attaching the data set, which in many respects was identical to what Schoen said in his report, and was otherwise consistent with the report's description.  It is entirely proper for this Court to consider follow-up from an expert where, as here, it "allows the Court to better understand" his analysis and "bears directly on whether the agency considered factors which are relevant to its final decision."  *See Oceana*, 384 F. Supp. 2d at 217 & n.17 (internal quotations omitted); *see also Sw. Ctr. For Biological Diversity*, 2002 WL 1733618, at *7 (allowing plaintiff to use scientist's declaration on summary judgment).

*Evidence From The 2016 Election.*  The remaining items the FEC moves to strike concern the 2016 election.  Plaintiffs' summary judgment brief explains that the post-remand decisions largely rely on evidence from the 2016 elections that post-dated its original decisions.

(Pl. Br. 12, 19).  This evidence did not exist when Plaintiffs filed their administrative complaints and rulemaking petition and when the matter was being litigated before the FEC.  Moreover, the FEC both mischaracterizes what occurred in 2016 and ignores the numerous reasons why it directly undermines the FEC's position.  (*Id.* at 12-16).

For example, the FEC claims to have rejected certain evidence of the CPD directors' partisan acts because the evidence was too "old."  (*See* FEC Summary Judgment Br. at 31).  But, despite conducting their own *sua sponte* analysis of the 2016 race, the decisions neglect to mention the directors' extensive involvement in the 2016 election—including by endorsing Republican and Democratic candidates and donating tens of thousands of dollars to their campaigns—and their numerous other recent partisan acts and admissions.[2]  (Pl. Br. 13-14, 16).

The Court may review this evidence "to determine whether the agency considered all of the relevant factors" in its treatment of the 2016 presidential race.  *Beyond Nuclear*, 233 F. Supp. 3d at 47; *accord Kent Cnty.*, 963 F.2d at 395-96; *Carlton*, 26 F. Supp. 2d at 107.  At a minimum, if the Court does not consider the evidence as grounds for finding error with the FEC's decision, it may still "take judicial notice" of these items "[f]or purposes of background." *Magritz v. Ozaukee Cty.*, 894 F. Supp. 2d 34, 35 n.1 (D.D.C. 2012).

---

[2]    The FEC's summary judgment brief ignores this evidence.  A footnote in the motion to strike (at 4 n.1) purports to dispute a small fraction of it, while continuing to disregard the vast majority of the evidence.  Even that footnote is entirely unpersuasive.  For example, the FEC erroneously claims that Donald Trump never said the 15% rule was designed to exclude other candidates.  In fact, Trump was quoted by the Daily News saying that the rule was created by "the two-party political establishment" in order "to keep the American people from having a third choice."  http://www.nydailynews.com/ archives/news/debate-bar-raised-3rd-party-choice-article-1.874058.  And contrary to what the FEC suggests, the positions Trump took in his 2016 campaigned mirrored the Reform Party platform on which he ran as a third party candidate in 2000. *See, e.g.*, John B. Judis, *The Populist Explosion* 65-70 (2016).

2.  The FEC also objects to the citation of a statement made by FEC Commissioner Weintraub during the FEC's public meeting discussing the denial of Level the Playing Field's petition for rulemaking.  (Motion to Strike 7-10).  The statement acknowledged that the FEC Commissioners have spoken of their "desire to strengthen party organizations."  (Pl. Br. 8). Contrary to the FEC's characterization, Plaintiffs are not asking the Court to inquire into the Commissioners' mental deliberative processes in an attempt to undermine the FEC's stated rationales for dismissing Plaintiffs' administrative complaints and denying LPF's petition for rulemaking.  The cases the FEC relies on are thus inapposite.  The comment by Commissioner Weintraub is relevant to Plaintiffs' argument that the Court should not defer to the FEC because of its institutional bias against independent candidates and long history of protecting the CPD. The Court is permitted to consider it for this purpose.  *Cf. Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004) (observing that while "the record for arbitrary-and-capricious review of ERISA benefits denial is the record made before the plan administrator," "when a court is deciding what standard of review to employ . . . it may consider evidence of potential biases and conflicts of interest that is not found in the administrator's record").

3.  Finally, the FEC moves to strike unspecified portions of the Olney Declaration, claiming that they present "arguments" that should have been included in Plaintiffs' summary judgment brief.  (Motion to Strike at 5 n.2).  In fact, the Declaration is limited to a description of conversations and other acts performed by our law firm that could *only* be attested to in an attorney declaration.  (Olney Decl. ¶¶ 1-11).  There are no "arguments" in the Olney Declaration.

In its rulemaking decision, the FEC claimed to have searched the Westlaw newspaper database for articles mentioning candidates in the 2016 election.  The rulemaking decision reported what the FEC claimed were the results of these searches.  The FEC relied upon these

purported results in arguing that independent candidates and major party candidates received comparable press coverage in 2016.  (AR1933 n.6).

The search results reported by the FEC appeared suspicious to Plaintiffs.  Consequently, our law firm endeavored to recreate the searches to determine whether the FEC had accurately reported the results.  (Olney Decl. ¶¶ 4-6).  After discovering certain obvious errors that the FEC had made, we contacted Westlaw to determine how best to perform these searches.  (*Id*.).  Westlaw confirmed that the FEC had performed erroneous searches, and provided us with a methodology that would yield accurate results.  (*Id*. ¶ 6).  We then performed searches using the correct methodologies, which revealed numerous additional misrepresentations and misleading statements in the FEC's presentation of its search results.  (*Id*. ¶¶ 7-11).

Plaintiffs' summary judgment brief argues that the FEC's mischaracterization of the Westlaw news database was arbitrary and capricious.  (Pl. Br. 37-43).  However, to make this argument, we needed to describe (1) Westlaw searches our law firm performed which revealed errors in the FEC's presentation, (2) our firm's communications with Westlaw confirming these errors and establishing the correct search methodologies, and (3) the Westlaw searches performed by our firm using the correct methodologies.  Mr. Olney, who oversaw and participated in the entire process, therefore attested to the acts and communications performed by our law firm in his Declaration.

These are not "arguments by counsel," as the FEC erroneously claims.  They are attestations to factual matters that could only be supplied through a declaration.  It is entirely normal for such declarations to be submitted in connection with a summary judgment motion, and the FEC offers no legitimate basis to strike the Olney Declaration.  *See, e.g.*, *Kruger v.*

*Cogent Commc'ns, Inc.*, 174 F. Supp. 3d 75, 85 (D.D.C. 2016) (court may "rel[y] on . . .

attorney's declaration" on "a motion for summary judgment").

## CONCLUSION

For the foregoing reasons, the FEC's Motion to Strike should be denied, and Plaintiffs'

Motion to Supplement the Record should be granted.


Dated: November 10, 2017
      New York, New York

                                         Respectfully submitted,

                                         /s/   Alexandra A.E. Shapiro
                                        Alexandra A.E. Shapiro (D.C. Bar No. 438461)
                                        Eric S. Olney (*admitted pro hac vice*)
                                        SHAPIRO ARATO LLP
                                        500 Fifth Avenue
                                        40th Floor
                                        New York, New York 10110
                                        Phone:  (212) 257-4880
                                        Fax:  (212) 202-6417

                                        *Attorneys for Plaintiffs Level the Playing Field,*
                                        *Peter Ackerman, Green Party of the United States,*
                                        *and Libertarian National Committee, Inc.*